## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, | Civil Action No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF** |
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC, | |
| Defendants. | |

Plaintiff Aspen Specialty Insurance Company (hereinafter "Aspen"), by and through its attorneys, Connell Foley LLP, bring this action for equitable rescission, declaratory judgment and other equitable relief against Defendant Hospitality Supportive Systems, LLC (hereinafter "HSS" or "Defendant") and alleges as follows:

### PARTIES

1.      Aspen is a corporate entity organized under the laws of the State of North Dakota with its principal place of business at 590 Madison Avenue, 7th Floor, New York, New York.

2.      Defendant Hospitality Supportive Systems, LLC ("HSS") is, upon information and belief, a limited liability company organized under the laws of the

3643829-1

Commonwealth of Pennsylvania, with a place of business located at 940 W. Sproul Road, Suite 103, Springfield, Pennsylvania.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, inasmuch as the parties have diverse citizenship and the alleged sum or value in controversy, exclusive of interest and costs, exceeds the amount of $75,000.

4.    This Court has personal jurisdiction over Defendant HSS as it is incorporated, maintains an office and conducts business in the Commonwealth of Pennsylvania.

5.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), inasmuch as a substantial part of the events or omissions giving rise to this action took place in this District.

## INTRODUCTION

This is an action for rescission of insurance policies and a declaration of the respective rights and obligations, if any, of Aspen and Defendant under policies of liability insurance issued by Aspen with respect to certain alleged liabilities of Defendant.

6.    Aspen issued multiple consecutive commercial insurance policies to HSS from 2011 to 2015, providing general liability, liquor liability and excess

2

liability coverage to HSS and multiple additional named insureds (the "Aspen Policies" as further defined below.

7.      Aspen negotiated and issued the Aspen Policies in reliance upon the representations of Defendants concerning the nature and claims history of the risks to be covered by the Aspen Policies.

## FACTUAL ALLEGATIONS

### The HSS Program

8.      HSS is an insurance purchasing group which solicits business owners and operators within the hospitality and restaurant industry to enter into a property and liability insurance sharing program ("HSS Program").

9.      HSS holds itself out to be sophisticated and knowledgeable within the hospitality and restaurant industry and in securing and understanding the liability insurance coverage for the associated risks.

10.     HSS markets the HSS Program to business owners directly, as well as indirectly through local insurance agents.

11.     Participants in the HSS Program are required to enter into a Master Services Agreement with HSS, which sets forth the details of the program as well as the rights and obligations of the parties thereto.

12.     HSS secures insurance coverage through various property and liability insurance carriers as the primary named insured on such policies.

3

13.     Aspen issued multiple primary and excess commercial liability insurance policies, with general liability and liquor liability coverage parts, to the HSS Program.

14.     Individual restaurant, tavern and bar owners, who elect to enter the HSS Program, are added as named insureds to, and share the insurance limits of, the policies procured by HSS.

15.     Upon information and belief, through the Master Services Agreement, these restaurant, tavern and bar owners delegated full authority to HSS for the primary rights and responsibilities under the Aspen Policies, including but not limited to the negotiations, procurement and claims handling for said Policies.

16.     In order for individual restaurant, tavern and bar owners to qualify for the HSS Program, each must meet certain minimum requirements as set forth in the underwriting guidelines of the HSS Program.

17.     The requirements of the underwriting guidelines include, but are not limited to, a.) prospective participants must submit at least three (3) years of currently valued loss runs from prior insurance carriers; b.) maximum of three (3) claims made within the past three (3) years; c.) maximum value per claim not to exceed $15,000.; and d.) no liquor liability claims in the past three (3) years.

4

18.     HSS was to proffer restaurant, bar and tavern owners, who met the minimum requirements of the underwriting guidelines, as participants in the HSS Program.

19.     Pursuant to the Master Services Agreement, HSS purportedly retained the primary rights and responsibilities under the insurance policies procured for the HSS Program.

20.     HSS also specifically assumed and retained the role of claims processor, purportedly acting as the claims liaison between the participants and insurance carriers, such as Aspen.

21.     In order to implement and effectuate its claim processing role, HSS retained the services of Selective Risk Management, LLC as its third party claims administrator, and Selective Law Group as its claims defense counsel.

22.     Upon information and belief, HSS Program participants would report liability claims to HSS; HSS and Selective Risk Management would then manage those claims and engage Selective Law Group to defend the interests of the participants.

23.     Upon information and belief, HSS, Selective Risk Management, LLC and Selective Law Group have offices at 940 W. Sproul Road, Springfield, PA.

5

**The Aspen Policies**

24.    Aspen is, and during all relevant times has been, in the business of underwriting and issuing policies of commercial liability insurance and is authorized to transact the business of insurance in the Commonwealth of Pennsylvania.

