IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASPEN SPECIALTY INS. CO. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HOSPITALITY SUPPORTIVE | : | |
| SYSTEMS, LLC | : | NO. 16-1133 |

MEMORANDUM

Dalzell, J.                                                                                                          June 9, 2016

## I.   Introduction

We consider here defendant Hospitality Supportive Systems, LLC's ("HSS") motion to dismiss.  Plaintiff Aspen Specialty Insurance Company ("Aspen") brings this action for equitable rescission, rescission based on fraud, and declaratory relief, averring that HSS made material misrepresentations when entering into insurance contracts with Aspen.

We have diversity jurisdiction over these claims pursuant to 28 U.S.C. § 1332.

HSS moves to dismiss Counts I and II of Aspen's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and, in the alternative, moves for a more specific pleading under Fed. R. Civ. P. 9(b). HSS further asserts that we should decline to exercise jurisdiction over Counts III, IV, and V of the complaint, wherein Aspen requests declaratory relief.

For the reasons set forth below, we will deny HSS's motion in its entirety.

## II.   Standard of Review

A defendant moving to dismiss under Fed R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief.  See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  To survive a motion to dismiss under

Rule 12(b)(6), the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action…do not suffice."  Id.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.  The Court further notes that analyzing claims is a "context-specific task" that requires judges to use their "judicial experience and common sense" when ultimately deciding whether or not a plaintiff has pled sufficient factual content to plausibly state a claim for relief.  Iqbal, 556 U.S. at 679.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted).  In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Fed. R. Civ. P. 9(b) requires plaintiffs asserting fraud claims to plead with particularity the "circumstances of the alleged fraud." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006). The purpose of Rule 9(b) is to "give defendants notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements." Id. (internal quotations omitted). In order to meet the heightened pleading requirements of Rule 9(b), a plaintiff may plead with particularity the "time, place and manner of each of the defendants' fraudulent statements or actions." Enslin v. The Coca Cola Co., 136 F. Supp. 3d 654, 674 (E.D. Pa. 2015) (quoting Fed. R. Civ. P. 9(b)). While allegations of the time, place, or manner of fraud allow a plaintiff to meet Rule 9(b)'s requirements, the rule does not mandate the pleading of these elements, as plaintiffs "are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F. 2d 786, 791 (3d Cir. 1984), abrogated in part and on separate grounds by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

We recite the facts as they appear in the complaint.

**III.     Factual Background**

Aspen is an insurance company that issued multiple primary and excess commercial liability insurance policies, with general liability and liquor liability coverage parts, to HSS. Compl. at ¶ 13. HSS is an insurance purchasing group that solicits business owners and operators within the hospitality and restaurant industries to join property and liability insurance sharing programs. Id. at ¶ 8. Participants in these programs enter into a Master Services Agreement with HSS that permits HSS to procure insurance coverage on their behalf. Id. at ¶¶ 11, 14. The purchased policies designate HSS as the primary or first Named Insured and HSS's

clients as "Additional Named Insureds."  Id. at ¶¶ 12, 14.  Under the Master Services Agreement, the Additional Named Insureds grant HSS full authority to undertake the primary responsibilities under any insurance policies -- including negotiations, procurement, and binding. Id. at ¶ 15.  Notably, this authority also includes coordination with legal counsel to defend any Additional Named Insureds against lawsuits.  Id. at ¶¶ 21-22.

HSS contacted Aspen in 2011 about the purchase of general, liquor, and excess liability coverage on behalf of the Additional Named Insureds.  Id. at ¶ 28.  In its application for coverage with Aspen, HSS submitted a list of the Additional Named Insureds who supposedly qualified under HSS's own guidelines, as well as loss runs describing the claims history of each.  Id. at ¶¶ 18, 27.  Aspen relied on HSS's representations and between 2011 and 2015 issued fourteen primary and excess liability insurance policies to HSS on behalf of those Additional Named Insureds.  Id. at ¶¶ 6-7, 28-57.  These policies were all subject to notice provisions that required HSS to inform Aspen of any potential claims or suits that may implicate Aspen's insurance coverage.  Id. at ¶¶ 64, 71, 78, 86, 93, 100.   HSS had the authority to communicate and work with Aspen on all matters relating to coverage issues for HSS's programs.  Id. at ¶ 20.  In line with its responsibilities under the Master Services Agreement, Aspen retained Selective Risk Management, LLC as its third-party claims administrator and hired Selective Law Group as its claims defense counsel for any claims the Additional Named Insureds made under the Aspen policies.  Id. at ¶¶ 21-22.

