UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

ASPEN SPECIALTY INSURANCE COMPANY,  :
        Plaintiff                    :

                                 :  CIVIL ACTION

            v.                     :

                                 :  NO. 16-cv-01133-JD

HOSPITALITY  SUPPORTIVE  SYSTEMS, LLC, :
et al.,                                :  JURY TRIAL DEMANDED
        Defendants.             :

_____  :

HOSPITALITY SUPPORTIVE SYSTEMS, LLC,  :
        Plaintiff                   :
                                 :

            v.                     :
                                 :

ASPEN SPECIALTY INSURANCE COMPANY,  :
        Defendant.               :
--------------------------------------------------------------

MOTION OF DEFENDANTS
SNOW, CARMAN CORPORATION, SELECTIVE LAW GROUP LLC
AND SELECTIVE RISK MANAGEMENT LLC TO DISMISS AMENDED COMPLAINT

        Defendants Edward E. Snow ("Snow"), The Carman Corporation ("Carman"), Selective

Law Group LLC ("SLG") and Selective Risk Management LLC ("SRM"), defendants in Civil

Action 16-cv-01133 above, by their undersigned counsel, move this Honorable Court for

dismissal of Counts X, XI, XII and XIX of the Amended Complaint pursuant to Fed.R.Civ.P.

12(b)(6) or, in the alternative, for a more specific pleading under Fed.R.Civ.P. 8 and 9(b).  In

addition, defendants move to strike the Doe defendants from this suit. In support of the motion,

defendants incorporate herein by reference the accompanying memorandum of law.

WHEREFORE, defendants/movants pray that Counts X, XI, XII and XIX of the Amended Complaint be dismissed with prejudice.

WEIR & PARTNERS LLP

By: /s/ Walter Weir Jr.
        Walter Weir Jr.
        Marc J. Zucker
The Widener Building, Suite 500
1339 Chestnut Street
Philadelphia, PA  19107
(215) 241-7751
wweir@weirpartners.com

Attorneys for defendants Snow, The Carman Corporation, Selective Law Group LLC and Selective Risk Management LLC

Dated: April 28, 2017

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY,<br>Plaintiff : | : |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 16-cv-01133-JD |
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC, :<br>et al.,<br>Defendants. | JURY TRIAL DEMANDED |

_____ :

| |
|---|
| :|
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC, :|
| Plaintiff :|
| :|
| v. :|
| :|
| ASPEN SPECIALTY INSURANCE COMPANY, :|
| Defendant. :|

-------------------------------------------------------------

**MEMORANDUM OF LAW OF DEFENDANTS SNOW, CARMAN CORPORATION,
SELECTIVE LAW GROUP LLC AND SELECTIVE RISK MANAGEMENT LLC
IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Aspen's Amended Complaint focuses primarily upon the original defendant, Hospitality Supportive Systems LLC ("HSS") and makes only passing reference to newly-added defendants Edward Snow ("Snow"), The Carman Corporation ("Carman"), Selective Law Group LLC ("SLG") and Selective Risk Management LLC ("SRM").  As described in greater detail below, none of the essential elements necessary to establish movants' liability has been pleaded, and they appear to have been added to the Amended Complaint solely for the tactical reason of adding so-called "deep pockets" to the case. Such cursory pleading falls far short of the requirements of the Federal Rules of Civil Procedure under Fed.R.Civ.P. 12(b)(6), 8 and 9(b), and warrants dismissal of the claims asserted against movants in Counts X, XI, XII and XIX.

Moreover, the Doe defendants should be stricken from the suit as contrary to the Federal Rules of Civil Procedure.

I.      FACTS AND PROCEDURAL HISTORY

        As alleged in the Amended Complaint, a copy of which is attached hereto as Exhibit 1, HSS is an insurance purchasing group which solicits business owners and operators within the hospitality and restaurant industry to enter into a property and liability insurance sharing program. (Amended Complaint at ¶24.) HSS secures insurance coverage through various property and liability insurance carriers as the primary named insured on such policies. (Id. at ¶29). Aspen, an insurance company, in turn, issued a series of commercial insurance policies to HSS between 2011 and 2015, providing general liability, liquor liability and excess liability coverage to HSS and its group members, individual restaurant, tavern and bar owners who became additional named insureds under one or more of the policies.  (Complaint at ¶¶30 and 42.)  Plaintiff refers to the policies generically as "the 'Aspen Policies' as further defined below." Id. at ¶42.

