## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, | **Civil Action** |
| Plaintiff, | **No. 2:16-cv-01133** |
| v. | |
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC, EDWARD E. SNOW, individually, THE CARMAN CORPORATION, SELECTIVE RISK MANAGEMENT, LLC, SELECTIVE LAW GROUP, LLC, TRIGEN INSURANCE SOLUTIONS, INC., TRIGEN HOSPITALITY GROUP, INC., PATRIOT UNDERWRITERS, INC., PATRIOT NATIONAL, INC., and ABC CORPORATIONS 1-25, | **Filed Electronically** |
| Defendants. | |
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC, | |
| Plaintiff, | |
| v. | |
| ASPEN SPECIALTY INSURANCE COMPANY, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO PROPOSED INTERVENOR C&P'S MOTION TO INTERVENE

William D. Deveau (pro hac vice)
Jonathan P. McHenry (pro hac vice)
J. Christopher Henschel (pro hac vice)
Patrick J. Hughes (No. 41403)
Connell Foley LLP
Harborside 5
185 Hudson Street, Suite 2510
Jersey City, NJ 07311
Tel.: 201.521.1000
*Attorneys for Aspen Specialty Insurance Company*

4433881-1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 4

    **A.**    THE HSS PROGRAMS ......................................................... 4

    **B.**    THE ASSET PURCHASE AGREEMENT .......................................... 5

    **C.**    THIS COURT HAS PREVIOUSLY ADDRESSED
    ARGUMENTS REGARDING HSS' CAPACITY TO
    DEFEND THE RESCISSION CLAIMS ON BEHALF
    OF ADDITIONAL NAMED INSUREDS .......................................... 7

    **D.**    THE PATRIOT NATIONAL DEFENDANTS
    BANKRUPTCY ................................................................... 9

LEGAL ARGUMENT .................................................................................. 11

    POINT I ................................................................................. 11

    C&P HAS FAILED TO MEET THE INTERVENTION
    STANDARD OF FEDERAL RULE OF CIVIL PROCEDURE
    24(a) WITH RESPECT TO ASPEN'S RESCISSION CLAIMS

    **A.**    C&P'S MOTION TO INTERVENE IS NOT TIMELY .................... 11

    **B.**    DESPITE ITS ASSERTION TO THE CONTRARY, C&P
    IS NOT AN INDISPENSIBLE PARTY TO THIS
    LITIGATION .................................................................. 12

    **C.**    C&P ACCEPTED THE BUSINESS RISK THAT IT
    COULD SUFFER DIRECT AND IMMEDIATE
    DAMAGES AS A RESULT OF APPOINTING HSS AS
    ITS AGENT AND ENTERING INTO THE HSS
    PROGRAM ................................................................... 15

    **D.**    C&P'S INTERESTS HAVE BEEN AND CONTINUE
    TO BE ADEQUATELY REPRESENTED IN THIS
    ACTION ...................................................................... 16

        **1.**    C&P Has Total Identity of Interest with HSS .......... 16

i

# TABLE OF CONTENTS

2.    The Very Basis for C&P's Motion, the Patriot National Defendants' Bankruptcy, is Unrelated to C&P's Adequate Representation in this Matter ......................20

POINT II ....................................................... 22

   THIS COURT SHOULD REJECT C&P'S ALTERNATIVELY SOUGHT RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b)(1)(B) FOR PERMISSIVE INTERVENTION

POINT III ...................................................... 23

   IF C&P IS PERMITTED TO INTERVENE, THE COURT SHOULD STAY C&P'S CLAIMS PURSUANT TO THE CURRENT BIFURCATION ORDER

CONCLUSION ................................................. 24

4433881-1

# TABLE OF AUTHORITIES

## *Cases*

Air Lines Stewards and Stewardesses Association, Local 550 v.
   American Airlines, Inc., 455 F.2d 101 (7th Cir. 1972).......................14

B.J. McAdams, Inc. v. Boggs, 439 F. Supp. 738 (E.D. Pa. 1977)......................... 9

Brody v. Spang, 957 F.2d 1108 (3d Cir. 1992).................................................11, 16

CSX Transp., In. v. City of Philadelphia, No. 04-cv-5023, 2005
   U.S. Dist. LEXIS 14300 957 F.2d 1108 (E.D. Pa. July 15,
   2005) .............................................................................................................17

Donaldson v. United States, 400 U.S. 517, 27 L. Ed. 2d 580, 91
   S. Ct. 534 (1970) .........................................................................................14

Endurance   American   Specialty   Insurance   Company   v.
   Hospitality Supportive Systems, Case No. 2:17-cv-03983 ................................15

Erie Ins. Exchange v. Lake, 671 A.2d 681 (Pa. 1996) ........................................... 9

Harris v. Pernsley, 820 F.2d 592 (3d. Cir. 1987)...........................................13, 15

Hoots v. Commonwealth of Pa., 672 F.2d 1133 (3d Cir. 1982).............................23

In re Fine Paper Antitrust Litigation, 695 F. 2d 494 (3d Cir.
   1982) ...........................................................................................................11

In re Safeguard Scientifics, 220 F.R.D. 43 (E.D. Pa. 2010)..................................12

Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216 (3d Cir.
   2005) ...........................................................................................................13

Morial v. United Gas Pipe Line Co., 469 U.S. 1019, 105 S. Ct.
   434, 83 L. Ed. 2d 360 (1984) ........................................................................14

Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder,
   Inc., 72 F.3d 361 (3d Cir. 1995) ..................................................................12

New Orleans Public Service, Inc. v. United Gas Pipe Line Co.,
   732 F.2d 452 (5th Cir.) (in banc), cert. denied sub nom. .....................................14

Rallis v. Trans World Music Corp., No. 93-6100, 1994 U.S.

