# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, <br>               Plaintiff, <br><br> v. <br><br> HOSPITALITY SUPPORTIVE SYSTEMS, LLC, <br> EDWARD E. SNOW, <br> THE CARMAN CORPORATION, <br> SELECTIVE RISK MANAGEMENT, LLC, <br> SELECTIVE LAW GROUP, LLC, <br> TRIGEN INSURANCE SOLUTIONS, INC., <br> TRIGEN HOSPITALITY GROUP, INC., <br> PATRIOT UNDERWRITERS, INC., <br> PATRIOT NATIONAL, INC., <br> ABC CORPORATIONS 1-25, <br> CHICKIE'S AND PETE'S, INC., <br> 4010, INC., <br> PACKER CAFÉ, INC., trading as "CHICKIE'S & PETE'S," <br> 4010, LLC <br> POQUESSING MANAGEMENT, LLC <br> POQUESSING PROFESSIONAL BUILDING, LLC, <br> CPC INTERNATIONAL, LLC, trading as "PHILADELPHIA'S FAMOUS C&P," <br> WRIGHT FOOD SERVICES, LLC, <br> CPC BUCKS, LLC, <br> AUDUBON CPC, LLC, <br> WARRINGTON CPC, LLC <br> DREXEL HILL CPC, LLC, <br> VENUE FOOD SERVICES, LLC <br> CRABCO PA GP LLC, <br> 130 CRABCO REALTY NJ, LLC, <br> 130 CRABCO NJ, LLC, trading as "CHICKIE'S AND PETE'S," <br> EHT CRABCO NJ, LLC, trading as "CHICKIE'S AND PETE'S," <br> WW-CPC, LLC, <br> OC-CPC,LLC, <br> AC-CPC,LLC | CIVIL ACTION <br><br><br><br><br> NO. 16-1133 |

| | |
|---|---|
| **CRABCO ENTERPRISES, LLC<br>CPC PROPERTIES, INC.,<br>CRABCO ENTERPRISES PA LP, and<br>PALMER SOCIAL CLUB, INC.,**<br>    Defendants. | |
| **HOSPITALITY SUPPORTIVE SYSTEMS,<br>LLC,**<br>    Plaintiff,<br><br>    v.<br><br>**ASPEN SPECIALTY INSURANCE<br>COMPANY,**<br>    Defendant. | |

**DuBois, J.**                                                                                       **August 17, 2018**

## M E M O R A N D U M

### I.    INTRODUCTION

In this case arising out of an insurance contract dispute Aspen Specialty Insurance Company ("plaintiff" or "Aspen") asserts numerous claims against thirty-four defendants, including twenty-five unnamed corporations. At its core, the case involves a series of insurance policies issued by plaintiff to Hospitality Supportive Systems ("HSS") as part of HSS's insurance sharing program for bars and restaurants. Plaintiff contends that HSS provided incomplete or misleading information regarding the member-insureds' loss history. HSS asserts that plaintiff improperly cancelled and refused to renew coverage for HSS and its member-insureds and mishandled or improperly denied claims in bad faith.

Presently before the Court is the Motion of Defendants Snow, Carman Corporation, Selective Law Group, LLC, and Selective Risk Management, LLC to Dismiss Amended Complaint. For the reasons that follow, Carman Corporation ("Carman"), Selective Law Group, LLC ("Selective Law") and Selective Risk Management, LLC's ("Selective Risk") Motion to Dismiss is denied without prejudice

## II.  BACKGROUND

The facts as alleged in plaintiff's Amended Complaint are as follows.  Plaintiff issued a series of insurance policies to HSS, an insurance purchasing group that administers property and liability insurance sharing programs for owners of restaurants and bars.  Am. Compl. ¶¶ 1–2, 24, 30.  Under the terms of its agreements with the owners, HSS is the first named insured on the policies and individual owners are added to the policies as additional named insureds.  Am. Compl. ¶¶ 28, 30–31.

HSS's Underwriting Guidelines require that prospective participants "submit currently valued loss runs from prior insurance carriers detailing any claims asserted against said prospective participants over the specified preceding number of years," and that prospective participants meet other criteria involving the number of claims asserted against it and the value of any such claims.  Am. Compl. ¶ 33.  If participants met the minimum requirements of the Underwriting Guidelines, HSS allowed them to participate in the insurance sharing program and charged a fee for its services.  Am. Compl. ¶ 37.

