IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC, EDWARD E. SNOW, INDIVIDUALLY, THE CARMAN CORPORATION, SELECTIVE RISK MANAGEMENT, LLC, SELECTIVE LAW GROUP LLC, JOHN W. CONNELLY, JR., INDIVIDUALLY,  CHARLES M. O'DONNELL, ESQ., INDIVIDUALLY, MCGRIFF, SIEBELS & WILLIAMS, INC., INSERVCO INSURANCE SERVICES, INC., TRIGEN INSURANCE SOLUTIONS, INC., TRIGEN HOSPITALITY GROUP, INC., PATRIOT UNDERWRITERS, PATRIOT NATIONAL, INC. AND ABC CORPORATIONS 1-25 | : : : : : : | No. . 2:16-cv-01133 |

**DEFENDANT, INSERVCO INSURANCE SERVICES, INC.,
BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

Defendants, Inservco Insurance Services, Inc., referred hereinafter as "Moving Defendant," asks this Honorable Court to consider the following Memorandum of Law explaining why the Second Amended Complaint filed by Plaintiff, Aspen Specialty Insurance Company, must be dismissed as a matter of law.

**I.      MATTER BEFORE THE COURT**

Moving Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.

**II.     STATEMENT OF FACTS**

Plaintiff commenced this litigation by the filing of a Complaint on or about March 10, 2016. A true and correct copy of Plaintiff's Initial Complaint is attached hereto as Exhibit "A."

Plaintiff's Initial Complaint did not name Inservco Insurance Services, Inc. as a Defendant. See Exhibit A. Plaintiff filed an Amended Complaint on or about February 10, 2017. A true and correct copy of Plaintiff's Amended Complaint is attached hereto as Exhibit "B." Plaintiff's Amended Complaint did not name Inservco Insurance Services, Inc. as a Defendant. See Exhibit B.

On or about December 16, 2019, Plaintiff initiated claims against Moving Defendant, Inservco Insurance Services, Inc. ("Moving Defendant") by the filing of a Second Amended Complaint with this Honorable Court. A true and correct copy of Plaintiff's Second Amended Complaint is attached hereto as Exhibit "C." The Second Amended Complaint broadly contends that Plaintiff was "seriously and significantly defrauded" due to the actions of Defendants "Snow, O'Donnell, Connelly, HSS, Carman, Selective Law, and Selective Risk," which it refers collectively as the "HSS Program Enterprise." See Exhibit C, ¶ 31. Notably, Moving Defendant is not included as part of the alleged "Enterprise."

This lawsuit involves multiple insurance policies issued by Plaintiff to Hospitality Support Systems, LLC's ("HSS") from 2011 to 2015 which provided generally liability, liquor liability and excess liability coverage. See Exhibit C, ¶ 59. With respect to moving Defendant, Plaintiff alleges that Moving Defendant's production of Loss Runs for HSS which were included underwriting materials allegedly submitted to Aspen intentionally left out claims that were not reported to Plaintiff. See Exhibit C, ¶ 76, 165. Plaintiff alleges in its Second Amended Complaint that Aspen received various email correspondence from HSS that included Loss Runs prepared by Moving Defendant. See Exhibit C, ¶¶ 71, 76, 99, and 103. The loss runs that plaintiff alleges were prepared by Moving Defendant and form the factual basis on its claims were received by Plaintiff via email from HSS on June 30, 2013; December 2, 2014, December 12, 2013, and June 11, 2015. See Exhibit C, ¶¶ 71, 76, 99, and 103, respectively.

The allegations from Plaintiff's Second Amended Complaint indicate that it first took action with respect to alleged unreported claims in September 2015 when it issued Notices of Nonrenewal and when HSS notified Plaintiff of a "significantly-increased number of claims against various additional named insureds under the Aspen policies." <u>See</u> Exhibit C, ¶ 195. Plaintiff admits in its Second Amended Complaint that it had documents in its possession in September 2015 related to Moving Defendant's contracted work with HSS.