25.    Aspen issued seven primary and seven excess liability insurance policies to HSS which are delineated into three HSS Programs: HSS (A), (B) and (C).

26.    HSS (A), (B) and (C) are primarily defined by their distinct lists of additional insured participants, although there is also some variation in limits, amounts of self-insured retentions and other endorsements that distinguish each of these HSS Programs.

27.    With respect to the issuance and renewal of each of the Aspen Policies, Aspen relied upon, inter alia, insurance applications, loss runs and other information provided by HSS.

**HSS (A)**

28.    On or about September 21, 2011, Aspen received a request from CRC Insurance Services ("CRC"), an insurance broker, to quote general and liquor liability insurance for HSS.

6

29.     Aspen was provided with an insurance application, loss runs and a schedule of prospective participants/additional named insureds and insured locations by HSS.

30.     Aspen issued commercial liability policy no. CRA8YY411 to HSS, with effective dates of December 31, 2011 to December 31, 2012; general liability limits of $1 million per occurrence, $2 million in the aggregate and liquor liability limits of $1 million per occurrence and in the aggregate; and a Self Insured Retention ("SIR") of $10,000.

31.     The policy period of CRA8YY411 was extended to June 30, 2013 by Endorsement #55 on June 18, 2012

32.     Approximately one hundred fifteen (115) restaurant, tavern and bar owners participated and were additional named insureds on policy CRA8YY411.

33.     In June, 2013, Aspen renewed policy no. CRA8YY411 with the issuance of policy no. CRA8YY413, effective dates of June 30, 2013 to December 31, 2014; with the same limits and SIR as policy no. CRA8YY411

34.     Aspen's decision to renew HSS (A) was due, in part, to the following factors: a.) only seven claims had been reported from 2010 through June of 2013; b.) those seven claims were low severity in nature and valued at approximately $39,886; and c.) HSS vets participants' compliance with the HSS underwriting guidelines.

7

35.    Aspen issued excess liability policy no. CXAE6MU14 to HSS with effective dates of March 25, 2014 to December 31, 2014; excess liability limits of $15 million.

36.    In December 2014, Aspen renewed CRA8YY413 with the issuance of commercial liability policy no. CR0038P14, with effective dates of December 31, 2014 to June 30, 2016; with the same limits and SIR as CRA8YY413.

37.    Aspen's decision to again renew HSS (A) was due, in part, to the number and severity level of claims reported to Aspen during the prior policy period and in the renewal application and loss runs submitted by HSS.

38.    In December 2014, Aspen also renewed CXAE6MU14 with the issuance of excess liability policy no. CX0038Q14, with effective dates of December 31, 2014 to June 30, 2016; with excess liability limits of $2 million.

39.    Aspen's decision to renew the excess coverage of HSS (A) was due, in part, to the number and severity level of claims reported to Aspen during the prior policy period and in the renewal application and loss runs submitted by HSS.

40.    In December 2014, Aspen issued excess liability policy no. CX0038U14, with effective dates of December 31, 2014 to June 30, 2016; with excess liability limits of $5 million.

8

41.    Aspen's decision to issue policy no. CX0038U14 was due, in part, to the number and severity level of claims reported to Aspen during the prior policy period and in the insurance application and loss runs submitted by HSS.

42.    Throughout the course of the HSS (A) Program, HSS was responsible for providing updated schedules to reflect the current participants/additional named insureds of  HSS (A) and the applicable Aspen Policies.  HSS periodically added and/or deleted participants from HSS (A), often without Aspen's prior knowledge and/or prior authorization.

**HSS (B)**

43.    Aspen issued commercial liability policy no. CRAC2P12 to HSS with effective dates of December 31, 2012 to June 20, 2014; with general limits of $1 million per occurrence and $2 million in the aggregate, and  liquor liability limits of $1 million per occurrence and in the aggregate; and a SIR of $10,000.

44.    HSS provided a distinct schedule of approximately two hundred fifty eight (258) participant/additional named insureds and insured locations for this first policy in HSS (B).

45.    Aspen's decision to issue policy no. CRAC2P12 was due, in part, to the number and severity level of claims reported to Aspen during the prior policy period of HSS (A) and in the application and loss runs submitted by HSS for HSS (B).

9

46.    In June, 2014, Aspen renewed policy no. CRAC2P12 with the issuance of policy no. CRAC26P13, effective dates of June 30, 2014 to December 31, 2015; with general limits of $1 million per occurrence and $2 million in the aggregate, and  liquor liability limits of $1 million per occurrence and in the aggregate; and a SIR of $10,000.