In January of 2015, HSS notified Aspen of a pending claim against an Additional Named Insured that stemmed from a fatality in a motor vehicle accident that occurred in April of 2013. Id. at ¶¶ 58, 61.   HSS notified Aspen of this claim just two months before the scheduled trial date, yet Aspen still defended the Additional Named Insured pursuant to the issued insurance

4

policies.  Id. at ¶¶ 61-62.  Six months later, Aspen inquired as to HSS's failure to promptly report this claim in conformance with HSS's notice obligations under the policies, and HSS responded by affirmatively stating that there were no other claims pending in the HSS programs of which to notify Aspen.  Id. at ¶¶ 63-64.  But, in November of 2015, HSS started to notify Aspen of numerous claims implicating Aspen's policies, many of which arose from events that happened as early as 2014.  Id. at ¶ 102.

Aspen subsequently initiated an investigation to determine the extent and timing of HSS's knowledge regarding these claims.  Id. at ¶ 109.  Aspen learned that HSS had known of these additional claims many months earlier, as HSS had retained Selective Law Group to defend some of the Additional Named Insureds in their underlying actions somewhere between fifteen and twenty months before notifying Aspen of those claims' existence.  Id. at ¶¶ 69, 76, 84, 91, 98.  Moreover, Aspen learned that HSS had omitted the potential losses from these actions from the loss runs it submitted in conjunction with its application for coverage.  Id. at ¶¶ 63, 71, 78, 86, 93, 100.  Aspen therefore canceled HSS's four policies still in effect and filed this action.  Id. at ¶ 110.  HSS filed a related action in the Court of Common Pleas of Delaware County, Pennsylvania, which Aspen promptly removed to this Court.  See Notice of Removal, Hospitality Supportive Systems, LLC v. Aspen Specialty Ins. Co., No. 16-CV-1330.  We are now presiding over both of these actions.

**IV.    Discussion**

HSS moves to dismiss Counts I and II of Aspen's complaint, requesting equitable rescission and rescission based on fraud, and, in the alternative, moves for a more specific pleading.  It also asserts that we should decline to exercise jurisdiction over Counts III, IV, and

V, where Aspen requests declaratory relief.  We will consider these issues separately and in turn.

        A.      <u>**Equitable Rescission and Rescission Based on Fraud**</u>

Aspen brings claims for equitable rescission and rescission based on fraud which HSS now moves to dismiss.  Rescission is an equitable remedy whose purpose is to return parties to their original positions before the execution of a contract.  See <u>Baker v. Cambridge Chase, Inc.</u>, 725 A.2d 757, 766 (Pa. Super. Ct. 1999).  In order to rescind a contract under Pennsylvania law, an insurer must demonstrate that (1) the insured made a false representation, (2) the insured knew the representation was false or made the representation in bad faith, and (3) the representation was material to the risk being insured.  <u>Northwestern Mut. Life Ins. Co. v. Babayan</u>, 430 F.3d 121, 129 (3d Cir. 2005).

Aspen has clearly pled facts sufficient to state a plausible claim for equitable rescission under Pennsylvania law.  Aspen avers that HSS knew of the potential claims the Additional Named Insureds faced, and yet it represented to Aspen that no such claims existed.  These claims were material to the risk Aspen insured, as Aspen potentially would have had the duty to defend and indemnify HSS and the Additional Named Insureds on those claims.