        Aspen alleges that HSS failed to disclose the accurate and complete claims history for certain additional insureds when it secured initial coverage or renewal coverage.  (Id. at ¶¶111, 119, 126, 134, 141, 148, 155).  HSS's alleged late transmission of notice of certain claims, and alleged failure to report such claims prior to the issuance or renewal of its policies are pleaded as material misrepresentations or negligence by HSS (id. at ¶¶160, 219-220).

        Aspen further alleges that Snow is and was the sole shareholder, principal and/or member of HSS (id. at ¶¶25 & 223); that Snow and Charles O'Donnell were shareholder of co-defendant SRM, HSS's third-party claims administrator (id. at ¶¶38, 40 & 78-79); that Snow is and was the president, CEO and treasurer of Carman (id. at ¶¶81 & 224); that O'Donnell is the president and

CEO of SLG, retained by HSS as claims defense counsel (id. at ¶¶38-40, 79); that Carman shares a common office location, officers and personnel with HSS (id. at ¶¶225 and 226); that HSS and Carman share common officers, including Snow, and that Snow dominates both entities, which operate as one entity (id. at ¶¶226-28) and that Snow failed to disclose to Aspen that "the three entities" (presumably SRM, SLG and perhaps HSS or Carman) "were related parties" by virtue of common ownership by Snow and O'Donnell.  (Id. at ¶80) (There is no allegation that attorney Charles O'Donnell has an interest in Carmen or HSS, so the three entities at issue are unclear.) In conclusory fashion, the Amended Complaint also alleges that Snow and/or Carman "used HSS to defraud Aspen" and "used HSS as their alter ego."  (Id. at ¶232-33).  Aspen alleges further that Snow executed certain asset purchase agreements with respect to HSS and co-defendant SRM in May 2015 among HSS, O'Donnell and co-defendants Trigen Insurance and SRM without Aspen's prior knowledge or authorization (id. at ¶¶88-92, 96 & 99); that SRM was acquired by defendant Patriot and later by defendant Trigen in exchange for monetary consideration (id. at ¶¶87, 91-92 & 291), and SRM was a party to amendments to asset purchase agreements with Trigen (¶96)

On or about February 29, 2016, Aspen notified HSS that, effective March 30, 2016, Aspen was cancelling the four policies still in effect. (Id. at ¶152.)  HSS filed suit in the Court of Common Pleas of Delaware County on or about March 16, 2016, which action Aspen removed to this Court on March 22, 2016.  This Court consolidated the two actions and directed Aspen and HSS to proceed with discovery on Aspen's claim for rescission and HSS's claim for breach of contract. The Court also provided that the pleadings could be amended without further leave of court if filed by February 10, 2017.  Both parties timely filed amended complaints thereafter. Aspen's amended complaint added 8 newly-named defendants, including movants herein, as

well as 25 unnamed Doe defendants.[1]


II.    ARGUMENT

A.    APPLICABLE STANDARD AND SCOPE.

A Rule 12(b)(6) motion tests the sufficiency of a complaint to state a legally cognizable claim. Avellino v. Herron, 991 F. Supp. 722 (E.D. Pa. 1997)(Robreno, J.).  Although the court must review the allegations of the complaint in a light most favorable to the plaintiff (Markowitz v. Northeast Land Co., 906 F.2d 100 (3d Cir. 1990)), it "need not accept as true unsupported conclusions and unwarranted inferences" cast as factual allegations.  Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 174 (3d Cir. 2000), cert. denied, 532 U.S. 1038 (2001).

Although the Court must accept all facts alleged as true and draw all reasonable conclusions arising from those facts in favor of plaintiffs, Allegheny General Hospital v. Phillip Morris, 228 F.3d 429, 434-35 (3d Cir. 2000), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Id. at 555.  This requires "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Haspel v.

---

[1] Federal Rule of Civil Procedure 10(a) requires that a Complaint include the names of all parties. Klingler v. Yamaha Motor Corp., U.S.A., 738 F. Supp. 898, 910 (E.D. Pa. 1990)(Cahn, J.), citing Kedra v. City of Philadelphia, 454 F.Supp. 652, 657 n. 1 (E.D.Pa.1978) (Luongo, J.). As Doe defendants are not parties to the case, and no allegations of substance are directed to them, references to them are deemed immaterial and must be stricken. Id.