## TABLE OF AUTHORITIES

Dist. LEXIS 1832 (E.D. Pa. February 22, 1994)..................................................17

Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy
   Products, Inc., 725 F.2d 871 (2d Cir. 1984)......................................................14

Scottsdale Ins. Co. v. RSE, 303 F.R.D. 234 (E.D. Pa. 2014) ...........................8, 13

Smith v. Pangilinan, 651 F.2d 1320 (9th Cir. 1980)............................................14

Southern Christian Leadership Conference v. Kelley, 241 U.S.
   App. D.C. 340, 747 F.2d 777 (D.C. Cir. 1984) ..................................................14

Wade v. Goldschmidt, 673 F.2d 182 (7th Cir. 1982).............................................14

### *Other Authorities*

3B *Moore's Federal Practice, supra*, para. 24.07[2] at 24-59. .............................14

### *Rules*

Federal Rule of Civil Procedure 24(a).....................................................................11

Federal Rule of Civil Procedure 24(a)(2) ..............................................................11

**PRELIMINARY STATEMENT**

Plaintiff, Aspen Specialty Insurance Company ("Aspen"), submits the within Memorandum of Law in Opposition to C&P's[1] Motion to Intervene.

The proposed intervention by C&P should be rejected by this court because C&P fails to satisfy even the minimal requirements to intervene in this action. In particular, C&P cannot, and does not, demonstrate why it's appointed agent - - Hospitality Supportive Systems, LLC ("HSS") - - does not adequately represent its interests with respect to Aspen's rescission claim. C&P has expressly acknowledged that "HSS is and will remain the primary insured" of the Aspen insurance policies at issue and that "[c]onsequently, all rights and procedures" of C&P under these policies "shall be derived entirely through HSS' coverage," under which "HSS has the primary right and responsibility." Any claims that HSS cannot or does not adequately represent C&P's interests in seeking to avoid rescission of the Aspen policies, where HSS is the First Named Insured with primary rights and responsibilities, are simply wrong. The bankruptcy filing by the Patriot National Defendants[2] changes nothing with respect to whether or not C&P's interests are being adequately defended.

In fact, this court has previously ruled that the Additional Named Insureds have "appointed HSS as their agent under the Master Services Agreement." Indeed, C&P entered into a Management Services Agreement with HSS for the

---

[1] Chickie's and Pete's, Inc., 4010, Inc., Packer Café, Inc. t/a Chickie's & Pete's, 4010, LLC, Poquessing Management, LLC, Poquessing Professional Building, LLC, CPC International, LLC t/a Philadelphia's Famous C&P, Wright Food Services, LLC, CPC Bucks, LLC, Audubon CPC, LLC, Warrington CPC, LLC, Drexel Hill CPC, LLC, Venue Food Services, LLC, Crabco PA GP LLC, 130 Crabco Realty NJ, LLC, 130 Crabco NJ, LLC t/a Chickie's and Pete's, EHT Crabco NJ, LLC t/a Chickie's and Pete's, WW-CPC, LLC, OC-CPC, LLC, AC-CPC, LLC, Crabco Enterprises LLC, CPC Properties, Inc., and Crabco Enterprises PA LP (collectively "C&P").

[2] Trigen Insurance Solutions, Inc. ("Trigen"), Trigen Hospitality Group, Inc. ("Trigen Hospitality"), Patriot Underwriters, Inc., (collectively, the "Patriot Subsidiaries") and Patriot National, Inc. ("Patriot National") (collectively with the Patriot Subsidiaries, "the Patriot National Defendants").

express reason of having only HSS deal with Aspen on C&P's behalf.  C&P has now filed a proposed answer to Aspen's rescission claims in an attempt to insert itself into the litigation, despite C&P's admittedly subordinate interest in the HSS Programs.   HSS' interest in defending Aspen's claims is supreme due to its contractual and common law duties to both Aspen and the Additional Named Insureds.   C&P's allegations that it promptly notified HSS of its liability claims helps emphasize not only HSS' liability to Aspen and the Additional Named Insureds but its concomitant obligation and interest to defeat Aspen's claims. C&P's intervention will not assist any party to this case or aid the Court adjudicating these matters.  The facts related to C&P's status as an insured and any claims made under the HSS Program are already before this Court and C&P cannot add anything other than delay and distraction.

Additionally, the solvency of the Patriot Defendants does not impact C&P's claims in this case or in general.  The Patriot Defendants' acquisition of HSS' assets does not absolve HSS of its obligations to Aspen or the Additional Named Insureds.  Furthermore, the Patriot Defendants are not parties to the MSA with C&P.  In fact, the Patriot Defendants have taken the position that they have no obligations to Aspen or the Additional Named Insureds and that they did not acquire HSS' liabilities.  So, solvent or not, they are not aligned with C&P and are certainly not protecting C&P's interests in this litigation.  Moreover, the Court has already determined that C&P's fate flows through HSS pursuant to the MSA.  By bifurcating the rescission claims which are directly against HSS, the Court has tabled the Patriot Defendants' liability for fraud, alter ego and successor liability. In fact, certain Patriot Defendants have not yet interposed an answer in this case due to the bifurcation.  Their participation has been limited to aiding in discovery of the rescission claims against HSS and Aspen is seeking relief from the

2

Bankruptcy Court to allow the Patriot Defendants to continue in this role.