HSS retained defendant, Selective Risk Management, LLC, as its third-party claims administrator and defendant, Selective Law Group, LLC, to defend the interests of the participants.  Am. Compl. ¶ 38.  As of April 1, 2015, defendant, Edward Snow, was the sole shareholder of HSS, Snow and Charles O'Donnell were the sole shareholders and/or members of Selective Risk, and O'Donnell was the President and Chief Executive Officer of Selective Law.  Am. Compl. ¶¶ 25, 40.

From 2011 to 2015, plaintiff issued and renewed multiple primary and excess commercial liability insurance policies (the "Aspen Policies") to the HSS insurance sharing programs, providing general liability, liquor liability, and excess liability coverage.  Am. Compl.

3

¶¶ 42–77. Plaintiff alleges that it issued and renewed the policies based on the number and severity of claims reported to plaintiff during the prior policy period and loss runs submitted by HSS, as well as HSS's representations that it continued to vet participants' compliance with the Underwriting Guidelines. *See, e.g.*, Am. Compl. ¶¶ 52–53.

On April 1, 2015, Trigen Insurance, a wholly-owned direct subsidiary of Patriot National, entered into an asset purchase agreement with HSS and Snow, as sole shareholder of HSS. Am. Compl. ¶¶ 86–88. Pursuant to that agreement, HSS and Snow agreed to transfer to Trigen Insurance all of HSS's rights under certain contracts and other specified assets and liabilities. Am. Compl. ¶ 89. Trigen Insurance also gained the sole right to use the name "Hospitality Supportive Systems, LLC." Am. Compl. ¶ 93. In return, Trigen Insurance agreed to pay HSS and/or Snow $5.606 million upon closing, with up to an additional $4.045 million in future earn-out payments tied to HSS's estimated earnings. Am. Compl. ¶ 90. Trigen Insurance also entered into a separate asset purchase agreement with Selective Risk and Snow and O'Donnell, as the sole shareholders of Selective Risk. Am. Compl. ¶ 91. HSS and Snow executed these agreements without Aspen's prior knowledge or authorization. Am. Compl. ¶ 99.

On May 15, 2015, Trigen Insurance, HSS, Selective Risk, Snow and O'Donnell executed amendments to the asset purchase agreements that provided for the immediate accelerated repayment of all outstanding earn-out compensation available under those agreements. Am. Compl. ¶ 96. Following those amendments, Trigen Insurance spun-off the HSS assets/business into a separate entity called Trigen Hospitality. Compl. ¶ 97. Trigen Hospitality is a wholly-owned subsidiary of Patriot Underwriters, which is a wholly-owned subsidiary of Patriot National. Compl. ¶ 97.

## III.     PROCEDURAL BACKGROUND

Plaintiff filed a Complaint in this Court (Civil Action No. 16-1133) on March 10, 2016. On February 10, 2017, plaintiff filed an Amended Complaint, seeking, *inter alia*, a rescission of the Aspen Policies and damages for fraud and misrepresentations.  HSS filed a Complaint against Aspen in the Delaware County Court of Common Pleas on March 15, 2016.  Aspen filed a Notice of Removal on March 22, 2016, and that case was docketed in this court as Civil Action No. 16-1330.  By Order dated January 11, 2017, following an initial pretrial conference, the Court consolidated Civil Action No. 16-1330 with Civil Action No. 16-1133.  By separate Order dated January 11, 2017, the Court bifurcated discovery relating to Aspen's claim for rescission and HSS's claim for breach of contract from all other discovery and stayed all other discovery in the consolidated case.

On February 10, 2017, HSS filed an Amended Complaint asserting claims against Aspen for breach of contract, declaratory relief, statutory bad faith, defamation/commercial disparagement and interference with contractual relationship.  HSS's claims arise from its allegations that Aspen improperly cancelled and refused to renew coverage for HSS and the additional named insureds and mishandled or improperly denied claims in bad faith.  On April 28, 2017, defendants Snow, Carman, Selective Law, and Selective Risk ("moving defendants") filed a Motion to Dismiss.  On that same date, defendants Patriot Underwriters, Inc., Trigen Insurance Solutions, Inc., and Trigen Hospitality Group, Inc. filed a Motion to Dismiss.

On January 30, 2018, Patriot National, Inc., Trigen Insurance Solutions, Inc., Patriot Underwriters, Inc., and Trigen Hospitality Group, Inc. (collectively "Patriot Entities") filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  The Bankruptcy Court denied

Aspen's motion seeking relief from the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362. By Order dated August 10, 2018, this Court severed plaintiff's claims against the Patriot Entities from plaintiff's claims against the remaining defendants and stayed all proceedings as to the Patriot Entities, including their Motion to Dismiss, until further order of the Court.