Prior to the filing of Plaintiff's Second Amended Complaint, which first initiated claims against Moving Defendant, Plaintiff's counsel served Moving Defendant with a subpoena requesting documents and testimony from Moving Defendants on October 2, 2017. A true and correct copy of Plaintiff's October 2, 2017 subpoena is attached hereto as Exhibit "D." The subpoena requested documents directly related to this lawsuit; in particularly, documents related to the agreement between Moving Defendant, Aspen, and/or HSS concerning Aspen's policies or the HSS Self-Insurance Program and any communications associated thereto. <u>See</u> Exhibit D. As required by the subpoena, Moving Defendant provided materials in response to Plaintiff subpoena on October 9, 2017, one week after the subpoena was issued. At the time Plaintiff issued said subpoena to Moving Defendant, Moving Defendant was not a party to this case. In fact, the subpoena was issued more than two (2) years prior to the filing of Plaintiff's Second Amended Complaint.

Based on the foregoing facts, Plaintiff's Second Amended Complaint must be dismissed with prejudice as to Moving Defendant as the claims brought against it are barred by the two (2) year statute of limitations for fraud, negligent misrepresentation, and negligent supply of information.

**III.   STANDARD OF REVIEW**

When considering a Fed. R Civ. P. 12(b)(6) Motion to Dismiss, this Honorable Court "accepts as true all allegations in the Complaint and all reasonable inferences which can be drawn therefrom." DeBendictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3rd Cir. 2007)). To survive a motion to dismiss, the Complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Customers Bank v. Municipality of Norristown, No. 12-2471, 2013 WL 1789772 at *3 (E.D. Pa. April 26, 2013) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 at n.3 (2007)). Twombly also notes that a Plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

Moreover, this Honorable Court need not accept Plaintiff's legal conclusions and is not bound "to accept as true a legal conclusion couched as a factual allegation." Customers Bank, 2013 WL 1789772, at *3 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). This Honorable Court, when analyzing Twombly together with the Supreme Court's ruling in Ashcroft v. Iqbal, 556 U.S. 662 (2009), stated that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-that the pleader is entitled to relief." Thompson v. Wynnewood of Lower Merion Twp., No. 12–2308, 2012 WL 4033706, at *3 (E.D. Pa. Sept. 13, 2012).

Following Iqbal and Twombly, the Third Circuit Court of Appeals set forth a three-part analysis when determining whether a complaint survives a 12(b)(6) motion to dismiss, including (1) determining whether the plaintiff set forth the elements needed to state a claim; (2) separating well-pleaded factual allegations from mere conclusions; and (3) determining from these well-pleaded factual allegations whether they "plausibly give rise to an entitlement for relief." Id. at *12.

In the case *sub judice*, Moving Defendant argues primarily that Plaintiff is time barred in bringing its claims against Moving Defendant based on the admissions and allegations contained in Plaintiff's Second Amended Complaint. Secondarily, Moving Defendant argues that, if this court does not find that Plaintiff's claims are time barred, that Plaintiff has failed to state claims upon which relief can be granted and give rise to an entitlement for relief, as it has not stated its claims with the requisite particularity. In either scenario, Moving Defendant asserts that Plaintiff's claims against it should be dismissed with prejudice.

**IV.   ARGUMENT**

    **A.   Plaintiff claims against Moving Defendant are time-barred by the Statute of Limitations and Discovery Rule.**

Plaintiff has brought three (3) claims against Moving Defendant: Fraud (Count VII), Negligent Misrepresentation (Count XXVI), and Negligent Supply of Information (XXVII). See Exhibit C. The applicable statute of limitations for fraud, negligent misrepresentation, and negligent supply of information in Pennsylvania is two (2) years. See 42 Pa. C. S. § 5524. "The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises." Haugh v. Allstate Ins. Co., 322 F.3d 227, 231 (3d Cir. 2003) (citation omitted).

In the Third Circuit, litigants are allowed to assert a statute of limitations defense to be raised in a 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Schmidt v. Skolas, 770 F.3d 241, 249 (3d. Cir. 2014) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975). The bar must be apparent on the face on the complaint to form the basis of a dismissal under Rule 12(b)(6). Robinson v. Johnson, 313 F.3d 128, 134-35 (3d Cir. 2002) (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978). "The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises." Haugh v. Allstate

Ins. Co., 322 F.3d 227, 231 (3d Cir. 2003) (citing Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000)).