47.    Aspen's decision to renew HSS (B) was due, in part, to the number and severity level of claims reported to Aspen during the prior policy period and in the renewal application and loss runs submitted by HSS.

48.    Aspen issued excess liability policy no. CXAE6N114 to HSS, with effective dates of March 25, 2014 to July 25, 2014, with excess liability limits of $15 million.

49.    In July 2014, Aspen also renewed CXAE6N114 with the issuance of excess liability policy no. CX0020Y14A, with effective dates of July 25, 2014 to December 31, 2015 with excess liability limits of $2 million.

50.    Aspen issued excess liability policy no. CX0027W14 to HSS with effective dates of July 25, 2014 to December 31, 2015 with excess liability limits of $5 million.

51.    Throughout the course of the HSS (B) Program, HSS would provide updated schedules to reflect the current participants/additional named insureds of

10

HSS (B).   HSS periodically added and/or deleted participants from HSS (B) without Aspen's prior knowledge and/or prior authorization.

**HSS (C)**

52.   Aspen issued commercial liability policy no. CRADJ9K13 to HSS, with effective dates of December 31, 2013 to June 13, 2015; with general limits of $1 million per occurrence and $2 million in the aggregate, and  liquor liability limits of $1 million per occurrence and in the aggregate; and an SIR of $2,500.

53.   HSS initially provided a distinct schedule of approximately twenty four (24) participant/additional named insureds and insured locations for this first policy in HSS (C).  By September of 2014, the number of participants/additional insureds in HSS (C) grew to approximately one hundred seven (107).

54.   Aspen issued excess liability policy no. CXAEH714 to HSS with effective dates of April 24, 2014 to June 13, 2015; with excess liability limits of $15 million.

55.   In June 2013, HSS requested that Aspen renew HSS (C) and provided loss runs and a schedule of participants/additional named insureds.  The loss runs provided included losses from HSS (A), (B) and (C).

56.   Aspen renewed policy no. CRADJ9K13 with the issuance of policy no. CR003UL15 to HSS with effective dates of June 13, 2015 to December 13, 2016; with general liability limits of $1 million per occurrence and $2 million in

11

the aggregate and liquor liability limits of $1 million per occurrence and in the aggregate.

57.    Aspen's decision to renew HSS (C) was due, in part, to the number and severity level of claims reported to Aspen during the prior policy periods of HSS (A) (B) and (C) and in the application and loss runs submitted by HSS for HSS (C).

**The Crowley Claim**

58.    On or about April 26, 2013, Liam Crowley suffered fatal injuries as a result of a motor vehicle accident when his motorcycle was struck by a vehicle operated by a patron of the tavern known as Timothy's of West Chester ("Timothy's").  On or about May 20, 2014, the Estate of Crowley filed an amended complaint in a wrongful death action styled Crowley v. Timothy's West Chester LLC, et al. Docket No. 13-05394, in Chester County Court of the Commonwealth of Pennsylvania (the "Crowley Claim").

59.    Timothy's, a participant/additional named insured in HSS (A), was served with the amended complaint on May 23, 2014.

60.    HSS was aware of the Crowley Claim and engaged the services of the Selective Law Group to represent Timothy's. Selective Law Group entered an appearance on behalf of Timothy's on June 20, 2014.

3643829-1

61.   Aspen was first notified of the Crowley Claim on January 6, 2015, approximately twenty one (21) months after the injury/occurrence, seven (7) months after suit, and two (2) months before the scheduled trial date of March 12, 2015.

62.   Aspen defended Timothy's pursuant to a reservation of rights and ultimately settled the Crowley Claim on Timothy's behalf under policy no. CRA8YY411 in HSS (A).

63.   Despite the knowledge of this significant claim, HSS failed to immediately notify Aspen of the injury, occurrence and suit in breach of the express terms and conditions of the Aspen Policies.   Moreover, HSS failed to notify Aspen of the Crowley Claim during the application and renewal application for multiple Aspen Policies issued to the HSS Program, including but not limited to policy numbers CR0038P14, CX0038Q14, CX0038U14, CRA8Y413, CXAE6MU14, CRAC26P13, CX0020Y14, CX0027W14 and CRADJ9K13.

64.   In June 2015, during the renewal process for HSS (C), specifically policy no. CR003UL15, Aspen inquired with HSS about its material failures to report the Crowley Claim.   HSS made an affirmative representation to Aspen that there were no other claims pending in the HSS Program of which Aspen had not been notified.

13

65.     The loss runs submitted with certain applications and renewal applications for the above noted policies did not include the Crowley Claim.