HSS nonetheless asserts that Aspen is not entitled to equitable rescission for several reasons.  First, it states that Aspen cannot state a claim for equitable rescission while keeping the insurance premiums HSS paid, citing <u>Associated Elec. & Gas Ins. Services, Ltd. v. Rigas</u>, 382 F. Supp. 2d 685, 691 (E.D. Pa. 2004).  There, our colleague Judge Baylson stated that "rescission is available to a defrauded party <u>without a judicial determination</u> if the party repudiates the contract and provides restitution."  <u>Id.</u> (emphasis added).  But that case is distinguishable from the matter before us.  Rescission requires "either that the rescinding party return what he received before a

6

rescission could be effected (rescission at law), or else that a court affirmatively decree rescission (rescission in equity)." Deutsche Bank Nat. Trust Co. v. Gardner, 125 A.3d 1221, 1227 (Pa. Super. Ct. 2015) (quoting Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790, 793 (2015)). It is clear in Rigas that Judge Baylson was describing rescission at law, which requires the insurer to return the insured's premiums, but, in this case, Aspen seeks rescission in equity. HSS cites, and we have found, no case law to support the notion that equitable rescission mandates the return of insurance premiums before the insurer can bring a claim.

HSS also argues that Aspen's decision to cancel its four most recent policies forecloses Aspen's ability to rescind them. This argument also fails. HSS's argument relies upon Metropolitan Property and Liability Ins. Co. v. Commonwealth of Pa. Ins. Comm'r., 509 A.2d 1346, 1348 (Pa. Commw. Ct. 1986), which interprets Act 78, 40 P.S. §§ 1008.1-1008.11 -- a statute concerning only automobile insurance. In contrast, the Pennsylvania statute concerning casualty liability, 40 P.S. §§ 3401, et seq., allows for an insurer to seek rescission of an insurance policy after it had already canceled said policy. See § 3403.

HSS next contends that Aspen cannot rescind policies that have already expired. HSS cites, and we have found, no law to support this assertion. Moreover, common sense and judicial experience dictate that Aspen can plausibly state a claim for rescission for policies that have expired since its argument is that it never would have issued policies to HSS had HSS been forthright when applying for insurance coverage.

HSS further avers that Aspen has waived its right to rescission by failing to act promptly. This argument also must fail. The entire theory of Aspen's case is that HSS made material misrepresentations to Aspen when applying for insurance coverage. Importantly, Aspen has pled that it canceled HSS's remaining policies and initiated this action once it concluded its

investigation into the timing of HSS's prior knowledge of the outstanding claims for its Additional Named Insureds. So while HSS attempts to paint Aspen as a party that has slept or sat (depending on the case it chooses to quote, see Mot. at 8) on its rights, we find that Aspen has pled facts that show this was not the case.

HSS then argues that Aspen has not met the heightened pleading requirements for fraud under Fed. R. Civ. P. 9(b), but we again disagree. In its complaint, Aspen painstakingly detailed those claims it alleges HSS knew of when HSS applied for the insurance coverage, when HSS allegedly knew of them, and the reason why Aspen knew HSS was aware of those pending claims. More specific pleadings are thus unnecessary.

Finally, HSS avers that Aspen cannot rescind the insurance contracts between them because it would also be rescinding coverage of third parties -- specifically, the Additional Named Insureds. HSS makes clear that it is not arguing that Aspen failed to name indispensable parties under Fed. R. Civ. P. 12(b)(7), and cites our rejection of this argument in Scottsdale Ins. Co. v. RSE Inc., 303 F.R.D. 237-239 (E.D. Pa. 2014). Instead, HSS states that since Aspen cannot be awarded relief without harming innocent third-parties, the relief would be inequitable as a matter of law. HSS's argument relies on Erie Ins. Exchange v. Lake, 671 A.2d 681, 687 (Pa. 1996) ("Although on the surface it appears harsh to force the insurance company to abide by a contract procured by fraud, it would be beyond harsh to preclude the third part[ies], who are innocent of trickery, and injured through no fault of their own, from receiving protection under the policy."). But, again, the matter before us is distinguishable. In Lake, the Pennsylvania Supreme Court was interpreting Act 78 which, as we noted earlier, governs the issuance of automobile insurance within the Commonwealth. Moreover, the parties who sought insurance coverage in Lake were the ones injured in an automobile accident who were attempting to collect