State Farm Mutual Auto. Ins. Co., 241 Fed. Appx. 837, 839 (3d Cir. 2007) (unpublished), quoting Twombly, 550 U.S. at 562; accord, Nolan v. Duffy Connors LLP, 542 F. Supp. 2d 429, 431 (E.D. Pa. 2008)(Dalzell, J.).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Twombly, 550 U.S. at 555); Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."), citing Twombly, 550 U.S. at 556 n.3. To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, citing Twombly, 550 U.S. at 556.

   B.   ASPEN HAS FAILED TO ALLEGE ANY FACTS GIVING RISE TO LIABILITY OF DEFENDANT EDWARD SNOW.

Defendant Edward Snow is a party to only three counts:  Count X (with defendant Carman) for "Alter-Ego Liability," Count XI (also with defendant Carman) for negligence and Count XII for "Participation Liability." The facts as alleged are insufficient to support liability under any of the foregoing theories.

As noted above, the allegations specific to defendant Snow are thin at best.  The Amended Complaint states that Snow is an individual conducting business in Springfield, Pennsylvania (id. at ¶¶ 3, 14); that Snow is and was the sole shareholder, principal and/or member of HSS (id. at ¶¶ 25 & 223); that he was a shareholder or a principal or a member of SRM, alleged to be HSS's third-party claims administrator (id. at ¶¶ 40 & 78); that Snow is and was the president, CEO and treasurer of Carman (id. at ¶¶ 81 & 224); that Snow executed certain

asset purchase agreements with respect to HSS and SRM in May 2015 among HSS, O'Donnell and co-defendants Trigen Insurance and SRM without Aspen's prior knowledge or authorization (id. at ¶¶ 88-92, 96 & 99); that HSS and Carman share common officers, including Snow, and that Snow dominates both entities (id. at ¶¶ 226-27) and that Snow failed to disclose to Aspen that "the three entities" (presumably Selective Risk, SLG and perhaps HSS or Carman) "were related parties" by virtue of common ownership by Snow and O'Donnell.  (Id. at ¶ 80) (There is no allegation that attorney Charles O'Donnell has an interest in Carmen or HSS, so the three entities at issue are unclear.)  In conclusory fashion, the Amended Complaint also alleges that Snow, among others, failed to observe corporate formalities and "used HSS to defraud Aspen" and "used HSS as their alter ego."  (Id. at ¶¶ 229-30, 232-33).

Such conclusory allegations are woefully inadequate to establish a claim for relief.

1.   In accordance with the gist of the action doctrine, an officer or shareholder is not liable for failures to disclose information required by contract

Count XI, for negligence, alleges that Snow owed a "duty of care in connection with the administration of the HSS Programs and the enforcement of the HSS Underwriting Guidelines." (¶ 236) Nothing in the Amended Complaint identifies the source of a duty to adhere to underwriting and administrative guidelines, other than perhaps Snow's role as a principal of HSS, Aspen's insured.  As such, the claim is barred by Pennsylvania's gist of the action doctrine. Aspen's tort claim is based solely on the alleged breaches of duty imposed by the insurance policies and, as such, cannot stand on its own.

As a diversity case, this dispute is governed by the law of the forum state, the Commonwealth of Pennsylvania. Liggon–Redding v. Estate of Sugarman, 659 F.3d 258, 262 (3d Cir. 2011); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This Court has predicted that the

Pennsylvania Superior Court will adopt the gist of the action doctrine, which has been repeatedly embodied in Superior Court precedent.  See, Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, 2002 WL 126634, *6, 2002 U.S. Dist. Lexis 1460, *18 (E.D.Pa. 2002)(Jones, J.) (predicting that the Pennsylvania Supreme Court would adopt the gist of the action test); eToll, Inc. v. Elias/Savion Advertising, 2002 PA Super 347, 811 A.2d 10, 17 (2002).   That doctrine precludes a plaintiff from bringing what is actually a breach of contract claim as a tort claim. Endless Summer Productions, LLC v. Mirkin, No. CV 15-6097, 2016 WL 807760, at *2 (E.D. Pa. Mar. 2, 2016)(Savage, J.); Erie Insurance Exchange v. Abbott Furnace Co., 972 A.2d 1232, 1238 (Pa. Super. 2009); Jones v. ABN Amro Mortgage Group, 606 F.3d 119, 123 (3d Cir. 2010). The doctrine "maintains the distinction between causes of action founded on the breach of a contractual duty created by the parties' relationship and those based on the breach of a social duty imposed on all individuals by society. When the parties' obligations are defined by the terms of a contract and not by duties imposed by social policies, a plaintiff may assert only a contract claim." Mirkin, *supra*, citing Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014); Erie Insurance Exchange, 972 A.2d at 1239; eToll, Inc. v. Elias/Savion Advertising, 811 A.2d 10, 14 (Pa. Super. 2002). In order to state a tort claim where there is a contract, the wrong complained of must be the gist of the action with the contract only incidental. Bruno, 106 A.3d at 66, quoting Bash v. Bell Tel. Co. of Pa., 601 A.2d 825, 829 (Pa. Super. 1992). "In determining whether the gist of the action is based on a contract or a tort, we must look to the nature of the duty breached as alleged in the complaint." Mirkin, *supra*, citing Bruno at 63. If the claim arises directly from a breach of a contractual duty created by the parties, it is a contract action. If the claim arises from the violation of a broader social duty imposed by society and not by the parties to the action, it is a tort action. Id. Thus, the substance of the allegations in the complaint is of "paramount