3

**STATEMENT OF FACTS**

**A.    THE HSS PROGRAMS**

Between 2011 and 2015, Aspen issued the Aspen Policies[3] to HSS, a risk purchasing group that solicits business owners and operators within the hospitality and restaurant industry to enter into property and liability insurance sharing programs.  Am. Compl. ¶¶ 24, 42-44.  The Aspen Policies, which provide general liability, liquor liability and excess liability coverage, name HSS as the "First Named Insured" and the various participants as "Additional Named Insureds."  *Id.* ¶¶ 42-44.  The Aspen Policies are delineated into the respective HSS Programs – HSS (A), HSS (B) and HSS (C) – which are, in turn, defined by their distinct lists of Additional Named Insureds and certain variations with respect to the scope of coverage provided, including but not limited to limits of coverage and amounts of self-insured retention ("SIR") (collectively, the "HSS Programs").  *Id.* ¶¶ 43, 45. In issuing each of the Aspen Policies, Aspen relied upon, *inter alia*, insurance applications, loss runs and other information, including but not limited to HSS' representations concerning the nature and claims history of the risks represented by the Additional Named Insureds within the respective HSS Programs.  *Id.* ¶ 46.

Pursuant to the "Management Services Agreement" that HSS entered into with each prospective participant in the HSS Programs, the Additional Named Insureds designated HSS as their agent for purposes of insurance matters and delegated fully authority to HSS for the primary rights and responsibilities under any insurance policies issued to the HSS programs. These duties include, but are not limited to, the negotiation and procurement of insurance policies and claims

---

[3] The "Aspen Policies," which are defined in detail in the Amended Complaint (ECF 33)  ("Am. Compl.") at ¶¶ 47-77, consist of Policy Nos. CRA8YY411, CRA8YY413, CXAE6MU14, CR0038P14, CX0038Q14A, CXOO38U14, CRAC26P12, CXAE6N114, CRAC26P13, CX0020Y14A, CX0027W14, CRADJ9K13, CXAEAH714 and CR003UL15.

handling for said policies. *Id.* ¶¶ 28, 31. In this role, HSS serves as claims processor and liaison between the Additional Named Insureds and Aspen in connection with all issues related to the Aspen Policies and charges the Additional Named Insureds a fee and/or distinct, augmented premium for its services. *Id.* ¶¶ 36-37.

On information and belief, C&P entered into a series of Master Services Agreements with HSS (collectively, the "MSA"). (Certification of William D. Deveau dated March 6, 2018 ("Deveau Cert.") at Exs. A and B). Pursuant to the MSA, C&P stated that it "desires to engage HSS to provide certain Management Services." (Deveau Cert. at Ex A, p. 26). In particular, the MSA provides for the following Management Services by HSS, in pertinent part:

> 1.    **Insurance Coverage**: Client will participate in the HSS Master Insurance Program based on the terms set forth in the Insurance Proposal attached as Exhibit "A" ("Insurance Proposal") to Schedule II hereto (the "Services Schedule"). It is understood that HSS is and will remain the primary insured on all such insurance coverage, and that Client and the Restaurant are being added as a named insured to HSS' coverage. Consequently, all rights and procedures of Client under such insurance coverage shall be derived entirely through HSS' coverage and are subject in all respects to the terms and conditions set forth in the applicable policies, under which HSS has the primary right and responsibility.

Id.

## B.    THE ASSET PURCHASE AGREEMENT

On or about April 1, 2015, the Patriot National Defendants acquired certain assets of HSS through the HSS Asset Purchase Agreement entered into by Trigen, HSS and Snow, as sole shareholder, principal and/or member of HSS.[4] Pursuant to

---

[4] The preceding day, March 31, 2015, Patriot National acquired Trigen through a stock purchase agreement entered into by the latter and another non-party Patriot National subsidiary, Patriot Services, Inc. *Id.* ¶¶ 85-86. Patriot National had previously spun off Trigen, a multi-purpose property and casualty insurance agency, in early 2013. *Id.* ¶¶ 83-84.

the terms thereof, HSS and Snow agreed to transfer to Trigen all of HSS' rights under certain contracts, as well as certain other assets and liabilities related to HSS' business, in exchange for payment of $5.605 million upon closing and up to $4.045 million in potential future earn-out payments contingent upon the HSS business's future Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA").  *Id.* ¶¶ 89-90.  While Trigen retained the sole right to use the name "Hospitality Supportive Systems, LLC," frfor a certain term after the purchase date, it was also empowered to unilaterally transfer its rights under the HSS Asset Purchase Agreement "in whole or in part to any of its Affiliates or to any Person which becomes a successor in interest (by purchase of assets or stock, or by merger or otherwise) to [Trigen]."  *Id.* ¶ 94.  HSS and Snow executed the HSS Asset Purchase Agreement without Aspen's prior knowledge or authorization.  *Id.* ¶ 99.

Following the execution of the HSS Asset Purchase Agreement, the Patriot Subsidiaries continued to operate the HSS business as it had previously existed at the same premises.  *See id.* ¶¶ 2, 7-9.  However, HSS' ownership remained the same and it never ceased being the First Named Insured on the Aspen Policies. Additionally, the Patriot Subsidiaries utilized the same personnel and management, including but not limited to Snow, and assumed the liabilities necessary for the continuance of the HSS operations.  *Id.* ¶¶ 248-250.  This continuation of HSS' operations included, *inter alia*, the submission of an application under the name "Hospitality Supportive Systems, LLC," for coverage under Aspen Policy No. CR003UL15 for the HSS (C) Program, as well as the receipt and retention of fees and/or augmented premium payments from Additional Named Insureds in

---

On April 1, 2015, the Patriot National Defendants also acquired Selective Risk through an asset purchase agreement executed by Trigen, Selective Risk, Snow and O'Donnell (the "Selective Risk Asset Purchase Agreement"). *Id.* ¶¶ 91-93.

connection with the HSS Programs.  *Id.* ¶¶ 259, 274-75.  HSS kept the liability for performing under the Aspen Policies and MSA.  The asset sale does not alter this liability.