By Order dated April 2, 2018, the Court granted the Chickie's and Pete's defendants' Motion to Intervene. By Order dated August 10, 2018, the Court granted Palmer Social Club, Inc. d/b/a Trinity Nightclub & Hookah Lounge's Motion to Intervene. Chickie's and Pete's and Palmer Social Club are additional named insureds under the Aspen Policies.

## IV. APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses the remaining "'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether the complaint states a plausible claim for relief. *Id.*

## V. DISCUSSION

Moving defendants argue that the following claims should be dismissed: (1) Count X, in which plaintiff asserts an alter-ego liability claim against Snow and Carman; (2) Count XI, in which plaintiff asserts a negligence claim against Snow and Carman; (3) Count XII, in which plaintiff asserts a participation liability claim against Snow; and (4) Count XIX, in which plaintiff asserts a claim for an accounting against Selective Risk and Selective Law.[1] The Court addresses each claim in turn.

### A. Count X: Alter-ego Liability

Moving defendants argue that the alter-ego liability claim asserted in Count X of the Amended Complaint should be dismissed on the ground that plaintiff has not pled sufficient facts to warrant piercing the corporate veil and holding Snow and Carman liable for HSS's conduct. The Court disagrees with moving defendants on this issue.

"Applying the equitable remedy of alter ego liability, Pennsylvania courts will allow the presumption [against holding shareholders of a corporation liable for the obligations of the corporation] to be set aside and the corporate veil to be pierced to 'prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat the public purpose or shield someone from a liability for a crime.'" *In re Kitchin*, 445 B.R. 472, 481 (Bankr. E.D. Pa. Nov. 9, 2010) (quoting *Vill. At Camelback Prop. Owners Assn. Inc. v. Carr*, 538 A.2d 528, 533 (Pa. Super. 1988)). Specifically, under Pennsylvania law, courts may pierce the corporate veil when "(1) the party exercised domination and control over the entity; and (2) injustice will result if the corporate fiction is maintained despite a unity of interests between the entity and its principal." *Id.* (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988)). In

---

[1] Plaintiff's claim for an accounting in Count XIX is also brought against HSS. Moving defendants only argue that the claim for an accounting should be dismissed as to Selective Risk and Selective Law.

determining whether to pierce the corporate veil, courts consider the following factors: "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Lumax Indust., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). Ultimately, "courts apply a totality of the circumstances test when determining whether to pierce the corporate veil and impose alter ego liability." *Hudson United Bank v. Pena*, Civ. No. 03-0158, 2005 WL 736603, at *7 (E.D. Pa. Mar. 30, 2005).

The Court concludes that the allegations set forth in plaintiff's Amended Complaint are sufficient to state a claim for alter-ego liability against Snow and Carman. Plaintiff asserts, *inter alia*, that (1) Snow was the sole shareholder, principal and/or member of HSS and Carman, Am. Compl. ¶¶ 81, 224; (2) HSS and Carman operated out of the same location and utilized the same management and personnel, Am. Compl. ¶¶ 2, 4, 226, 228; (3) Snow used HSS and Carman interchangeably by listing Carman as an applicant on certain insurance application forms to plaintiff and corresponding with plaintiff through shared HSS/Carman personnel in their capacity as Carman employees with respect to claims arising under the Aspen Policies issued to HSS, Am. Compl. ¶ 228; and (4) HSS, Carman and Snow failed to maintain separate bank accounts and accounting records and commingled accounts and funds, Am. Compl. ¶ 239. Plaintiff further alleges that Snow and/or Carman used HSS to perpetuate a fraud through misrepresentations, misstatements, or omissions regarding known claims or losses against the additional named insureds. Am. Compl. ¶ 232. Finally, plaintiff contends that piercing the corporate veil is necessary to avoid injustice on the ground that HSS sold substantially all of its assets. Compl. ¶ 234. The Court concludes that, at this stage of the litigation, plaintiff sufficiently asserts a claim for alter-ego liability against Snow and Carman. Accordingly, that

part of defendants' Motion seeking dismissal of plaintiff's alter-ego liability claim in Count X of the Amended Complaint is denied without prejudice.

### B. Count XI: Negligence

Moving defendants further contend that plaintiff's negligence claim against Snow and Carman in Count XI of the Amended Complaint is barred by the gist of the action doctrine and the economic loss doctrine. The Court disagrees with moving defendants on this issue.