"The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." Crouse, 745 A.2d at 611. "In order to determine when the statute should begin to run, the finder of fact focuses on whether the plaintiff was reasonably diligent in discovering his injury." Id. "Pursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors.'" Id. (quoting White v. Owens-Corning Fiberglas, Corp., 668 A.2d 136, 144 (Pa. Super. 1995)). "[O]nly where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." Id. The pleading must reveal when the limitations period begins to run when considering the application of the discovery rule. Schmidt, 770 F.3d at 251 (quoting Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (stating dismissal may be appropriate when "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense")).

Based on the facts and allegations asserted in Plaintiff's Second Amended Complaint, Plaintiff's claims of fraud, negligent misrepresentation, and negligent supply of information are time-barred and must be dismissed.

> **i. Plaintiff is barred on the face of its Second Amended Complaint from bringing this case against Moving Defendant.**

Plaintiff does not hide the precise time period wherein Moving Defendant allegedly committed acts of fraud, negligent misrepresentation, and negligent supply of information, the allegations of which are specifically denied by Moving Defendant. Plaintiff clearly identifies at

6

the outset of its complaint that it issued insurance policies to the HSS Programs from 2011 to 2015. See Exhibit C, ¶ 59. Plaintiff alleges that Moving Defendant was an affiliate of the HSS Programs during this time period from 2011 to 2015, wherein Moving Defendant provided "claims management." See Exhibit C, ¶ 41. During this period of time, Aspen knew that Moving Defendant was providing loss runs to HSS, as it received emails spanning from 2013 to 2015 from HSS with Moving Defendant's loss runs attached to said emails. See Exhibit C, ¶¶ 71, 76, 99, and 103, respectively. The loss runs were clearly identified as being prepared by Inservco, as shown in the sample attached hereto as Exhibit "E." Thus, there is no doubt that Aspen had in its possession these loss runs and knew what entity prepared them, as the runs are clearly identified with Moving Defendant's company name and logo. See Exhibit E.

Furthermore, Plaintiff admits that it relied on these loss runs when it issued its policies from 2011 to 2015. See Exhibit C, ¶ 63. Plaintiff has even identified the precise moment in which it took action in response to HSS's alleged actions: September 2015, when it issued Notices of Non-Renewals for three (3) insurance policies. See Exhibit C, ¶ 195. Plaintiff goes on to state without ambiguity that it began investigating the HSS Programs at that time, which was in September 2015:

> 197.   The late stage of many of the recently-reported underlying proceedings spurred Aspen to investigate their history, as well as HSS' knowledge thereof.
>
> 198.   Aspen's initial investigation revealed that HSS was aware of a significant number of underlying claims that were not disclosed to Aspen in the applications for coverage under certain of the Aspen Policies.

See Exhibit C, ¶¶ 197, 198.

It is plainly evident on the face Plaintiff's Second Amended Complaint that Plaintiff's claims against Moving Defendant are time-barred. Applying the discovery rule to the facts alleged by Plaintiff itself in its Second Amended Complaint, Moving Defendant asserts that Plaintiff's

7

statute of limitations began to run on September 30, 2015, as by Plaintiff's own admission it took action sometime in September 2015 against HSS to investigate the HSS programs.[1] By Plaintiff's own admissions, Plaintiff knew or reasonably should have known of the injuries allegedly caused by Moving Defendant by September 30, 2015. Assuming that all claims in Plaintiff's Second Amended Complaint are true, it is evident on the face of Plaintiff's pleading that its claims asserted against Moving Defendant are time-barred, as Plaintiff became aware of the alleged unreported claims by at least September 30, 2015 and issued Notice of Nonrenewals for certain polices at that time. Therefore, Plaintiff would have had until September 30, 2017 to file against Moving Defendant. As the docket reflects, Plaintiff did not initiate the case against Moving Defendant until December 16, 2019, which is well over two (2) years late. Plaintiff had not one, but two (2) prior complaints in which it knew about Moving Defendant's loss runs and could have named Inservco as a Defendant, but it failed to do so. Plaintiff cannot be given a "third bite at the apple" by bringing claims that are clearly and unequivocally time barred. To do so would be a manifest injustice to Moving Defendant.

Based on the face of its Second Amended Complaint, Plaintiff initiated this case well after the two (2) year statute of limitations for fraud, negligent misrepresentation, and negligent supply of information. Thus, dismissal on the basis of Rule 12(b)(6) is proper and Moving Defendant must be dismissed from this case with prejudice.