**The Glynn Claim**

66.     On or about December 9, 2012, Brendan Glynn suffered severe bodily injury as result of being struck by a motor vehicle.   Immediately before the accident, Brendan Glynn was a patron at Cavanaugh's Restaurant and Bar (owned by 39th and Sansom Street Corp.). On or about May 30, 2014, Brendan Glynn filed a civil action captioned Brendan D. Glynn v. Cavanaugh's Restaurant and Bar, et al., filed in the Court of Common Pleas, Philadelphia County, Case ID 1405004081, respectively (the "Glynn Claim").

67.     39th and Sansom Street Corp., a participant/additional named insured in the HSS (A) Program, was served with the complaint in the Glynn Claim on or before June 12, 2014.

68.     HSS assigned the Selective Law Group to defend 39th and Sansom Street Corp., and an appearance was entered by Selective Law Group on June 12, 2014.

69.     Aspen was first notified of the Glynn Claim on January 19, 2016, over four (4) years after the injury/occurrence and twenty (20) months after suit was filed.

14

70.     Aspen is currently defending 39th and Sansom Street Corp. pursuant to a reservation of rights under policy no. CRA8YY411 in HSS (A).

71.     Despite the knowledge of this significant claim, HSS failed to immediately notify Aspen of the injury, occurrence and suit in breach of the express terms and conditions of the Aspen Policies.  Moreover, HSS failed to notify Aspen of the Glynn Claim during the application and renewal application for multiple Aspen Policies issued to the HSS Program, including but not limited to policy numbers CR0038P14, CX0038Q14, CX0038U14, CRA8Y413, CXAE6MU14, CRAC26P13, CX0020Y14, CX0027W14, CRADJ9K13 and CR003UL15.

72.     The loss runs submitted with the applications and renewal applications for the above noted policies did not include the Glynn Claim.

**The Egan Claims**

73.     On or about June 22, 2013, Neil and Scott Egan suffered severe bodily injury resulting from a physical altercation with other patrons of Drinker's Tavern (owned by Alaska Waffle House, LLC).  On or about June 19, 2014, the Egans filed civil complaints captioned Neal Egan v. Drinkers Tavern, et al., and Scott Egan v. Drinkers Tavern, et al., filed in the Court of Common Pleas, Philadelphia County, Case ID 140602738 and 140602739, respectively (the "Egan Claims").

74.   Alaska Waffle House, LLC, a participant/additional named insured in the HSS (A) Program, was served with the complaint in the Glynn Claim on or around June 19, 2014.

75.   HSS assigned the Selective Law Group to defend Alaska Waffle House, LLC and an appearance was entered by Selective Law Group on July 17, 2014.

76.   Aspen was first notified of the Egan Claims on January 19, 2016, thirty (30) months after the injury/occurrence, eighteen (18) months after suit was filed and three (3) weeks before the scheduled trial date.

77.   Aspen has disclaimed coverage for the Egan Claims based upon HSS's breach of the terms, conditions and duties contained within the Aspen Policies, including but not limited to the notice conditions.

78.   Despite the knowledge of these significant claims, HSS failed to immediately notify Aspen of the injuries, occurrence and suits in breach of the express terms and conditions of the Aspen Policies.  Moreover, HSS failed to notify Aspen of the Egan Claims during the application and renewal application for multiple Aspen Policies issued to the HSS Program, including but not limited to policy numbers CR0038P14, CX0038Q14, CX0038U14, CRA8Y413, CXAE6MU14, CRAC26P13, CX0020Y14, CX0027W14, CRADJ9K13, CXAEH714 and CR003UL15.

16

3643829-1

79.     The loss runs submitted with the applications and renewal applications for the above noted policies did not include the Egan Claims.

**The Possinger Claim**

80.     On or about July 11, 2013, Kyla Possinger was caused to suffer severe bodily injuries as a result of a motor vehicle accident when her motorcycle was struck by a vehicle operated by a patron of the tavern known as R.P. McMurphy's (owned by Brother Williams, Inc.).  On or about October 22, 2014, Kyla Possinger filed a civil action styled Possinger v. RP McMurphy's, et al. Case ID 141002590, in the Court of Common Pleas, Philadelphia County (the "Possinger Claim").

81.     The patron of R.P. McMurphy's who allegedly caused the motor vehicle accident was apprehended by the Police inside R.P. McMurphy's shortly after the accident.

82.     Brother Williams, Inc., a participant/additional named insured in the HSS (A) Program, was served with the complaint in the Possinger Claim on or around October 22, 2014.

83.     HSS assigned the Selective Law Group to defend Brother Williams, Inc. and an appearance was entered by Selective Law Group on January 13, 2015.

84.     Aspen was first notified of the Possinger Claim on January 20, 2016, thirty (30) months after the injury/occurrence and fifteen (15) months after suit was filed.