payment from the other driver's insurance company.  Id. at 366-67.  There, the other driver had fraudulently entered into an insurance contract with Erie Insurance.  Erie subsequently sought rescission from the contract so as to allow it to avoid paying the injured third-party individuals who were not the insured and who were not covered by the insurance policy between the driver and Erie.  Id. at 367-68.  This is a materially different situation than the one before us today.  The Additional Named Insureds in this case appointed HSS as their agent under the Master Services Agreement, and case law is clear that principals who assign agents to a position where they could commit fraud, while acting within their authority, are subject to liability.  See B.J. McAdams, Inc. v. Boggs, 439 F. Supp. 738, 746 (E.D. Pa. 1977) (quoting RESTATEMENT (SECOND) OF AGENCY § 267 (1958).  The Additional Named Insureds are not like the innocent third parties in Lake, but instead entered into a contractual agreement with a company that allegedly committed fraud when entering into insurance policies on their behalf.  We therefore reject HSS's final argument in support of their request for dismissal of Counts I and II of Aspen's complaint.

### B. Declaratory Judgment

HSS further asserts that we should decline to exercise jurisdiction over Aspen's declaratory judgment claims in Counts III, IV, and V of the complaint.  To support this assertion, HSS cites Reifer v. Westport Ins. Corp., 751 F.3d 129, 146 (3d Cir. 2014), where our Court of Appeals announced an eight factor-test for declining or exercising jurisdiction under the Declaratory Judgment Act in insurance cases.  Those factors include, but are not limited to:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;

>(6) avoidance of duplicative litigation;
>(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
>(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Id. at 146. Notably, our Court of Appeals stated that "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction." Id. at 145.

We had applied these factors to analyze a similar case in Scottsdale, and our analysis is comparable here. As was the case in Scottsdale, factors one, two, five, six, and seven weigh in favor of our exercising jurisdiction. A declaration by this Court would resolve any uncertainties regarding Aspen's obligations under their policies with HSS. Since the parties are already before us, convenience weighs in favor of our exercising jurisdiction. As to factors five, six, and seven, we must note that Aspen is not simply seeking a declaratory judgment. Instead, Aspen's complaint requests equitable rescission and rescission based on fraud in Counts I and II. HSS does not ask that we decline jurisdiction over these counts. Instead, it asks that we decline jurisdiction over Counts III, IV and V while retaining jurisdiction over the rescission claims, an action that would itself create parallel state proceedings between the parties.[1] This is one of the occurrences that the court in Reifer sought to avoid, and thus factors five, six, and seven unquestionably favor the exercise of our jurisdiction.

To be sure, it would seem that factors four and eight weigh in favor of declining jurisdiction. Aspen would be forced to join the Additional Named Insureds in a state court action pursuant to Vale Chem. Co. v. Hartford Accident & Indem. Co., 516 A.2d 684 (Pa. 1986),

---

[1] We understand that HSS was not asking us to produce this absurd result, as it moved to dismiss Counts I and II of Aspen's complaint. But as we have denied that motion, declining jurisdiction would indeed lead to absurdity.

an issue which implicates factor four.  And we do not take lightly any potential conflict of interest between Aspen's duty to defend the Additional Named Insureds in state court while pursuing a declaratory judgment in this court.  But these factors do not outweigh the judicial interest in avoiding parallel state and federal litigation and the convenience of the parties.  We will therefore continue to exercise jurisdiction over all of Aspen's claims.

### V.      Conclusion

HSS's motion to dismiss Counts I and II of Aspen's complaint is meritless, as Aspen has pled facts sufficient to state a plausible claim for relief.  Aspen has also met the heightened pleading requirements for fraud outlined in Fed. R. Civ. P. 9(b).  Further, the factors enunciated by our Court of Appeals in Reifer support the exercise of federal jurisdiction.  We will therefore deny HSS's motion in its entirety.  An appropriate Order follows.


                                        BY THE COURT:


                                         /s/ Stewart Dalzell, J.
                                        Stewart Dalzell, J.