importance." Id. at 68.

 The Amended Complaint pleads no basis upon which to infer a duty other than under the specifically mentioned "underwriting guidelines," which are a matter of contract between Aspen and HSS, not Snow.  Had Aspen wished to bind Snow, it could have insisted that he be a party to that contract, but no such requirement was imposed nor alleged.

 2. The economic loss doctrine bars recovery in negligence as to Snow and Carman.

 Count XI likewise must be dismissed on the ground that it violates Pennsylvania's economic loss doctrine. The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." See, Excavation Technologies Inc. v. Columbia Gas Co., 985 A.2d 840, 841 n.3 (Pa. 2009); Adams v. Copper Beach Townhome Communities LP, 816 A.2d 301, 305 (Pa. Super. 2003); Spivack v. Berks Ridge Corp., 402 Pa. Super. 73, 78, 586 A.2d 402 (1990) (no recovery for economic loss in a negligence action); Lower Lake Dock Co. v. Messinger Bearing, 395 Pa. Super. 456, 577 A.2d 631 (1990) (court applied the economic loss doctrine to preclude the plaintiff's claim for negligence where no personal injury or other property damage occurred); USX Corp. v. Prime Leasing, 988 F.2d 433, 439-40 (3d Cir. 1993) (dismissing misrepresentation claim as "an impermissible attempt to convert a contract claim into a tort claim"). The rationale behind the economic loss doctrine is that tort law is not intended to compensate a party for losses suffered as a result of a breach of an obligation assumed by an agreement.  Sun Co., Inc. v. Badger Design & Constructors, 939 F. Supp. 365, 371 (E.D. Pa. 1996)(Padova, J.). Here, Aspen is seeking to hold Snow and Carman liable for purely economic loss, arising from its contractual relationship with HSS.  The doctrine precludes such recovery under Count XI.

3.   <u>Snow likewise is not liable under an alter-ego / veil piercing theory.</u>

Aspen offers no basis for piercing the corporate veil in order to hold Snow liable, other than generic allegations of ownership of multiple entities.  (See paragraphs 25, 40, 81)  That is insufficient to warrant such extraordinary liability.  <u>See</u>, e.g., <u>Accurso v. Infra-Red Servs</u>., 23 F. Supp. 3d 494, 511–12 (E.D. Pa. 2014)(Pratter, J.)(shared addresses and shared ownership do not justify veil piercing); <u>Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co</u>., 700 F.Supp.2d 720, 737–38 (W.D.Pa.2010) ("In the absence of anything more than a recitation of the elements necessary to hold [defendants] liable under the piercing of the veil theory or the alter ego theory, Counterclaim V will be dismissed in its entirety."); <u>E-Time Sys., Inc. v. Voicestream Wireless Corp</u>., No. 01-5754, 2002 WL 1917697, at *12 (E.D. Pa. Aug. 19, 2002)(Yohn, Jr., J.) (decided before the more stringent decisions of <u>Twombly</u> and <u>Iqbal</u>) ("[C]ommon ownership and the sharing of office space, standing alone, are insufficient to warrant the conclusion that E-Time actually is the alter ego of USC.").

The standard a party must meet to persuade a court to pierce the corporate veil is a stringent one. See, <u>Accurso</u>, supra, citing <u>Pearson v. Component Tech. Corp</u>., 247 F.3d 471, 485 (3d Cir. 2001) ("Such a burden is notoriously difficult for plaintiffs to meet."). "[A]verments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in <u>Twombly</u>, such averments cannot support a veil piercing claim." <u>Accurso</u>, citing <u>Cent. Transp., LLC v. Atlas Towing, Inc</u>., 884 F. Supp. 2d 207, 217 (E.D. Pa.2012)(Dalzell, J.); <u>Shenango Inc. v. Am. Coal Sales Co</u>., No. 06-149, 2007 WL 2310869, at *4 (W.D. Pa. Aug. 9, 2007).  The Amended Complaint utterly fails to set forth the factual predicate for such extraordinary relief.