However, Snow's interest in the HSS business did not terminate with the execution of the HSS Asset Purchase Agreement in April 2015.  First, he continued on as the primary manager of the business and overall HSS operations and retained an expectation of future pecuniary gain with respect to the potential earn-out payment contingent upon the HSS business's future EBITDA.  *Id.* ¶¶ 90, 250.[5] HSS did not sell its stock or membership interests and therefore continued as a going concern.  Even more critically, by way of the issuance and/or transfer of 1,579,166 shares of Patriot National common stock to Snow in or around February 2016, Snow became the *third largest shareholder* in Patriot National, holding approximately 5.6% of all issued and outstanding Patriot National shares.  *Id.* ¶¶ 251, 301.  Although the precise nature and justification for this significant equity transfer to Snow are yet unknown, it is beyond dispute that Snow became a constituent part of the Patriot Subsidiaries and continued as an owner and/or shareholder of the HSS general business operations even after the April 2015 sale to the Patriot National Defendants.  *Id.* ¶ 251.      In sum, if the Asset Purchase Agreements were not a sham or fraudulent conveyance thereby keeping all liability on HSS, then HSS and the Patriot Defendants are jointly and severally liable for Aspen's damages.

C.   **THIS COURT HAS PREVIOUSLY ADDRESSED ARGUMENTS REGARDING HSS' CAPACITY TO DEFEND THE RESCISSION CLAIMS ON BEHALF OF ADDITIONAL NAMED INSUREDS**

Previously, HSS and Aspen engaged in motion practice regarding Aspen's

---

[5]  On May 14, 2015, Trigen, HSS and Snow executed an amendment to the HSS Asset Purchase Agreement, which called for the accelerated payment of all outstanding earn-out compensation available thereunder -- $4.045 million. *Id.* ¶ 96.

original complaint in this matter - - in particular, HSS filed a motion to dismiss, *inter alia*, Aspen's claims for rescission. *See*, Memorandum of Law in Support of HSS' Motion to Dismiss Original Complaint (ECF 12-1) ("HSS' Motion to Dismiss"); Memorandum of Law in Support of Aspen's Opposition to HSS' Motion to Dismiss (ECF 13) ("Aspen's Opposition to HSS"), and the June 9, 2016 Order (ECF 18). HSS' Motion to Dismiss was based, in part, on the argument that "the relief is too broad in that it purports to rescind coverage issued to the additional member insured's purportedly because of the alleged fraud of HSS." *See* HSS' Motion to Dismiss at p.11. In particular, HSS argued that

> Having failed to name each of the additional insureds as party defendants, Aspen is estopped to rescind the coverage previously afforded to them. Moreover, there is no allegation those additional insureds had an obligation to disclose, or failed to disclose, any information to Aspen. They are entirely innocent of any wrongdoing and it would be inequitable to deny coverage for them under any of the rescinded policies… No allegation of wrongdoing has been asserted against the additional insureds or against the third-party plaintiffs who sued some of these additional insureds.

Via footnote 2, HSS further explained it's position with respect to the Additional Named Insureds, stating (emphasis original):

> HSS is *not* claiming in this motion that Aspen has failed to name indispensable parties under Fed.R.Civ.P. 12(b)(7), in light of this Court's ruling in <u>Scottsdale Ins. Co. v. RSE</u>, 303 F.R.D. 234, 238 (E.D. Pa. 2014)(Dalzell, J.)(rejecting argument that an additional insured was an indispensable party). Rather, our point is that the relief sought as to HSS cannot be awarded without harming innocent non-parties, including but not limited to the many additional insureds, and therefore is inequitable as a matter of law.

> Id.

Aspen opposed this argument regarding the Additional Named Insureds in large part on the terms of the Management Services Agreement, whereby "HSS

8

was and remains the agent of the Additional Named Insureds for all insurance coverage purposes." *See* Aspen's Opposition to HSS at p. 32. Additionally, Aspen argued that

> in light of the comprehensive scope of HSS' agency authority regarding all insurance coverage issues for all Additional Named Insureds, as well as the unity of interests concerning the Aspen Complaint, any suggestion HSS is not properly situated to adequately represent those same Additional Named Insureds as to the coverage issues in this case is a bridge too far.

> Id.

This Court swiftly rejected HSS' arguments that rescission could not be appropriately sought because of harm to the Additional Named Insureds, holding that

> The Additional Named Insureds in this case appointed HSS as their agent under the Master Services Agreement, and case law is clear that principals who assign agents to a position where they could commit fraud, while acting within their authority, are subject to liability. <u>See B.J. McAdams, Inc. v. Boggs</u>, 439 F. Supp. 738, 746 (E.D. Pa. 1977) (quoting RESTATEMENT (SECOND) OF AGENCY § 267 (1958). The Additional Named Insureds are not like the innocent third parties in [<u>Erie Ins. Exchange v. Lake</u>, 671 A.2d 681, 687 (Pa. 1996)], but instead entered into a contractual agreement with a company that allegedly committed fraud when entering into insurance policies on their behalf. We therefore reject HSS's final argument in support of their request for dismissal of Counts I and II of Aspen's complaint.

> June 9, 2016 Order at p. 9.

## D.     THE PATRIOT NATIONAL DEFENDANTS BANKRUPTCY

On February 1, 2018, the Patriot National Defendants filed a Notice of Filing of Bankruptcy with this court. *See* ECF 78 ("Notice of Bankruptcy"). The Notice of Bankruptcy explained that on January 30, 2018, the Patriot National Defendants each filed a voluntary petition for relief under Chapter 11 of Title 11 of

9

the United States Code. *Id.* The proceeding is venued before the United States Bankruptcy Court for the District of Delaware under Bankruptcy Case No. 18-10189-KG. *Id.*

4433881-1

## **LEGAL ARGUMENT**

## **POINT I**

**C&P HAS FAILED TO MEET THE INTERVENTION STANDARD OF FEDERAL RULE OF CIVIL PROCEDURE 24(a) WITH RESPECT TO ASPEN'S RESCISSION CLAIMS**

Federal Rule of Civil Procedure 24(a), under which C&P asserts a right of intervention, provides that

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

C&P does not assert an unconditional right to intervene by federal statute. Rather, C&P asserts a right of intervention under Fed. R. Civ. P. 24(a)(2), through an interest in the transaction that is the subject of this matter. Thereunder, a party may intervene if

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

> Brody v. Spang, 957 F.2d 1108, 1115 (3d Cir. 1992).