Pennsylvania courts apply the "gist of the action doctrine" to "maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Advert.*, 811 A.2d 10, 14 (Pa. Super. 2002) (internal citations omitted). Although claims for breach of contract and negligence "derive from a common origin," tort actions stem from "breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus." *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992) (quoting *Iron Mountain Security Storage Corporation v. American Specialty Foods, Inc.*, 457 F.Supp. 1158, 1165 (E.D.Pa.1978)). Consequently, the doctrine has been variously stated to bar negligence claims "(1) arising solely from a contract between the parties (2) where the duties allegedly breached were created and grounded in the contract itself (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *eToll*, 811 A.2d at 19 (internal quotations omitted) (citations omitted). The economic loss

doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."[2]

The Court concludes that plaintiff's negligence claim in Count X of the Amended Complaint is not barred by the gist of the action doctrine. First, Snow and Carman were not parties to the contract between HSS and Aspen. Second, plaintiff alleges that Snow and Carman made negligent misrepresentations that induced plaintiff into entering the insurance contract with HSS. Therefore, they were allegedly breaching a general social duty, not a duty established by the insurance policy. Third, plaintiff asserts that Snow and Carman were negligent "during the course of fulfilling [HSS' contractual] obligations." *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 71 (Pa. 2014) (holding that allegations that a defendant was negligent in the course of fulfilling his contractual obligations are not barred by the gist of the action doctrine). The Court concludes that these allegations are sufficient to plead a negligence claim against Snow and Carman in Count XI of the Amended Complaint. Accordingly, that part of defendants' Motion seeking dismissal of plaintiff's claim in Count XI is denied without prejudice.

**C. Count XII: Participation Liability**

Next, moving defendants argue that plaintiff's claim for participation liability against Snow in Count XII of the Amended Complaint should be dismissed on the ground that plaintiff failed to state with particularity the circumstances constituting Snow's alleged fraud or mistake.

---

[2] Courts have recognized that the gist of the action and economic loss doctrines operate "similarly." *Powell v. Saint Joseph's University*, No. 17-4438, 2018 WL 994478, at *8 n.3 (E.D. Pa. Feb. 20, 2018); *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare*, Inc., No. 11-4568, 2011 U.S. Dist. LEXIS 139980, at *19 (E.D. Pa. Dec. 6, 2011). Both doctrines serve to "determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp.*, Inc., 247 F.3d 79, 103 (3d Cir. 2001). Thus, the distinction between the two doctrines "is largely one of pedigree," as the economic loss doctrine "developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself." *Id.* at *20 (E.D. Pa. Dec. 6, 2011) (quoting *Bohler-Uddeholm*, Inc., 247 F.3d at 104 n.11). Accordingly, the Court considers moving defendants' arguments under the gist of the action and economic loss doctrines to be the same. In addressing these arguments in this Memorandum, the Court refers to the doctrines collectively as the gist of the action doctrine.

*See* Fed. R. Civ. P. 9(b). Furthermore, moving defendants argue that the participation theory is inapposite because a valid contract existed between HSS and plaintiff.

The Court concludes that plaintiff stated the circumstances surrounding Snow's alleged participation in HSS's fraud and misrepresentation with sufficient particularity in Count XII of the Amended Complaint. Specifically, plaintiff asserts that Snow directly participated in the negotiation and procurement of the Aspen Policies and the misrepresentations relating to the additional named insureds' loss history. Am. Compl. ¶¶ 241–42.

Furthermore, the Court disagrees with moving defendants' argument that because a contract existed between plaintiff and HSS, plaintiff cannot assert a participation liability claim against Snow. Moving defendants rely on *Accurso v. Infra-Red Services, Inc.*, 23 F.Supp.3d 494, 511–12 (E.D. Pa. 2014), in which Judge Gene E.K. Pratter held that the participation theory does not apply to breaches of contract. Moving defendants' reliance on *Accurso* is misplaced. Plaintiff in this case asserts that Snow participated in torts—fraud and negligent misrepresentation—committed by HSS. Moving defendants are incorrect in arguing that plaintiff seeks to hold Snow personally liable for HSS's alleged breach of contract through participation liability. The Court thus concludes that plaintiff's allegations are sufficient to state a participation theory claim against Snow. Accordingly, the Court denies without prejudice that part of defendants' Motion seeking dismissal of plaintiff's participation theory claim in Count XII of the Amended Complaint.