---

[1] For purposes of this Motion, Moving Defendant is willing to give Plaintiff the benefit of the doubt with respect to the particular date in September 2015 when it allegedly began investing HSS programs; hence the selection of September 30, 2015 as the date the statute of limitations began to run.

> ii. **Even assuming that Plaintiff was not aware of Moving Defendant's alleged involvement in this case until it received documents via subpoena on October 9, 2017, Moving Defendant is time-barred from bring this case against Moving Defendant.**

Moving Defendant expects that Plaintiff will argue that it was not aware of Moving Defendant's involvement in this case until it received documents via subpoena on October 9, 2017. Moving Defendant also expects that Plaintiff will argue that reliance on this document will convert this motion to one for summary judgment. However, the Third Circuit has recognized an exception to this rule that allows a document "integral to or explicitly relied on in the complaint" when considering a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996), superseded on other grounds by PSLRA, 15 U.S.C. § 78u-4(b)(2)). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated "[w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." Id. (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993)). What is important is whether the claims in the complaint are founded on an extrinsic document and not whether that document is explicitly cited. Id.

In this case, Moving Defendant relies on the October 2, 2017 subpoena issued by Plaintiff as it is believed that the documents Defendant produced in response to that subpoena were relied upon by Plaintiff in drafting in Second Amended Complaint. Thus, based on the cited authority above, Defendant's reliance on this document does not convert this Motion to Dismiss into one for summary judgment as it is argued that Plaintiff had actual notice and in fact relied upon these documents in framing its Second Amended Complaint.

As noted above, Plaintiff issued a subpoena to Moving Defendant October 2, 2017; Moving Defendant promptly responded on October 9, 2017. See Exhibit D.  Common sense would suggest

that Plaintiff was aware of Moving Defendant's connection to HSS shortly before it issued the subpoena on October 2, 2017. Thus, assuming the statute of limitations clock began to run on October 2, 2017, Plaintiff would have had until October 2, 2019 to file its claims against Moving Defendant.

Even if Plaintiff is given the benefit of the doubt by assuming it was not aware of Moving Defendant's involvement until after these documents were produced, which Moving Defendant expressly denies, Plaintiff is still time-barred from recovering as it did not file its claims against Moving Defendant until December 16, 2019. Thus, even if the discovery rule is liberally construed, and assuming that the first time it was reasonably was aware that it suffered an injury allegedly at the hands of Moving Defendant was when Moving Defendant produced documents at the direction of the subpoena on October 9, 2017, Plaintiff's claims are still time-barred, as it would have been required to file its claims against Moving Defendant by October 9, 2019. However, Plaintiff failed to join Moving Defendant to this case until December 16, 2019.

Thus, Plaintiff's claims against Moving Defendant are time-barred even assuming Plaintiff did not "discover" Moving Defendant's alleged involvement until October 9, 2019.

      **B.**      **Plaintiff's Second Amended Complaint has fails to state a claim upon which relief can be granted.**

In addition to Plaintiff's claims being time-barred, Plaintiff's Second Amended Complaint fails to state a claim for which relief can be granted. Federal Rule of Civil Procedure 9(b) provides that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Third Circuit explained this particularity requirement as follows: "Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to

10

safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984) cert. denied, 469 U.S. 1211 (1985).

To satisfy Rule 9(b)'s pleading requirements, a plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). In addition, "inject precision and some measure of substantiation into [the] allegations of fraud," and to "state the circumstances of the alleged fraud with sufficient particularity." Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004)), abrogated on other grounds by Twombly, 550 U.S. 544. Furthermore, the purpose of Rule 9(b) is to provide a defendant with notice of the precise misconduct with which he or she is charged and to prevent false or unsubstantiated charges." Schmidt v. Ford Motor Co., 972 F. Supp. 2d 712, 720 (E.D. Pa. 2013) (quoting Cooper v. Broadspire Servs., Inc., No. 04–5289, 2005 WL 1712390, at *5 (E.D. Pa. July 20, 2005)); see also Travelers Indem. Co. v. Cephalon, Inc., 620 F. App'x at 85-86 (3d Cir. 2015) (non-precedential) (explaining that Rule 9(b)'s particularity is required "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior").