17

85.     Aspen is currently defending Brother Williams in the Possinger Claim pursuant to a reservation of rights under policy no. CRA8YY413 in the HSS (A) Program.

86.     Despite the knowledge of this significant claim, HSS failed to immediately notify Aspen of the injuries, occurrence and suits in breach of the express terms and conditions of the Aspen Policies.   Moreover, HSS failed to notify Aspen of the Possinger Claim during the application and renewal application for multiple Aspen Policies issued to the HSS Program, including but not limited to policy numbers CR0038P14, CX0038Q14, CX0038U14, CX0020Y14, CX0027W14, CRADJ9K13, CXAEH714 and CR003UL15.

87.     The loss runs submitted with the applications and renewal applications for the above noted policies did not include the Possinger Claim.

**The Kocher Claim**

88.     On or about March 21, 2014, Shawn Kocher was caused to suffer severe bodily injuries, including traumatic brain injury, as a result of a motor vehicle accident while he was a passenger in a vehicle operated by a patron of the tavern known as Roosevelt's 21 (owned by Backjama G. Enterprises Inc. and Majack Bag Ventures, Inc.).   On or about July 14, 2014, Shawn Kocher filed a civil action styled Kocher v. Backjama G. Enterprises Inc., et al., Docket # 2014-6545, in the Court of Common Pleas, Northampton County (the "Kocher Claim").

18

89.     Backjama G. Enterprises Inc. and Majack Bag Ventures, Inc., participants/additional named insureds in the HSS (B) Program, were served with the complaint in the Kocher Claim shorlty after it was filed on July 14, 2014.

90.     HSS assigned the Selective Law Group to defend Backjama G. Enterprises Inc. and Majack Bag Ventures, Inc.  in connection with the Kocher Claim.

91.     Aspen was first notified of the Kocher Claim on January 20, 2016, two (2) years after the injury/occurrence, eighteen (18) months after suit was filed and two (2) months before the scheduled trial date.

92.     Aspen is currently defending Backjama G. Enterprises Inc. and Majack Bag Ventures, Inc. in the Kocher Claim pursuant to a reservation of rights under policy no. CRAC26P12 in the HSS (B) Program.

93.     Despite the knowledge of this significant claim, HSS failed to immediately notify Aspen of the injury, occurrence and suit in breach of the express terms and conditions of the Aspen Policies.  Moreover, HSS failed to notify Aspen of the Kocher Claim during the application and renewal application for multiple Aspen Policies issued to the HSS Program, including but not limited to policy numbers CR0038P14, CX0038Q14, CX0038U14, CX0020Y14, CX0027W14, CXAEH714 and CR003UL15.

94.   The loss runs submitted with the applications and renewal applications for the above noted policies did not include the Kocher Claim.

**The Howard Claim**

95.   On or about January 24, 2013, Charalynn Howard was caused to suffer severe bodily injuries, as a result of being struck by patron who was extricated from the tavern known as Kildare's of Manayunk (owned by Kildare's Manayunk, Inc.) by an employee (bouncer).   On or about October 15, 2014, Charalynn Howard filed a civil action styled Howard v. Kildare's Inc., et al., Case ID 141001658, in the Court of Common Pleas, Philadelphia County (the "Howard Claim").

96.   Kildare's Manayunk, Inc., a participant/additional named insured in the HSS (A) Program, was served with the complaint in the Howard Claim shortly after it was filed on October 15, 2014.

97.   HSS assigned the Selective Law Group to defend Kildare's Manayunk, Inc. in connection with the Howard Claim.   Selective Law Group entered their appearance on December 5, 2014

98.   Aspen was first notified of the Howard Claim on January 19, 2016, three (3) years after the injury/occurrence and fifteen (15) months after suit was filed.

99.  The Howard Claim was settled with contributions from both Aspen and HSS.

100.  Despite the knowledge of this significant claim, HSS failed to immediately notify Aspen of the injury, occurrence and suit in breach of the express terms and conditions of the Aspen Policies.  Moreover, HSS failed to notify Aspen of the Howard Claim during the application and renewal application for multiple Aspen Policies issued to the HSS Program, including but not limited to policy numbers CRA8YY413, CXAE6MU14, CR0038P14, CX0038Q14, CX0038U14,   CRAC26P13,   CX0020Y14,   CX0027W14,   CRADJ9K13, CXAEH714 and CR003UL15.

101.  The loss runs submitted with the applications and renewal applications for the above noted policies did not include the Howard Claim.

### Recent Notice of Additional Claims

102.  Since November 2015, Aspen has been put on notice of over one hundred twenty (120) additional claims made in the HSS Program.  Approximately fifty percent (50%) of these claims occurred from 2012 to 2014.

103.  For comparison, Aspen received approximately 7-10 claims per year from the HSS Program during each of the prior 5 years.