3.       Nowhere in the complaint are any specific misrepresentations alleged in order to support a claim against Snow for participation liability.

Count XII of the Amended Complaint purports to state a claim for so-called "participation liability," arising from Snow's alleged fraudulent conduct toward Aspen. To establish a *prima facie* case of fraud under Pennsylvania law, a plaintiff must plead "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."  Gibbs v. Ernst, 647 A.2d 882, 888 (Pa. 1994). That burden has been extended even further in the insurance context:

> In order to avoid its obligations under an insurance policy, the insurer has the burden of proving that the statements made by an applicant on the application were false and material, and that the applicant knew that the statements were false and made them in bad faith. In addition, the insurer must establish that it relied upon the misstatements in issuing the policy. Evans v. Penn Mutual Life Insurance Co., 322 Pa. 547, 560, 186 A. 133, 141-42 (1936); Piccinini v. Teachers Protective Mutual Life Insurance Co., 316 Pa. Super. 519, 463 A.2d 1017 (1983).

United National Insurance Co. v. J.H. France Refractories Co., 36 Pa. D. & C.4th 400, 430 (Phila. C.P. 1996), aff'd sub nom. United Nat. Ins. v. J.H. France Refractories, 711 A.2d 1046 (Pa. Super. 1997).

Fed.R.Civ.P. 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Rule 9(b)'s purpose is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984).  This

requires plaintiffs to "either plead the date, time, and place of the alleged fraud, or inject precision into the allegations by some alternative means." <u>DiMare v. MetLife Ins. Co</u>., 369 Fed. Appx. 324, 329 (3d Cir. 2010).

Rather than satisfying the mandate of Rule 9(b), Aspen identifies no misrepresentation made by Snow, and no factual basis for holding him liable other than his affiliation with HSS. Such thin pleading is insufficient to overcome a motion to dismiss.

Nor would the participation theory apply where, as here, Snow's principal (HSS) was a party to a contract with Aspen.  As Judge Pratter held in granting a motion to dismiss claims against a defendant individual in the <u>Accurso</u> case:

> The implications of contending that participation theory applies to breaches of contract are alarming. Not only would such application of participation theory render the concept of voluntary contract unrecognizable by holding nonpromisors liable, it would also gut the concept of the corporate form by making corporate officers personally liable anytime they acted on the corporation's behalf, because, of course, "a corporation acts only through its agents and officers." <u>Nix v. Temple Univ</u>., 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991).

<u>Accurso v. Infra-Red Servs</u>., 23 F. Supp. 3d 494, 511–12 (E.D. Pa. 2014)(Pratter, J.).


C.   <u>NO FACTUAL BASIS FOR CARMAN'S LIABILITY HAS BEEN PLEADED.</u>

Carman Corporation is a defendant to two counts: Count X, for so-called "alter ego" liability, and count XI, for negligence.  Neither count is adequate pled. The Amended Complaint alleges only that Carman is a Pennsylvania corporation (¶4); that Snow is its president, CEO and treasurer (¶¶ 81 & 224); that Snow "completely dominates" both entities (¶ 227); that Carman shares a common office location, officers and personnel with HSS (¶¶ 225 and 226); that Carman and HSS operate as one entity (¶228) listing Carman as an applicant on certain HSS application forms, listing Carman personnel as contacts on a complaint filed by HSS, and corresponding

with Aspen through personnel shared by both HSS and Aspen (¶228a-c).  Carman "and/or" its

co-defendants are alleged to have failed to observe corporate formalities and failed to maintain

separate accounts.  (¶¶ 229-230). Snow "and/or" Carman are alleged to have used HSS to

defraud Aspen through unspecified misrepresentations, misstatements, omissions and/or

concealment of facts.  (¶232), and are alleged to have used HSS as their alter ego (¶233).

As with the allegations against Snow discussed above, these conclusory allegations are

insufficient to support a claim for relief under an alter ego theory.  They likewise cannot support

a recovery in negligence absent some identification of the source of its duty and some reason

why the gist of the action lies in tort and why the economic loss doctrine would be inapplicable.