**A.     C&P'S MOTION TO INTERVENE IS NOT TIMELY**

First, C&P's application for intervention fails because it is untimely.  To be timely, courts apply a totality of the circumstances test.  In re Fine Paper Antitrust Litigation, 695 F. 2d 494, 500 (3d Cir. 1982).  The stage of the proceedings, the prejudice the parties may suffer from the delay, and the reason for the delay are all factors to consider when analyzing an intervention application.  Id.  Temporally,

11

the delay "should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." In re Safeguard Scientifics, 220 F.R.D. 43, 47 (E.D. Pa. 2010) (denying application as the complaint was filed two and a half years ago and discovery was mostly complete) citing Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369 (3d Cir. 1995).

Setting aside that C&P's proposed intervention is invalid regardless of timing - - as discussed more fully below - - there is no justifiable, logical, or meritorious excuse for C&P's delay in moving for intervention. By its own admission, C&P has known about this dispute for years. See C&P's Memorandum of Law in Support of Motion to Intervene at p. 6 (ECF 79-2) ("C&P Motion") ("Further, C&P has a valid excuse for not intervening – it believed its interests were being protected by HSS and Patriot, until Patriot National filed for bankruptcy.") C&P took no issue with HSS representing its interests for two years and now seeks to intervene based on a bankruptcy filing that has no material effect on C&P's position in this matter. [6]

**B.      DESPITE ITS ASSERTION TO THE CONTRARY, C&P IS NOT AN INDISPENSIBLE PARTY TO THIS LITIGATION**

Ignoring the procedural history of this matter, as well as this Circuit's applicable law on the issue, and in an attempt to show that it has a sufficient interest in this litigation, C&P asserts that it is an "indispensible party." C&P Motion at p. 6. Curiously, despite making this assertion, C&P does not further address this claim or support it with case law.[7]

---

[6] Aspen has recently filed a notice of appearance in Patriot National's bankruptcy proceedings and filed an objection to Patriot National's disclosure statement. Aspen also intends to file a motion to seeking stay relief  with respect to any and all affected parties in this litigation. In the event that Aspen is successful in lifting the stay, C&P will lose the only apparent explanation for its delayed intervention.
[7] Nor is this the standard by which intervention is measured.

However, the contention that the Additional Named Insureds are indispensible parties was previously addressed by HSS' Motion to Dismiss [at fn.2 ("HSS is *not* claiming in this motion that Aspen has failed to name indispensable parties…) (emphasis original)] and Aspen [*See*; Aspen's Opposition to HSS at p. 8 ("accounting for HSS' unambiguous concession that the other insureds under the policies are not indispensable parties to this action, any averment that their existence divests this court of its power to protect Aspen's contractual, statutory and common-law rights is transparently without merit.")]. Moreover, as observed by this Court in Scottsdale Insurance Co. v. RSE Inc., 303 F.R.D. 234 (E.D. Pa. 2014), there is no federal case law holding the existence of non-party additional insureds - - named or otherwise - - in any way precludes the Court from enforcing Aspen's right to rescind under Pennsylvania substantive law. Id. at 238; *see also* Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 229 (3d Cir. 2005).

Notwithstanding, in an attempt to demonstrate that it has a "significantly protectable" interest in the litigation, as opposed to rights that may be "incidentally affected," C&P brusquely asserts that "Aspen's claims pose a tangible threat to a legally cognizable interest – C&P's status as an additional insured under the HSS Policies," and that rescission "would leave C&P without liability coverage," therefore qualifying as a "direct and significantly protectable interest." C&P Motion at p. 6-7. In support of this argument, C&P cites Harris v. Pernsley, 820 F.2d 592, 596 (3d. Cir. 1987).[8]

Of course, the answer is not nearly as simple as this, and the Harris case concisely identifies the intricacies of this "significantly protectable interest" analysis, citing a progeny of United States Supreme Court and national case law on

---

[8] For the Court's reference, it appears that C&P made an inadvertent error with regard to the pin cite for the Harris case. The proper pin cite is reflected in this brief.

the issue, because "given the multitude of situations in which intervention controversies can arise, what constitutes such an interest 'defies a simple definition.'" Id. *citing* Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc., 725 F.2d 871, 874 (2d Cir. 1984). Explaining, the Harris court goes on:

> The Supreme Court has stated that under Rule 24(a)(2), an applicant's interest must be one that is "significantly protectable." Donaldson v. United States, 400 U.S. 517, 531, 27 L. Ed. 2d 580, 91 S. Ct. 534 (1970). Several circuits have concluded that an applicant must demonstrate a legal interest in the action to intervene as of right. Southern Christian Leadership Conference v. Kelley, 241 U.S. App. D.C. 340, 747 F.2d 777, 779 (D.C. Cir. 1984) (the interest must be "legally protectable"); [New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (5th Cir.) (in banc), cert. denied sub nom. Morial v. United Gas Pipe Line Co., 469 U.S. 1019, 105 S. Ct. 434, 83 L. Ed. 2d 360 (1984)] (intervention as of right requires a "direct, substantial, legally protectable interest in the proceedings"); Wade v. Goldschmidt, 673 F.2d 182, 185 (7th Cir. 1982) (same). *But see* Smith v. Pangilinan, 651 F.2d 1320, 1324 (9th Cir. 1980) (an applicant "need not show that he has a legal or equitable interest in jeopardy . . . [but] must show that he has a 'protectable interest' in the outcome of the litigation of sufficient magnitude to warrant inclusion in the action.") (citations omitted). In addition, a number of courts have concluded that this interest must be "direct," as opposed to contingent or remote. *See* Restor-A-Dent Dental Laboratories, *supra*, 725 F.2d at 874; Air Lines Stewards and Stewardesses Association, Local 550 v. American Airlines, Inc., 455 F.2d 101, 105 (7th Cir. 1972); 3B *Moore's Federal Practice, supra*, para. 24.07[2] at 24-59.
>
> Courts have not been able to develop more than these general guidelines to answer what type of interest is necessary for intervention. *See generally*, 3B *Moore's Federal Practice, supra*, para. 24.07[2] at 24-57 ("The exact nature of the interest required . . . has eluded a precise and authoritative judicial definition . . . ."). Because Rule 24(a)(2) was designed to permit courts to solve intervention disputes in a pragmatic manner, it "requires consideration of all the competing and relevant interests raised by an application for intervention." United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984); *see* Nuesse v. Camp, 128

14

U.S. App. D.C. 172, 385 F.2d 694, 700 (D.C. Cir. 1967).

Id. at 597. Indeed, the Harris court specifically recognizes that some courts have found a sufficient interest to intervene "where the contractual rights of the applicant may be affected by a proposed remedy." Id. at 601 (citations omitted).

However, Aspen avers that this Court should consider "all of the competing and relevant interests raised by an application for intervention," and in particular C&P's unequivocal recognition that HSS' rights under the HSS Programs are prime over and above C&P's, that C&P entered into a relationship for the express purpose of appointing HSS as C&P's agent for insurance coverage purposes, and that the existence of the non-party Additional Named Insureds does not affect this Court's ability to adjudicate the issues before it in their absence.  HSS has assumed C&P' interests in this litigation, as well as those of all Additional Named Insureds.

HSS is also representing the interests of various additional named insureds in another rescission action pending in the E.D.P.A styled Endurance American Specialty Insurance Company v. Hospitality Supportive Systems, Case No. 2:17-cv-03983.  The Endurance insurance policies were issued to HSS after the alleged Asset Sale to the Patriot Entities.  HSS is currently defending those rescission claims as well despite the bankruptcy filing by the Patriot Defendants.

### C. C&P ACCEPTED THE BUSINESS RISK THAT IT COULD SUFFER DIRECT AND IMMEDIATE DAMAGES AS A RESULT OF APPOINTING HSS AS ITS AGENT AND ENTERING INTO THE HSS PROGRAM

C&P asserts that it would suffer direct and immediate harm if its motion to intervene were denied.   Once again though, and as this Court previously recognized, the Additional Named Insureds - - inclusive of C&P - - appointed HSS to be their agent for insurance coverage purposes and must answer for this business decision. See June 9, 2016 Order at p. 9 ("The Additional Named Insureds in this case appointed HSS as their agent under the Master Services Agreement, and case

15

law is clear that principals who assign agents to a position where they could commit fraud, while acting within their authority, are subject to liability.")

Although C&P may suffer damages, as previously held by this Court, the Additional Named Insureds have accepted such a risk.  C&P entered into a Master Service Agreement with HSS, whereby HSS was and remains the agent of the Additional Named Insureds for all insurance coverage purposes, with "full authority…for the primary rights and responsibilities under the Aspen Policies." See MSA.  Despite having the same legal duties under the Aspen Policies as HSS, C&P, along with the other Additional Named Insureds, voluntarily appointed HSS as its agent to represent its interests thereunder.  C&P cannot now, after assuming such a risk by willingly entering into the HSS Program and appointing HSS as its agent, rely upon the argument that its interests are not properly represented by HSS as the basis to intervene in this action.  Such interests are certainly not being represented by the Patriot Defendants who deny any obligation to the Additional Named Insureds, HSS or Aspen.

### D.  C&P'S INTERESTS HAVE BEEN AND CONTINUE TO BE ADEQUATELY REPRESENTED IN THIS ACTION

#### 1.  C&P Has Total Identity of Interest with HSS

Even assuming, *arguendo*, that C&P can satisfy the first three factors, C&P cannot and does not satisfy the adequacy of representation factor. Representation is considered inadequate on any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit. Brody, 957 F.2d at 1123. C&P does not, because it cannot, make any of these allegations.  The

16

burden is on the applicant to show that his interests are not adequately represented by the existing parties. Id. *See also* Rallis v. Trans World Music Corp., No. 93-6100, 1994 U.S. Dist. LEXIS 1832 (E.D. Pa. February 22, 1994) (denying hospital's proposed intervention into declaratory judgment by injured patient against employer and insurer over payment of medical bill because both patient and hospital sought the same relief, payment of the medical bill); CSX Transp., In. v. City of Philadelphia, No. 04-cv-5023, 2005 U.S. Dist. LEXIS 14300 957 F.2d 1108 (E.D. Pa. July 15, 2005) (rejecting proposed intervention by various citizen groups into litigation involving ownership of parcel of land because City was defending case and presumed to adequately represent interests of its citizens).

C&P's assertion that it should be permitted to intervene "because it is an additional insured under the HSS Policies that Aspen seeks to have rescinded and it would suffer direct harm and prejudice if it is not afforded insurance coverage for pending and future claims under the HSS Policies" ignores the facts of this case. Indeed, although C&P is correct that "[t]his is not a typical additional insured situation," and that "this is the unusual circumstance where C&P's insurance coverage was by virtue of its status as additional insureds under the HSS policies," it is for this exact reason why C&P is adequately represented by HSS. The very terms of the MSA directly contravene C&P's assertion that HSS inadequately represents C&P's interests regarding rescission. Indeed, this court has previously held that "the Additional Named Insureds are not innocent third parties," but instead have "entered into a contractual agreement with a company that allegedly committed fraud when entering into insurance policies on their behalf." June 9, 2016 Order at p. 9. Not only has C&P expressly acknowledged that HSS' interest in the HSS Programs is superior to its own, C&P expressly acknowledged that any interest C&P has in the HSS Program is derived entirely through HSS.