**D. Count XIX: Accounting**

In their Motion to Dismiss, moving defendants contend that plaintiff's claim for an accounting against Selective Risk and Selective Law should be dismissed on the ground that there is no valid contract between plaintiff and Selective Risk or Selective Law. Plaintiff

11

responds that (1) there is an implied-in-fact contract between Aspen and Selective Risk and Selective Law; and (2) Selective Risk was acting as an agent of HSS in carrying out its duties under the contract with Aspen. The Court concludes that plaintiff fails to state a claim for a legal accounting against Selective Risk and Selective Law on the ground that, based on the allegations in the Amended Complaint, there was no contract, express or implied, between plaintiff and Selective Risk of Selective Law.

An action for a legal accounting requires: "(1) a transaction involving movable personal property, i.e., money or goods; (2) a contract between the parties, express or implied, and (3) uncertainty as to the amount." *Haft v. United States Steel Corp.*, 499 A.2d 676, 677 (Pa. Super. 1985). At issue in the Motion to Dismiss is whether there was a contract, express or implied, between plaintiff and Selective Risk or Selective Law.[3]

The Court concludes that plaintiff has not sufficiently pled that there was an implied-in-fact contract between plaintiff and Selective Risk or Selective Law. "An implied-in-fact contract is a true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been verbally expressed. The agreement is inferred from the conduct of the parties." *Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987).

In the Amended Complaint, plaintiff only avers that HSS retained the services of Selective Risk as its third-party claims administrator and Selective Law as its claims defense counsel, and that after additional named insureds reported liability claims to HSS, Selective Risk and HSS managed the claims and retained Selective Law to defend the additional named

---

[3] "An equitable accounting is a *remedy* that is available under Pennsylvania law where the available legal remedy is not 'adequate or complete.'" *Global Arena, LLC v. Eterpreting, LLC*, Case No. 16-cv-3634, 2016 WL 7156396, at *2 (E.D. Pa. Dec. 8, 2016) (emphasis in original) (quoting *Williams v. Finlaw, Mueller & Co.*, 141 A. 47, 48 (Pa. 1928)). Because an equitable accounting is a remedy not a cause of action, and plaintiff's only claim against Selective Risk and Selective Law is for an accounting, plaintiff cannot seek an equitable accounting from Selective Risk or Selective Law.

12

insureds. Am. Compl. ¶¶ 38, 39. These assertions are insufficient to plead that an implied-in-fact contract existed between plaintiff and Selective Risk or Selective Law. Plaintiff's allegation that HSS, Snow, Selective Risk and Selective Law failed to disclose that the entities were related by Snow and O'Donnell's common ownership is irrelevant to whether there was a contractual relationship between plaintiff and Selective Risk or Selective Law. Am. Compl. ¶ 80.

The Court further concludes that HSS's delegation to Selective Risk of certain duties under the contract with plaintiff does not create a contract between plaintiff and Selective Risk. *See Hudock v. Donegal Mut. Ins. Co.*, 264 A.2d 668, 672 (Pa. 1970). If the agent, acting within the scope of its authority, fails to perform the principal's contractual duties which had been delegated to it, the obligee under the contract can bring a breach of contract action against the principal, not the agent. *Id.*

The Court thus concludes that plaintiff fails to plead sufficient facts asserting a contractual relationship between plaintiff and Selective Risk of Selective Law. Accordingly, the Court grants without prejudice that part of defendants' Motion seeking dismissal of the claims for an accounting in Count XIX against Selective Risk and Selective Law.

## VI. CONCLUSION

For the foregoing reasons, Motion of Defendants Snow, Carman Corporation, Selective Law Group, LLC and Selective Risk Management, LLC to Dismiss Amended Complaint is granted in part and denied in part. The Court denies that part of defendants' Motion seeking dismissal of plaintiff's alter-ego liability claim in Count X of the Amended Complaint without prejudice to defendants' right to raise the alter-ego liability issues after the completion of discovery by motion for summary judgment and/or at trial. The Court denies that part of defendants' Motion seeking dismissal of plaintiff's negligence claim in Count XI of the

Amended Complaint without prejudice to defendants' right to raise the negligence issues after the completion of discovery by motion for summary judgment and/or at trial. The Court denies that part of defendants' Motion seeking dismissal of plaintiff's participation liability claim in Count XII of the Amended Complaint without prejudice to defendants' right to raise the participation liability issues after the completion of discovery by motion for summary judgment and/or at trial. Finally, the Court grants that part of defendant's Motion seeking dismissal of plaintiff's claim for an accounting against Selective Risk and Selective Law in Count XIX of the Amended Complaint without prejudice.

An appropriate order follows.