This Court has applied Rule 9(b) to negligent misrepresentation claims, requiring plaintiffs to "plead with particularity the 'circumstances' of the alleged fraud, 'in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." [2] Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 141 (E.D. Pa. 2007) (quoting Seville, 742 F.2d at 791 (3d Cir. 1984)).

---

[2] Defendant acknowledges that there is a disagreement in the Third Circuit as to whether Rule 9(b) applies to claims based on negligent misrepresentation. Schmidt v. Ford Motor Co., 972 F. Supp. 2d 712, 720 n.3 (E.D. Pa. 2013)

11

The elements of fraud under Pennsylvania law are "(1) a material factual misrepresentation; (2) made with knowledge or belief of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in justifiable reliance to that party to his detriment." Agathos v. Starlite Motel, 60 F.3d 143, 147 (3d Cir. 1995); see also Moser v. DeSetta, 589 A.2d 679, 682 (Pa. 1991); Mellon v. Barre-National Drug Co., 636 A.2d 187, 189 (Pa. Super. 1993). Fraud can consist of "anything calculated to deceive, whether by single act or combination or by suppression of truth or suggestion of what is false." Moser, 589 A.2d at 682; see also Cottman Transmission Systems, Inc. v. Melody, 869 F. Supp. 1180, 1186 n.10 (E.D. Pa. 1994).

Negligent misrepresentation requires proof of (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. Bionix Dev. Corp. v. Sklar Corp., 2009 U.S. Dist. LEXIS 96593, *9 (E.D. Pa. October 14, 2009) (citing Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999)). Importantly, a claim for negligent misrepresentation must fail when there is no duty to disclose. Bionix, 2009 U.S. Dist. LEXIS at *10. Plaintiff must identity the existence of a duty owed by one party to another as a threshold matter. Id. at *10-11.

---

(comparing Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 142 (E.D. Pa. 2007), with Brandow Chrysler Jeep Co. v. DataScan Techs., 511 F. Supp. 2d 529, 537 (E.D. Pa. 2007)). Courts that have not followed the particularity requirement of Rule 9(b) have nonetheless held that a plaintiff must plead negligent misrepresentation with a degree of specificity. Scott v. Bimbo Bakeries, USA, Inc., 2012 U.S. Dist. LEXIS 26106, *5 (E.D. Pa. Feb. 29, 2012) (citations and internal quotation marks omitted). Other courts have held that a claim for negligent misrepresentation claim must only meet the pleading standards of 12(b)(6). McLaughlin v. Bayer Corp., 172 F. Supp. 3d 804, 829 (E.D. Pa. 2016) (citing HCB Contractors v. Rouse & Assocs., 1992 U.S. Dist. LEXIS 9916, *6 (E.D. Pa. July 13, 1992)). However, despite the disagreement in the Third Circuit as to whether Rule 9(b) applies to claims based on negligent misrepresentation, Defendant argues that Plaintiff's Second Amended Complaint does not meet the higher standard of particular under 9(b) than merely a degree of specificity.

The Pennsylvania Supreme Court has recognized the negligent supply of information as a derivative of the negligent misrepresentation. See Bilt-Rite Contrs., Inc. v. Architectural Studio, 866 A.2d 270, 287 (Pa. 2005).

The cause of action has been defined as follows:

> [O]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Id. In Bilt-Rite, the Supreme Court adopted the Restatement (Second) of Torts § 552 which sets the parameters for the duty owed when one supplies information to others, for one's own pecuniary gain, where one intends or knows that the information will be used by others in the course of their own business activities." Id. at 285-86. The Court noted that this tort is narrowly tailored and only applies to business that provided services or information that they know will be "reasonably relied upon by third parties in their business endeavors" and "includes a foreseeability requirement, thereby reasonably restricting the class of potential plaintiffs." Id. at 286.

Plaintiff has not pleaded sufficient facts in its Second Amended Complaint to sustain claims against Moving Defendants for fraud, negligent misrepresentation, and negligent supply of information. The only paragraph where Plaintiff even remotely describes Moving Defendant's "role" in committing fraud, negligent misrepresentation, or negligent supply of information is in paragraph 165 to 167, which state:

> 165.   Those few claims that the **HSS Program Enterprise** reported to Aspen were included on the Inservco Loss Runs in the Application Materials, however, hundreds of claims were never reported to Aspen - - including many which the HSS Program Enterprise adjusted, settled, and/or litigated to verdict without Aspen's knowledge or consent.