21

104.   Upon information and belief HSS and/or the participants/additional named insureds in the HSS Program were aware of these injuries, occurrences or suits when applying for, and renewing one or more of the Aspen Policies.

**Grounds for Rescission**

105.   In the applications for the issuance and renewal of the Aspen Policies, and thereafter, HSS misrepresented, omitted and/or concealed material information regarding the injuries, losses, claims and suits that had occurred in the HSS Program.  If HSS had disclosed such information, Aspen would not have issued the Aspen Policies as written, if at all.

106.   HSS was aware of the materiality and falsity of the misrepresented, omitted and/or concealed information that was not submitted and was aware that Aspen would either not have issued and renewed the Aspen Policies or would have issued and/or amended the Aspen Policies under different terms and conditions, including but not limited to a different premium rate, if Aspen had known the misrepresented, omitted, false and/or concealed information.

107.   Aspen relied on HSS' material misrepresentations to its detriment.

108.   The last premium payment for the Aspen Policies was received by Aspen on August 13, 2015 in the amount of $1,016,400.

22

109.   During the course of the investigation of the aforementioned claims, Aspen discovered HSS' material misrepresentations.   Aspen accepted no further premium payments thereafter.

110.   On or about February 29, 2016, Aspen notified HSS that Aspen was cancelling Aspen Policies CR003UL15, CX0038Q14, CX0038U14 and CR0038P14 as of March 30, 2016.

*111.*   The applications and renewal applications contain the following provisions:

> *ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIALS THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND; CIVIL PENALTIES, INSURANCE BENEFITS MAY ALSO BE DENIED.*
>
> *THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION.   HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE*

## COUNT I - EQUITABLE RESCISSION

112.   The allegations contained in paragraphs 1-111 are incorporated by reference herein as if fully set forth herein.

113.   In connection with the procurement and maintenance of the Aspen Policies, HSS intentionally omitted known injuries, "occurrences", claims and "suits" within the HSS Program, including but not limited to the Crowley, Glynn, Egan, Possinger, Kocher and Howard Claims, from the applications for certain Aspen Policies.

114.   The acts and omissions of HSS constitute misrepresentations, omissions, concealments of facts and/or incorrect statements to Aspen in the application for, and/or negotiation of the Aspen Policies.

115.   The number and severity of the injuries, "occurrences", claims and "suits" is material to the acceptance of the risk by Aspen.

116.   It was discovered by Aspen after the issuance of all the Aspen Policies, contrary to what was represented to it at the time of the quoting and issuance of the Aspen Policies, that HSS was aware of, and concealing dozens of injuries, "occurrences", claims and "suits" within the HSS Program in orde to procure the Aspen Policies.

117.   Aspen relied on HSS' material misrepresentations, omissions, concealments of fact and/or incorrect statements to its detriment.

118.   The misrepresentations, omissions, concealments of facts and incorrect statements regarding prior and pending claims under the HSS Program

24

and loss experience was material to the acceptance of the risk and material to the hazards accepted by Aspen.

119.  As a result of the misrepresentations, omissions, concealments of facts and incorrect statements set forth above, the Aspen Policies should be rescinded *ab initio*, including but not limited as to any and all purported insureds, named insureds and additional insureds.

120.  Aspen has provided and/or is currently providing defense and/or indemnity insurance coverage for various past and pending liability claims and lawsuits under the HSS Program.

121.  Upon rescission of the Aspen Policies, Aspen is entitled to retain some or all of the premium paid for the Aspen Policies as an off-set to the costs and expenses Aspen has incurred as a result of the issuance of the Aspen Policies, including but not limited to any defense and/or indemnity payments made by Aspen under the HSS Program.

122.  Upon rescission of the Aspen Policies, Aspen is entitled to restitution of the costs and expenses Aspen has incurred as a result of the issuance of the Aspen Policies, including but not limited to any defense and/or indemnity payments made by Aspen under the HSS Program

25

## COUNT II - RESCISSION BASED ON FRAUD

123.   The allegations contained in paragraphs 1-122 are incorporated by reference herein as if fully set forth herein.

124.   HSS knowingly made false representations and concealed material information with the intention of inducing Aspen to issue the Aspen Policies. Specifically, HSS failed to notify Aspen of injuries, "occurrences", claims and "suits" within the HSS Program, including but not limited to the Crowley, Glynn, Egan, Possinger, Kocher and Howard Claims, on the applications for certain Aspen Policies.

125.   HSS knew that the information regarding the pending injuries, "occurrences", claims and "suits" within the HSS Program was material to Aspen's underwriting process and assessment of the risk.