D.   NO FACTUAL BASIS FOR LIABILITY AS TO SELECTIVE RISK MANAGEMENT HAS BEEN PLEADED.

SRM is named as a defendant only in one of the nineteen counts of the Amended

Complaint: Count XIX, for an accounting.  No factual basis is pleaded for such relief. The

Amended Complaint alleges that SRM is a Pennsylvania limited liability company (¶5); that

defendant Snow and Charles O'Donnell were its sole shareholders (¶¶40 & 78-79); that HSS

retained its services as a third party claims administrator (¶38); that HSS and SRM would

manage claims (¶39); that it failed to disclose to Aspen that HSS, SRM and SLG were "related

parties" (¶80); that SRM was acquired by defendant Patriot and later by defendant Trigen in

exchange for monetary consideration (¶¶87, 91-92 & 291); that SRM was a party to amendments

to asset purchase agreements with Trigen (¶96).

A legal accounting is available only if there was a valid contract, express or implied,

between the parties. Haft v. U.S. Steel Corp., 499 A.2d. 676, 677–78 (Pa. Super.  1985). No such

contract with SRM and Aspen has been alleged here.  As for an equitable accounting, it is not an

independent cause of action, but rather is simply a remedy that must be tied to a self-sustaining claim.   See <u>Global Arena v. Eterpreting LLC</u>, 2016 WL 7156396 (E.D.Pa. Dec. 8, 2016)(Beetlestone, J.)(equitable accounting is not a claim, as Pennsylvania has abolished it as an independent cause of action); <u>ClubCom, Inc. v. Captive Media</u>, 2009 WL 249446 *14 (W.D. Pa. Jan. 31, 2009)(accounting is not a valid cause of action, but an equitable remedy).

Even as a mere remedy, an equitable accounting is available only when there is no adequate remedy at law. <u>Benefit Control Methods v. Health Care Services</u>,, No. 97-4418, 1998 WL 22080, at *2 (E.D. Pa. Jan. 16, 1998)(Broderick, J.); <u>Taylor v. Wachtler</u>, 825 F. Supp. 95, 104 (E.D. Pa. 1993)(Brody, J.).  Here no basis for either theory has been alleged.

Moreover, an accounting is unwarranted where, as here, the information sought is readily obtainable through discovery.  <u>Benefit Control Methods</u>, supra; accord, <u>Arrowroot Natural Pharmacy v. Standard Homeopathic Co</u>., No. 96-3934, 1998 WL 57512, at *12 (E.D. Pa. Feb. 10, 1998)(Rueter, J.)("An accounting request is not a substitute for plaintiffs' obligation to establish their damages through discovery.")

### E.    NO FACTUAL BASIS FOR LIABILITY AS TO SLG HAS BEEN PLEADED.

Like SRM, SLG is named as a defendant only in one of the nineteen counts of the Amended Complaint: Count XIX, for an accounting.  Also like Aspen's allegations against SRM, its allegations against SLG provide no factual basis for an accounting. The Amended Complaint alleges that SLG is a Pennsylvania limited liability company (¶6); that HSS retained its services as claims defense counsel (¶¶38 and 39); that Charles O'Donnell, a shareholder of SRM, is currently the president and CEO of SLG (¶¶40 & 79); that it failed to disclose to Aspen that HSS, SRM and SLG were "related parties" (¶80); that HSS engaged the services of SLG for the Crowley claim (¶108), the Glynn claim (¶116); the Egan claim (¶123); the Possinger claim

(¶130), the Kocher claim (¶138); and the Howard claim (¶145).  These facts are devoid of any basis upon which an accounting as to SLG can be awarded.  (The discussion with respect to SRM, above, is incorporated herein by reference).


III.     <u>CONCLUSION</u>

For all of the foregoing reasons, movants respectfully request that this Honorable Court enter the proposed Order submitted herewith, dismissing Counts X, XI, XII and XIX of the Amended Complaint with prejudice.

Respectfully submitted,

WEIR & PARTNERS LLP


By: <u>/s/ Walter Weir Jr.</u>
      Walter Weir Jr.
      Marc J. Zucker
Suite 500, The Widener Building
1339 Chestnut Street
Philadelphia, PA  19107
(215) 241-7751
(215) 665-8464
wweir@weirpartners.com
mzucker@weirpartners.com

Attorneys for Defendants/Movants
Edward Snow, The Carman Corporation, Selective Law Group LLC and Selective Risk Management LLC

DATED:  April 28, 2017