17

To be sure, C&P does not allege that its interests diverge sufficiently from HSS such that HSS cannot devote the proper attention to C&P's interests. Of course, this is because HSS and C&P have absolutely identical interests - defeating rescission. In fact, C&P admits as much, stating that its "claims are based upon the same factual and legal theories as the pending claims." C&P Motion at p. 6. Review of C&P's proposed counterclaims exemplifies this total identity of claims with HSS - - C&P's claims are already subsumed by HSS' claims in this action. C&P's proposed "answer" asserts - - very nearly word for word - - the same relief for its "counterclaims" against Aspen for breach of contract and declaratory judgment as does Count II of HSS' Amended Complaint against Aspen. *See* HSS Amended Complaint (ECF 32); C&P Motion Ex. A (ECF 79-1). In other words, HSS has already brought, on behalf of all Additional Named Insureds, the exact same claims which C&P purports to bring on behalf of itself.  Furthermore, HSS' interests in defending the rescission action go far beyond those of C&P by nature of HSS' contractual relationship with each Additional Named Insured.  Likewise, by way of this action, Aspen seeks to recover tens of millions of dollars in damages from HSS.

C&P does not assert that there is any collusion between and among HSS and Aspen, leaving only the issue of whether HSS is diligently prosecuting the suit. Illogically, C&P asserts that because of the Asset Purchase Agreement, which occurred in April of 2015, HSS "no longer has any vested interest in whether the HSS Policies are rescinded." (*See* ECF 79-2).  Neither Aspen nor HSS has taken this position.  Of course, if this was the case, HSS would not have litigated this action on behalf of itself and all Additional Named Insureds, including filing a complaint against Aspen, engaging in motion practice, and engaging in discovery

practice, all of which continues to present.[9] The Asset Purchase Agreement did not mark the end of HSS as a corporate entity. *See* Am. Compl. ¶¶ 90, 250, 251, 301. If anyone would make the argument that it has no vested interest in C&P's rights it would be the Patriot Defendants.

HSS has stated, in no uncertain terms, that it intends to see this case through to trial. Should HSS lose, and the HSS Program be rescinded, HSS faces a damages claim from Aspen for tens of millions of dollars. Moreover, upon rescission, HSS will be liable for insurance claims against the Additional Named Insureds. HSS has every motivation to vigorously defend Aspen's claims. Indeed, all of these actions taken by HSS happened *after* the Asset Purchase Agreement, an event predating this litigation by almost a year. Any contention that HSS does not have a "vested interest" in this suit because of an Asset Purchase Agreement from April of 2015 is simply invalid. HSS received approximately $10 million from the Asset Sale. It also has insurance which is currently funding its defense in this case. In sum, HSS has the interest and means to defend itself and all those similarly situated, i.e. C&P.

Moreover, such a contention is totally ignorant of the terms of the Asset Purchase Agreement. By way of this motion, C&P implies that the Patriot National Defendants and HSS are one and the same. *See*, C&P Motion, p. 8 and *passim*. ("Patriot National bought HSS's assets and it cannot adequately represent the interests of C&P in this action because it is now in Chapter 11"). Once again though, HSS and the Patriot National Defendants are separate, stand-alone corporate entities, who have retained separate counsel, and are proceeding in this matter independently. Indeed, C&P's assertion is even more confounding in light

---

[9] Aspen makes this assertion without any prejudice to, and under a full reservation of, all of its rights, and nothing herein should be construed by Aspen as an admission of any claim against it or a waiver of any right available to it.

of the Patriot National Subsidiaries' arguments in their pending motion to dismiss, whereby they have taken the position that the Asset Purchase Agreement *explicitly excludes* their alleged liability for the actions of HSS. *See* Patriot National Subsidiaries Memorandum in Support of Motion to Dismiss at p. 2 (ECF 53-2) ("In [the Asset Purchase Agreement], the parties explicitly excluded the assumption by Moving Defendants of any liability arising out of HSS' business activities prior to the April 8, 2015 Closing Date"). By way of this motion and the arguments made therein, C&P demonstrates a fundamental misunderstanding of the very issues before the court, not to mention the various positions of the respective parties and the relationships between and amongst them.[10] Moreover, C&P's assertion that HSS does not "have the same interest as C&P in ensuring that C&P retains coverage as an additional insured under the HSS Policies" totally contradicts nearly the entirety of HSS' claims against Aspen and C&P's own acknowledgement that its proposed "claims are based upon the same factual and legal theories as the pending claims." C&P Motion at p. 6.

As such, C&P has failed to meet even the "minimal" burden of showing inadequacy of representation by HSS while simultaneously displaying fundamental misunderstandings of the complex issues before this court.

   **2.    The Very Basis for C&P's Motion, the Patriot National Defendants' Bankruptcy, is Unrelated to C&P's Adequate Representation in this Matter**

Finally, C&P's argument that the Patriot National Defendants' bankruptcy filing leaves C&P without adequate representation is misguided.   The Patriot National Defendants' bankruptcy filing has not changed C&P's position with

---

[10] Aspen makes this assertion merely to point out the flaw of C&P's alleged reason for why it must intervene, and does not speak to Aspen's positions or contentions with respect to the Patriot National Subsidiaries' alleged liabilities in this matter. Again, Aspen makes this assertion without any prejudice to, and under a full reservation of, all of its rights, and nothing herein should be construed by Aspen as an admission of any claim against it or a waiver of any right available to it.

respect to Aspen's claims, and the Patriot National Defendants' have not postured themselves to represent C&P in particular. To the contrary, the Patriot Defendants are seeking to the distance themselves from HSS, C&P and the Additional Named Insureds as much as possible. They also claim that pursuant to the Asset Purchase Agreement, HSS must indemnify the Patriot Defendants for Aspen's claims. Once Aspen has rescinded the Aspen Policies, the balance of the bifurcated litigation will involve such disputes.