> 166. The Inservco Loss Runs were clearly an attempt to legitimize the claims reporting through a known insurance industry vendor.
>
> 167. This resulted in - - and achieved the **HSS Program Enterprise**'s goal of - - Aspen being deceived into issuing and continuing to issue the HSS Program policies, and doing so at artificially deflated premium rates based on risk and loss history.

See Exhibit C, ¶¶ 165-167 (emphasis added). As described above, Moving Defendant is not part of the "HSS Enterprise." Based on Plaintiff's own admissions and allegations, Plaintiff's is stating that the loss runs were used as a tool by the "HSS Enterprise" and nowhere suggests that Moving Defendant independent acted with an intent to deceive or purposely misrepresent facts through the production of said loss runs.

In fact, all of Plaintiff's allegations against Moving Defendant indicate that it only acted only when directed by HSS or its representatives – never autonomously. Plaintiff notes that HSS prepared the necessary application and underwriting materials for Plaintiff to issue policies, not Moving Defendant. ¶¶ 71, 76, 99, 156. In particular, Plaintiff states that "[a]ll Application Materials were prepared by or at the direction of Snow, O'Donnell, and Connelly." See Exhibit C, ¶ 106. Further, Plaintiff states: "[a]ll Claims Reporting was done by or at the direction of Snow, O'Donnell, and Connelly." See Exhibit C, ¶ 107. Plaintiff even references an email from Charles O'Donnell of HSS to Staci Ulp of Inservco which states that HSS ""will provide all personnel etc. ... in order to service the client, we really only need Inservco to do the back room input of information that I will provide re: claims/suits, indemnification, expenses etc. ... Let me know you have received this infor [sic]. We can talk later today or tomorrow a.m. re: the same." See Exhibit C, ¶ 146. Even when Plaintiff describes the "HSS Program Enterprise," Plaintiff fails to even mention Moving Defendant as part of the alleged scheme:

> 306. The email submissions on behalf of Palmer' s, Rack' s, and Dirty Frank's are only a few examples of the widespread underwriting deception committed by

14

the HSS Program Enterprise at the direction of Snow, Connelly, and O'Donnell (the "Underwriting Misrepresentations," and collectively with the above, the "Application Materials").

307. Dozens, if not hundreds, of Underwriting Misrepresentations by the HSS Program Enterprise were designed to fit otherwise non-conforming applicants into the HSS Underwriting Guidelines.

See Exhibit C, ¶¶ 306, 307.

Quite plainly, Plaintiff is unable to prove, based on the facts plead in its complaint, that Moving Defendant made a misrepresentation of material fact and knew or ought to have known of its falsity, as Moving Defendant's actions in this case were only at the express direction of other Defendants involved in this suit. Moreover, Plaintiff will be unable to prove that Moving Defendant had the necessary intent to induce Plaintiff as it merely compiled data at the direction of HSS and did not transmit anything directly to Plaintiff.

Thus, Plaintiff's Second Amended Complaint fails to allege with any level of precision that Moving Defendant's action constituted fraud, negligent misrepresentation, or negligent supply of information. Plaintiff has not set forth the elements needed to state a claim that plausibly give rise to entitlement for relief. Because Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted, the claims asserting against Moving Defendant must be dismissed with prejudice.

## V. REQUESTED RELIEF

Based on the foregoing, Moving Defendants respectfully ask for an order dismissing the above-captioned action, with prejudice, for failing to state a claim.

Respectfully submitted:

MARGOLIS EDELSTEIN

By: _____
WILLIAM E. REMPHREY, JR., ESQUIRE
Identification No. 74349
wremphrey@margolisedelstein.com
CATHERINE M. CONTINO, ESQUIRE
Identification No. 320508
ccontino@margolisedelstein.com
The Curtis Center, Suite 400E
170 S. Independence Mall W.
Philadelphia, PA 19106-3337
(215) 922-1100

Date: January 23, 2020        *Attorneys for Defendant, Inservco Insurance Services, Inc.*