126.   HSS intended for Aspen to rely on the false and concealed information in its procurement of the Aspen Policies.

127.   The misrepresentations, concealment of facts, omissions and incorrect statements provided to Aspen by HSS were fraudulent.

128.   Aspen did in fact rely upon the false information provided by HSS, to its detriment, in issuing and maintaining the Aspen Policies

129.   Aspen has recently learned of the information contained herein.

130.   As a result of the foregoing, Aspen has suffered, and will continue to suffer damages, if the Aspen Policies are not rescinded, in an amount that exceeds the jurisdictional limits of this Court.

131.   Since the misrepresentations, omissions, concealments of fact and/or incorrect statements of fact recited above, individually and together, were fraudulent, the Aspen Policies should be rescinded *ab initio*, including but not limited as to any and all purported insureds, named insureds and additional insureds.

132.   Aspen has provided and/or is currently providing defense and/or indemnity insurance coverage for various past and pending liability claims and lawsuits under the HSS Program.

133.   Upon rescission of the Aspen Policies, Aspen is entitled to retain some or all of the premium paid for the Aspen Policies as an off-set to, and/or for restitution of, the costs and expenses Aspen has incurred as a result of the issuance of the Aspen Policies, including but not limited to any defense and/or indemnity payments made by Aspen under the HSS Program.

134.   Upon rescission of the Aspen Policies, Aspen is entitled to restitution of the costs and expenses Aspen has incurred as a result of the issuance of the Aspen Policies, including but not limited to any defense and/or indemnity payments made by Aspen under the HSS Program

27

## COUNT III - DECLARATORY RELIEF

135.   The allegations contained in paragraphs 1 – 134 are incorporated by reference herein as if fully set forth herein.

136.   Pleading alternatively, if the Aspen Policies are not rescinded, there is an actual and justiciable controversy, and Aspen is uncertain as to its rights.  Aspen states that the misrepresentations, omissions, concealment of facts and incorrect statements, because they were fraudulent, material to the acceptance of the risk, and/or material to the hazard assumed, and further because Aspen would in good faith not have issued the Aspen Policies had the true information been known, renders the Aspen Policies inapplicable to various pending claims, and any claim brought or to be brought as a result thereof or to be made under the Aspen Policies.

137.   Pleading alternatively, in the event that this Court does not exercise is equity powers and completely rescind the Aspen Policies, Aspen seeks a declaration that there is no coverage under the Aspen Policies for various pending claims, and any claim brought or to be brought as a result thereof or to be made under the Aspen Policies.

138.   Aspen seeks a judicial determination from this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., declaring whether and to what extent Aspen has a coverage obligation to HSS and/or other insureds under the Aspen Policies.

28

## COUNT IV - DECLARATORY RELIEF - FRAUD

139.  The allegations contained in paragraphs 1-138 are incorporated by reference herein as if fully set forth herein.

140.  Pleading alternatively, HSS knowingly made false representations, misrepresentations, omissions, concealment of facts and incorrect statements with the intent of deceiving and inducing Aspen to issue the Aspen Policies.

141.  These misrepresentations, omissions, concealment of facts, and incorrect statements include, but are not limited to, failing to disclose known injuries, "occurrences", claims and "suits" within the HSS Program, including but not limited to the Crowley, Glynn, Egan, Possinger, Kocher and Howard Claims, on the applications for certain Aspen Policies.

142.  These representations and misrepresentations were made by HSS with the intention of deceiving and inducing Aspen to issue policies that it would otherwise not issue.

143.  Aspen relied upon the false representations, misrepresentations and omissions in issuing the Aspen Policies.

144.  Aspen has suffered and will continue to suffer damages as a result of this fraud.

145.  As a result, if the Aspen Policies are not rescinded, an actual and justiciable controversy exists, Aspen is uncertain of its rights, and Aspen seeks a

declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., that there is no coverage under the Aspen Policies for various pending claims, and any claim brought or to be brought as a result thereof or to be made under the Aspen Policies.

## COUNT V - DECLARATORY RELIEF - NO COVERAGE

146.   The allegations contained in paragraphs 1-145 are incorporated by reference herein as if fully set forth herein.

147.   HSS has requested insurance coverage under one or more Aspen Policies for various claims, demands and lawsuits asserted by numerous claimants against HSS Program participants/additional named insureds in several jurisdictions around the country (the "Underlying Claims").

148.   These coverage claims made by HSS have given rise, and likely will continue to give rise, to disputes between and among Aspen and HSS, including without limitation disputes concerning the proper interpretation of various policy terms, and the existence, scope and extent of coverage, if any, with respect to the Underlying Claims under the Aspen Policies.