C&P's interests are represented by its agent, HSS. The Patriot Defendants' bankruptcy filing may only impact Aspen's ability to recover damages. The case is bifurcated and the Court has not decided the pending motions to dismiss filed by certain Patriot Defendants. Thus, the Court has already determined that Aspen's core rescission claims lie with HSS and are not impacted by the solvency of the Patriot Defendants. It follows that such bankruptcy filing does not change the fact that C&P has been and will continue to be represented by HSS in these proceedings.

Setting aside that HSS continues to adequately represent C&P's interests regardless of whether or not the Patriot National Defendants have filed for bankruptcy, it is worth further noting that the Patriot National Defendants have not postured to be the primary defender of the interests of the Additional Named Insureds as HSS has done. Indeed, the Patriot National Defendants have gone to great lengths to distance themselves from HSS. As discussed above, the Patriot National Subsidiaries have taken the position that the Asset Purchase Agreement explicitly excludes any alleged liability in this action. None of these entities have postured themselves into a position to represent the interests of C&P. Furthermore, Patriot National has filed an answer to Aspen's complaint. That answer does not include any counterclaims or seek any affirmative relief from

Aspen in connection with the Aspen Policies.   Moreover, Patriot National affirmative defenses largely rely upon the corporate form of each of the entities.[11]

Patriot National's bankruptcy filing has had no material effect on the adequacy of representation by HSS of C&P in this matter.

## POINT II

### THIS COURT SHOULD REJECT C&P'S ALTERNATIVELY SOUGHT RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b)(1)(B) FOR PERMISSIVE INTERVENTION

In the alternative, C&P asserts that this court should grant permissive intervention under Fed. R. Civ. P. 24(b)(1)(B), which provides that "on timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." The timeliness of C&P's intervention has already been addressed above. To the extent that C&P's intervention is deemed timely by the court, Aspen avers that C&P's proposed intervention does not bring any new claim to the case. In other words, C&P does not have a "claim or defense that shares with the main action a common question of law or fact" - - instead, C&P purports to interject itself into this action by asserting a claim for relief that is already being prosecuted by HSS.

"[W]here, as here, the interests of the applicant in every manner match those

---

[11] *See*, e.g., Answer of Patriot National, Inc. to Amended Complaint (ECF 54):  Third Affirmative Defense: "None of Trigen Insurance, Trigen Hospitality or Patriot Underwriters is an artifice or a sham created to execute illegitimate purposes and/or to abuse the corporate fiction and its attendant immunity such that it would be appropriate to disregard the corporate form of any of these entities and to impose alter ego liability on Patriot.; Fourth Affirmative Defense: "Patriot does not control any of Trigen Insurance, Trigen Hospitality or Patriot Underwriters to the extent required to impose alter ego liability on Patriot."; Sixth Affirmative Defense: "Plaintiff's claims are barred because the complaint fails to allege facts sufficient to demonstrate that any act, omission or breach by Patriot caused Aspen any alleged damages."; Seventh Affirmative Defense: "Plaintiff's claims are barred because the complaint fails to allege facts sufficient to demonstrate that any act, omission or breach by Patriot entitles plaintiff to rescind or otherwise avoid coverage under any policy."; Ninth Affirmative Defense: "Aspen's alleged damages, if any, were caused, in whole or in part, by the acts and/or omissions of third party(ies) over whom Patriot had no control or right of control."

of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'" Hoots v. Commonwealth of Pa., 672 F.2d 1133, 1136 (3d Cir. 1982). Furthermore, the interests of judicial efficiency are best served by having HSS continue to prosecute the claims already brought on behalf of the member-insureds, as opposed to each member insurer appearing in this action and proceeding individually under the very same claims brought by HSS, which could result in the addition of nearly one thousand parties to this suit.

Based thereon, Aspen avers that this Court should deny C&P's request for permissive intervention because C&P's interests are completely identical to HSS, and C&P is not bringing any new claims to the action.

**POINT III**

**IF C&P IS PERMITTED TO INTERVENE, THE COURT SHOULD STAY C&P'S CLAIMS PURSUANT TO THE CURRENT BIFURCATION ORDER**

In the event that C&P is permitted to intervene in this matter, Aspen requests that the Court apply the current bifurcation order to stay these claims until resolution of the bifurcated claims is complete. Pursuant to that order, only discovery relating to Aspen's claims for rescission and HSS' claims for breach of contract are permitted to move forward, with all other discovery stayed. *See* January 25, 2018 Order (ECF 75) ("Discovery related to the Complaint of Aspen Specialty Insurance Company for rescission and Hospital Supportive Systems, LLC's claims for breach of contract are bifurcated from all other discovery. All other discovery is STAYED").

23

## CONCLUSION

For the all of the foregoing reasons, C&P's request to intervene should be denied. In the event that C&P is permitted to intervene, Aspen requests that this court stay C&P's claims under the currently in effect bifurcation order.

Dated:

Respectfully submitted,

*s/William D. Deveau*
William D. Deveau (pro hac vice)
Jonathan P. McHenry (pro hac vice)
J. Christopher Henschel (pro hac vice)
Patrick J. Hughes (No. 41403)
Connell Foley LLP
Harborside 5
185 Hudson Street, Suite 2510
Jersey City, NJ 07311
Tel.: 201.521.1000
*Attorneys for Aspen Specialty Insurance Company*

24