149.   The Aspen Policies contain various terms, conditions, provisions and exclusions which must be satisfied or found not to apply for coverage to exist with respect to the Underlying Claims, which may include but are not limited to:

3643829-1

a. Coverage is or may be barred to the extent that an insured has failed to notify Aspen as soon as practicable of an injury, occurrence or an offense, regardless of the amount, which may result in a claim and/or to provide written notice of a claim or suit as soon as practicable in connection with the Underlying Claims as required pursuant to the Aspen Policies;

b. Coverage is or may be barred to the extent that the Underlying Claims involve damages or injuries for which an insured has voluntarily made payment, assumed an obligation or incurred an expense without Aspen's consent;

c. Coverage is or may be barred to the extent that an insured has failed to satisfy all duties and conditions precedent in connection with the Underlying Claims, including without limitation compliance with the assistance and cooperation provisions set forth in the Aspen Policies;

d. Coverage is or may be barred to the extent that an insured has failed to provide quarterly written summaries (loss runs) of all "occurrences", claims, "suits", or offenses which have or may result in payments within the Retained Limit of the Aspen Policies;

31

    e.   Coverage is or may be barred to the extent that any person or entity seeking coverage in connection with the Underlying Claims does not qualify as a named insured or insured under the Aspen Policies.

150.   Aspen seeks a judicial determination from this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., declaring whether and to what extent Aspen has a coverage obligation, under the Aspen Policies, to HSS and/or other insureds in connection with the Underlying Claims.

## COUNT VI - RESERVATION TO ASSERT ADDITIONAL GROUNDS FOR RESCISSION OR DECLARATORY JUDGMENT

151.   The allegations contained in paragraphs 1-150 are incorporated by reference herein as if fully set forth herein.

152.   Aspen's investigation with respect to potential coverage under the Aspen Policies is still in its early stages and is ongoing.

153.   Aspen brings this action for rescission and for a declaration of its rights and obligations under the Aspen Policies in order to promptly address the issues set forth herein.

154.   Additional independent grounds may be available to support rescission or a declaration that coverage is limited and/or not available with respect to the HSS Program.

155. By not specifically raising any such limitations or exclusions at this time, Aspen expressly does not waive any of its rights under the Aspen Policies and/or at law.

156. To the contrary, Aspen's investigation is ongoing, and it continues to fully reserve all of its rights under the Aspen Policies and/or at law, and specifically reserves all of its rights to amend this Complaint to assert additional grounds to support rescission and/or a declaration that coverage is limited and/or not available with respect to the HSS Program.

## **PRAYER FOR RELIEF**

WHEREFORE, Aspen respectfully requests that the Court enter judgment against Defendants and in its favor as follows:

a. Rescinding the Aspen Policies due to misrepresentations, omission, concealment of facts and incorrect statements material to the acceptance of the risk by Aspen;

b. Rescinding the Aspen Policies due to misrepresentations, omissions, concealment of facts and incorrect statements material to the hazard assumed by Aspen;

c. Rescinding the Aspen Policies because Aspen in good faith would not have issued the Aspen Policies had the misrepresentations, omissions,

33

concealment of facts and incorrect statements not been made to Aspen by and on behalf of HSS, or had the true information been known;

d.  Rescinding the Aspen Policies due to the fraudulent misrepresentations, omissions, concealment of facts and/or incorrect statements by and on behalf of HSS;

e.  Declaring that Aspen is entitled to retain some or all of the premium paid for the Aspen Policies as an off-set to the costs and expenses Aspen has incurred as a result of the issuance of the Aspen Policies, including but not limited to any defense and/or indemnity payments made by Aspen under the HSS Program.

f.  Declaring that Aspen is entitled to restitution of the costs and expenses Aspen has incurred as a result of the issuance of the Aspen Policies, including but not limited to any defense and/or indemnity payments made by Aspen under the HSS Program.

g.  A declaration as to the respective rights and obligations of the parties, and specifically a judgment declaring that Aspen owes no coverage for the pending claims or any claim made or to be made under the Aspen Policies;

h.  A declaration as to the respective rights and obligations of the parties with respect to defense and indemnity coverage in connection with the Underlying Claims;

i.  A declaration that Aspen is entitled to a judgment for its reasonable attorney's fees and costs of this suit; and

j.  For such other and further relief as the Court deems just and proper.

CONNELL FOLEY LLP

Dated: March 9, 2016

Patrick J. Hughes (#41403)
457 Haddonfield Road, Suite 230
Cherry Hill, NJ 08002
Tel:   (856) 317-7100
Fax:   (856) 317-7117
phughes@connellfoley.com
            and
Jonathan P. McHenry
William D. Deveau
Connell Foley LLP
85 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 535-0500
Fax: (973) 535-9217

Attorneys for Plaintiff,
Aspen Specialty Insurance Company