## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HOSPITALITY SUPPORTIVE SYSTEMS, LLC, et al.<br><br>Defendants. | **Civil Action**<br><br>**No. 2:16-cv-01133** |
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ASPEN SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANT MCGRIFF, SEIBELS & WILLIAMS, INC.

Nicole C. Wixted
Jessica E. Loesing
Afton J. Paris
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
T:  (215) 988-2700
F:  (215) 988-2757
Nicole.Wixted@faegredrinker.com
Jessica.Loesing@faegredrinker.com
Afton.Paris@faegredrinker.com

*Counsel for Defendant,*
*McGriff, Seibels & Williams, Inc.*

1

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  FACTS ...............................................................................................................1

    A.  The HSS Program .....................................................................................1

    B.  McGriff's Purported Involvement in the HSS Program...........................2

    C.  The Purported False Representations and Omissions as Alleged by Aspen ............................3

    D.  Aspen Learns of the Alleged Scheme Surrounding the HSS Program ....................3

    E.  Aspen's Knowledge of McGriff's Involvement in the HSS Program ......................4

    F.  Aspen's Claims in the Second Amended Complaint Against McGriff....................6

III. LEGAL ARGUMENT ..........................................................................................6

    A.  Legal Standard .........................................................................................6

    B.  Pennsylvania's Two-year Statute of Limitations Bars All Claims Asserted by Aspen Against McGriff in Its Second Amended Complaint..........................................7

        1.  The Statute of Limitations for the Claims Against McGriff Expired Years Before Aspen Filed the Second Amended Complaint. ..........................8

        2.  No Tolling Doctrine Applies to Save Aspen's Claims. ....................9

    C.  Aspen Fails to Identify Any Misrepresentation for Which McGriff Can Be Held Liable as a Matter of Law Requiring Dismissal of All Claims Against McGriff ...................12

        1.  Per Aspen's Own Allegations, McGriff Did Not Make Any Representations to Aspen, Leaving a Vital Element of Each Claim Unsatisfied....................12

        2.  McGriff Cannot Be Held Liable for False Representations Made by Its Purported Principal, Regardless of Its Status as an Alleged Agent................14

    D.  Aspen's Fraud, Negligence, and Negligent Misrepresentation Claims Are Also Barred by the Economic Loss Doctrine, and the Negligent Supply of Information Theory Does Not Change the Outcome. ..................................16

    E.  McGriff Does Not Owe an "Independent Duty of Care" to Aspen to Support Any Negligence Claim Because the Purchase and Sale of Insurance Is an Arms-Length Transaction.............19

    F.  Aspen's Fraud Claims Fail Because They Are Not Pled with the Requisite Particularity......21

IV.  CONCLUSION....................................................................................................22

i

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Copper Beach Townhome Cmtys., L.P.,*
    816 A.2d 301 (Pa. Super. Ct. 2003) ......................................................................18

*Aetna Inc. v. Insys Therapeutics, Inc.,*
    324 F. Supp. 3d 541 (E.D. Pa. 2018) ....................................................................21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................7

*Atcovitz v. Gulph Mills Tennis Club, Inc.,*
    812 A.2d 1218 (Pa. 2002)......................................................................................22

*Axiall Corp. v. Descote S.A.S.,*
No. 2:15-CV-250, 2018 WL 621287 (W.D. Pa. Jan. 30, 2018) ................................19

*Azur v. Chase Bank, USA, N.A.,*
    601 F.3d 212 (3d Cir. 2010) ..................................................................................21

*Basile v. H&R Block, Inc.,*
    761 A.2d 1115, 1120 (Pa. 2000) ...........................................................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................7

*Bilt-Rite Contractors, Inc. v. Architectural Studio,*
    866 A.2d 270 (Pa. 2005)................................................................................ 14, 20

*Bortz v. Noon,*
    729 A.2d 555 (Pa. 1999).........................................................................................14

*Bressi v. Gembic,*
    752 Fed. Appx. 113 (3d Cir. 2019) ...........................................................................9

*Christidis v. First Pa. Mortg. Trust,*
    717 F.2d 96 (3d Cir. 1983) .....................................................................................25

*Cito v. Bridgewater Twp. Police Dept.,*
    892 F.2d 23 (3d Cir. 1989) .......................................................................................7

*Compuwill Exp., Inc. v. ATX Telecomm. Serv's, Ltd.,*
    No. 96-2462, 2000 WL 694780 (E.D. Pa. May 31, 2000) ........................................9

*Conquest v. WMC Mortgage Corp.,*
    247 F. Supp. 3d 618 (E.D. Pa. 2017) ....................................................................24

*Dalicandro v. Legalgard, Inc.,*
    No. 99-3778, 2004 WL 250546 (E.D. Pa. January 21, 2004) ................................12

*Davis v. Hoffman,*
    972 F. Supp. 308 (E.D. Pa. 1997) ........................................................................16

*Debendictis v. Merrill Lynch & Co., Inc.,*
    492 F.3d 209 (3d Cir. 2007) ..................................................................................7

*DiPalma v. LaLiberte,*
    No. 95-8094, 1996 WL 480729 (E.D. Pa. Aug. 16, 1996)....................................24

*Dixon v. Nw. Mutual,*
    146 A.3d 780 (Pa. Super. Ct. 2016) .....................................................................23

*Duquesne Light Co. v. Westinghouse Elec. Corp.,*
    66 F.3d 604 (3d Cir. 1995) ...................................................................................19

*Factory Mkt., Inc. v. Schuller Int'l,*
    987 F. Supp. 387 (E.D. Pa. 1997) ........................................................................19

*Fine v. Checcio,*
    870 A.2d 850 (Pa. 2005)...................................................................... 8, 10, 11, 13

*First Nat'l Bank of Penn. v. Transamerica Life Ins. Co.,*
    No. 14-1007, 2017 WL 2880854 (W.D. Pa. July 6, 2017)....................................23

*Fleming Steel Co. v. Jacobs Eng'g Group, Inc.,*
    373 F. Supp. 3d 567 (W.D. Pa. 2019) ..................................................................18

*Frederico v. Home Depot,*
    507 F.3d 188 (3d Cir. 2007) ................................................................................25

*Gelman v. State Farm Mut. Auto. Ins. Co.,*
    583 F.3d 187 (3d Cir. 2009) ..................................................................................7

*Hanna v. U.S. Veterans' Admin. Hospital,*
    514 F.2d 1092 (3d Cir. 1975) ................................................................................7

*Hubert v. Greenworld,*
    743 A.2d 977 (Pa. Supper. 1999)...........................................................................8

*Jones v. Three Rivers Mgmt Corp.,*
    394 A.2d 546 (Pa. 1978).......................................................................................22

*Liberty Towers Philly, LP v. Am. Tower Corp.,*
    No. 18-cv-4357, 2019 WL 1227188 (E.D. Pa. 2019) ...........................................22

*Kennedy v. Borough of South Coatesville,*
    No. 98-cv-6558, 1999 WL 455702 (E.D. Pa. June 25, 1999) ...............................11

*Kost v. Kozakiewicz,*
    1 F.3d 176 (3d Cir. 1993) ......................................................................................1

*Lower Lake Dock Co. v. Messinger Bearing Corp.,*
    577 A.2d 631 (Pa. Super. Ct. 1990) .....................................................................19

*Papasan v. Allain*,
    487 U.S. 265 (1986) ........................................................................................................7

*Parilla v. IAP Worldwide Servs., VI, Inc.*,
    368 F.3d 269 (3d Cir. 2004) ..........................................................................................11

*Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*,
    700 F. Supp. 2d 720 (W.D. Pa. 2010) ...........................................................................19

*Pension Trust Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730
    F.3d 263 (3d Cir. 2013) ..................................................................................................12

*Reese v. Pook & Pook, LLC*,
    158 F. Supp. 3d 271 (E.D. Pa. 2016) .............................................................................24

*Saporito v. Combustion Eng'g, Inc.*,
    843 F.2d 666 (3d Cir. 1988) ..........................................................................................26

*Schwartz v. Hilton Hotels Corp.*,
    639 F. Supp. 2d 467 (D.N.J. 2009) ................................................................................17

*Seville Industrial Mach. Corp. v. Southmost Mach. Corp.*,
    742 F.2d 786 (3d Cir. 1984) .....................................................................................25, 26

*Slippery Rock Area Sch. Dist. v. Tremco, Inc.*,
    No. 15-1020, 2016 WL 3198122 (W.D. Pa. June 9, 2016) ............................................21

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
    533 F.3d 162 (3d Cir. 2008) .....................................................................................11, 18

*Speer v. Taira Lynn Marine, Ltd., Inc.*,
    116 F. Supp. 2d 826 (S.D. Tex. 2000) ...........................................................................17

*Stephens v. Clash*,
    796 F.3d 281 (3d Cir. 2015) ............................................................................................9

*Stroud v. Abington Memorial Hosp.*,
    No. 06-4840, 2009 WL 2061408 (E.D. Pa. May 13, 2008) ...........................................16

*Sun Co. v. Badger Design & Constructors, Inc.*,
    939 F. Supp. 365 (E.D. Pa. 1996) .................................................................................19

*Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*,
    No. 06-3959, 2006 WL 3097771 (E.D. Pa. Oct. 31, 2006) ...........................................18

*Teledyne Techs. Inc. v. Universal Stainless & Alloy Prods., Inc.*,
    2006 Pa. Dist. & Cnty. Dec. LEXIS 568 (Pa. Com. Pl. Nov. 8, 2006) ...........................20

*Travelers Indem. Co. v. Cephalon, Inc.*,
    620 Fed. App'x 82 (3d Cir. 2015) ...................................................................................25

*Weisblatt v. Minn. Mut. Life Ins. Co.*,
  4 F. Supp. 2d 371 (E.D. Pa. 1998) ......................................................................14

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002) ..............................................................................19

*Wisniski v. Brown & Brown Ins. Co. of PA*,
  906 A.2d 571 (Pa. Super. Ct. 2006) ..............................................................22, 23

## Statutes

42 Pa.C.S. § 5524(7) .............................................................................................7, 8

## Other Authorities

Restatement (Second) of Torts § 552.......................................................................20
Restatement (Third) of Agency § 7.01............................................................. 16, 17
Restatement (Third) of Agency § 7.03.....................................................................16

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................................................6
Fed. R. Civ. P. 8(a)(2).............................................................................................6
Fed. R. Civ. P. 9(b) ...............................................................................................21

## I.   INTRODUCTION

This action stems from an insurance program created by Defendant Hospitality Supportive Systems, LLC ("HSS") and insured by Plaintiff Aspen Specialty Insurance Company from 2011 through 2016 (the "HSS Program").   According to the allegations of the Second Amended Complaint, the newly added Defendant, McGriff, Seibels and Williams, Inc. ("McGriff"), played a small role in the overarching HSS Program by transmitting application materials created and compiled by HSS to Aspen.   Nevertheless, Aspen now seeks to hold McGriff liable for these purportedly flawed application materials — documents it concedes McGriff played no role in creating and merely forwarded to it.   Aspen seeks to hold McGriff liable based on its purported agency relationship with HSS, which it alleges is described in a Master Services Agreement ("MSA") entered into by HSS and each member-insured.   But the MSA upon which Aspen now bases its theories of liability has been in Aspen's possession since prior to the filing of the original complaint.   As a result, Aspen's claims come too late, and, even if each of the claims were not time-barred, Aspen has failed to state a claim upon which relief can be granted.   As set forth below, McGriff is entitled to a dismissal with prejudice.

## II.   FACTS[1]

### A.  The HSS Program

HSS, being in the business of insurance brokering, created the HSS Program in or before 2011.   Dkt. 146 (the Second Amended Complaint (hereinafter "SAC")) at ¶¶ 34, 59, 413.   The HSS Program is "an insurance purchasing group [that] solicit[s] business owners and operators within the hospitality and restaurant industry to enter into property and liability insurance-sharing

---

[1] Only for purposes of this motion, McGriff takes the factual allegations of the Second Amended Complaint as true. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ("A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint.  The question, then, is whether the facts alleged in the complaint, even if true, fail to support the claim.") (internal citation omitted).

programs." *Id.* at ¶ 34. Under the program, HSS would "secure[] insurance coverage through various property and liability insurance carriers as the [f]irst [n]amed [i]nsured on the policies," adding "[i]ndividual restaurant, tavern, and bar owners who elect to enter the HSS Program [] as additional named insureds to, and share the insurance limits of, the policies procured by HSS." *Id.* at ¶¶ 42, 44. As part of the HSS Program, HSS secured insurance policies from Aspen from 2011 through 2015. *Id.* at ¶ 59.

In order to qualify for the HSS Program, each individual restaurant, tavern, or bar owner was required to "meet certain minimum requirements as set forth in the underwriting guidelines of the HSS Programs." *Id.* at ¶ 46. "The specific underwriting process require[d] HSS to complete underwriting forms for each member-insured and submit them to the insurance carrier through mail, fax, or electronic mail." *Id.* at ¶ 43.

In addition to its procurement and underwriting responsibilities, "HSS [] specifically assumed and retained the role of claims processor, purportedly acting as the claims liaison between the participants and insurance carriers, such as Aspen." *Id.* at ¶ 52. To assist in that role, "HSS retained the services of [a] third-party claims administrator, and [] claims defense counsel." *Id.* at ¶ 54. The "HSS Program participants would report liability claims to HSS; HSS and [the third party administrator] would then manage those claims and engage counsel to defend the interests of the participants within the self-insured retention ("SIR") of the respective policies." *Id.* at ¶ 55.

**B.  McGriff's Purported Involvement in the HSS Program**

McGriff's involvement in the HSS Program was limited to "operat[ing] as a go-between for HSS and Aspen, with McGriff running most of the information from HSS to Aspen that HSS wanted Aspen to consider." *Id.* at ¶ 49. According to Aspen, HSS Program participants would "enter into a [MSA] with HSS, which sets forth the details of the particular Program, as well as the rights and obligations of the parties thereto." *Id.* at ¶ 38. This MSA supposedly "specifically

names McGriff as an agent of HSS"[2] and defines "the scope of McGriff's agency relationship with HSS [] to include underwriting activities, risk management, loss control, claims processing, resolution of claims handling issues, and coverage placement and/or replacement on behalf of HSS." *Id*. at ¶¶ 40.  The MSA also purportedly states that "HSS, along with McGriff [] and [HSS's] underwriters are extremely excited to work with [] restaurant operations as they share our culture, standards, and model of excellence in risk management including overall operations."  *Id.* at ¶ 39.

### C.  The Purported False Representations and Omissions as Alleged by Aspen

Aspen alleges that HSS, on behalf of the HSS Program Enterprise (i.e., the business entities that are associated with the HSS Program, which does not include McGriff), excluded claims and suits from its application materials to induce Aspen to issue the original policies in connection with the HSS Program and then continue to renew those policies at reduced rates.  *Id.* at ¶¶ 330, 335.  "All [a]pplication [m]aterials were prepared by or at the direction of [the principles of the HSS Enterprise]," and "[a]ll Claims Reporting was done by or at the direction of [the principles of the HSS Enterprise]."  *Id.* at ¶¶ 106-07, 330, 345, 346, 356.  In 2015, McGriff first learned of HSS's purported failure to report all claims and suits to Aspen but was "assured that HSS [would] have its reporting updated immediately."  *Id*. at ¶¶ 184-185.

Aspen's decisions to renew the HSS Program policies were based upon the application materials created by HSS and the ongoing representations regarding underwriting of HSS.  *Id.* at ¶¶ 65, 71, 73, 74, 76, 77, 79, 81, 84-87, 89, 90, 93, 97, 98, 102, 105-107, 111.

### D.  Aspen Learns of the Alleged Scheme Surrounding the HSS Program

Aspen uncovered the supposed scheme involving the HSS Program in September 2015. *Id.* at ¶ 195-198, 276.  When Aspen elected to not renew a portion of the HSS Program policies,

---

[2] The document is not attached to the Second Amended Complaint and the single sentence quoted therein does not invoke the term agent.

"HSS began notifying Aspen of a significantly-increased number of claims against various additional named insureds under the [HSS Program policies]." *Id.* Aspen claims that these disclosures resulted from the HSS Program procuring new coverage through another insurer and no longer needing the Aspen policies, so that its member insureds' true losses from Aspen could be disclosed. *Id.* at ¶ 196. Thereafter, Aspen began its investigation and fully uncovered the purported scheme, leading to its filing of the instant action against HSS on March 10, 2016. Dkt. 1. Aspen issued a subsequent non-renewal on March 25, 2016, and all coverage issued to the HSS Program by Aspen terminated by March 30, 2016. *Id.* at ¶¶ 276, 311. Aspen received all application materials on which it claims to have relied prior to the termination of coverage on March 30, 2016. *Id.*

### E. Aspen's Knowledge of McGriff's Involvement in the HSS Program

In the original complaint, filed on March 10, 2016, Aspen references the MSA, the same document that Aspen now alleges reveals the agency relationship between HSS and McGriff. Dkt. 1 at ¶¶ 11, 15, 19. The MSA "specifically names McGriff as an agent of HSS" and describes "the scope of McGriff's agency relationship with HSS [] includes underwriting activities, risk management, loss control, claims processing, resolution of claims handling issues, and coverage placement and/or replacement on behalf of HSS." SAC at ¶¶ 39-40.

In its 2016 answer to the original complaint, HSS denied various allegations by Aspen and specifically referenced McGriff by stating that "HSS supplied [the names of program participants] to McGriff [] for transmission [] ultimately, to Aspen." Dkt. 20 at ¶ 42; *see also* ¶¶ 51, Thirtieth Affirmative Defense. Thereafter, in February of 2017, Aspen filed an Amended Complaint that again made multiple additional references to the MSA. Dkt. 33 at ¶¶ 28, 31, 35, 44. HSS's Answer to the Amended Complaint again specifically referenced McGriff in its denials, specifying that

"HSS supplied [the names of program participants] to McGriff [] for transmission [] to Aspen." Dkt. 51 at ¶ 61; *see also* ¶¶ 71, Thirtieth Affirmative Defense.

During the pendency of this litigation, the parties also began to engage in discovery. In October of 2017, Aspen subpoenaed both deposition testimony and documents from McGriff. See October 4, 2017 Subpoena, attached hereto as Exhibit A ("Ex. A"); Dkt. 87; Dkt. 137-1. Nevertheless, Aspen waited years to seek leave to add McGriff as a party to the action, inexplicably arguing that Aspen had only recently learned of McGriff's "potential liability" to it. Dkt. 137-1 at 11. This position was taken by Aspen despite it having received the application materials from HSS through McGriff from 2011 through 2015, knowing of references to McGriff throughout the historical pleadings in this action (including Aspen's own complaints) and serving third-party subpoenas on McGriff in October of 2017. *Id.* Drawing from the MSA and McGriff's purported role defined therein, Aspen further told this Court that the discovery had revealed that McGriff played a "significant role in the underwriting process," yet the MSA was in Aspen's possession prior to filing the original complaint. *Id.;* Dkt. 1 at ¶¶ 11, 15, 19.

Notwithstanding these representations to the Court, by virtue of the MSA, Aspen was necessarily aware long before the filing of the original complaint that:

- "McGriff operated as a go-between for HSS and Aspen, with McGriff running most of the information from HSS to Aspen that HSS wanted Aspen to consider";

- it received "insurance applications, loss runs and other information provided by HSS through McGriff, including but not limited to representations concerning the nature and claims history of the risks to be covered by Aspen";

- "McGriff, as an agent of HSS, was involved in the underwriting and placement of all of the Aspen Policies";

- "McGriff, as an agent of HSS, was provided with all Application Materials before submission to Aspen"; and

- "McGriff, as an agent of HSS, was involved in the transmittal of Application Materials to Aspen."

SAC at ¶¶ 49, 63, 108-110.

### F. Aspen's Claims in the Second Amended Complaint Against McGriff

Despite the many years that had passed since Aspen's discovery of the purported HSS program scheme, Aspen filed the Second Amended Complaint on December 16, 2019, and named McGriff as a defendant for the first time. Dkt. 146. Therein, Aspen asserts five counts against McGriff: two counts of fraud and a single count each of negligence, negligent misrepresentation, and negligent supply of information, all grounded in actions uncovered by Aspen in 2015. *Id.*

The filing of the Second Amended Complaint comes almost five years after initiating the action against HSS. And, although the Second Amended Complaint spans 123 pages and nearly 600 paragraphs, there are only nine paragraphs that make purported factual allegations relating to McGriff. SAC at ¶¶ 39-40, 48-50, 63, 108-110. Based on these mere nine factual allegations, Aspen seeks to hold McGriff liable for purported false representations and omissions, which it concedes were made by other parties and (at most) provided to Aspen through McGriff. Dkt. 146; Dkt. 20 at ¶¶ 42, 51, Thirtieth Affirmative Defense.

## III.   LEGAL ARGUMENT

### A. Legal Standard

The Federal Rules of Civil Procedure require that complaints demonstrate through a "short and plain statement of the claim" that "the pleader is entitled to relief" and that courts dismiss complaints that "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2), 12(b)(6). Although for purposes of this motion, this Court must accept the well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiffs, legal conclusions are not entitled to any deference. *Debendictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 215 (3d

Cir. 2007); *Papasan v. Allain*, 487 U.S. 265, 286 (1986).  Thus, where a plaintiff has merely pleaded legal conclusions, without actual facts supporting a *plausible* claim for relief, the plaintiff's claims must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009).  Moreover, a plaintiff must do more than merely recite the elements of a claim in order to survive a motion to dismiss.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555.   And, when the facts contained in the statement of the claim show that the statute of limitations period has elapsed, dismissal is warranted.  *See Cito v. Bridgewater Twp. Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989) (citing *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)).

### B.  Pennsylvania's Two-year Statute of Limitations Bars All Claims Asserted by Aspen Against McGriff in Its Second Amended Complaint.

In the Second Amended Complaint, Aspen seeks for the first time to recover against the newly named defendant, McGriff, for negligence, negligent misrepresentation and two counts of fraud — all of which are subject to a two-year statute of limitations.[3]  Dkt. 146; *see also* 42 Pa.C.S. § 5524(7) ("The following actions and proceedings must be commenced within two years:  (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud[.]").  Because, as set forth below, each of the claims are time-barred, the Second Amended Complaint must be dismissed with prejudice as to McGriff.

---

[3] Aspen also has asserted a count titled "negligent supply of information." Dkt. 146.  Although no such stand-alone claim exists under Pennsylvania law, to the extent one did, the same statute of limitations arguments applicable to the negligence-based claims asserted herein would also apply to it.

  **1. The Statute of Limitations for the Claims Against McGriff Expired Years Before Aspen Filed the Second Amended Complaint.**

  The statute of limitations for negligence and fraud begins to run from the time of the alleged tortious conduct, regardless of the claimant's actual knowledge of the purported misconduct.  42 Pa.C.S. § 5524(7); *see also Hubert v. Greenworld*, 743 A.2d 977, 981 (Pa. Supper. 1999) ("[T]he statute of limitations begins to run as soon as a right to institute and maintain suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations."); *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) ("[A] cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion.  Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises.") (internal citation omitted)); *Compuwill Exp., Inc. v. ATX Telecomm. Serv's, Ltd.*, No. Civ. A. 96-2462, 2000 WL 694780, at *5-*6 (E.D. Pa. May 31, 2000) (same).  "Claims may be dismissed based on a limitations defense if, as here, the face of the complaint demonstrates that the plaintiff's claims are untimely."  *Bressi v. Gembic*, 752 Fed. Appx. 113, 114 (3d Cir. 2019) (quoting *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015)).

  To be sure, each of Aspen's claims against McGriff are based exclusively on purported false representations and omissions in application materials drafted by and at the direction of HSS and the HSS Program Enterprise, but provided to Aspen through McGriff and other third parties.  Aspen ties the purported representations and omissions directly to the inducement to issue and renew policies.  *See* SAC at ¶¶ 74, 77, 79, 81, 87, 90, 93, 102, 105.  Aspen then admits that "[t]he last effective policies in the HSS Programs ended on March 30, 2016" and that "Aspen did not issue any new or renewed policies to HSS after the HSS Programs expired" on that date.  SAC at

¶¶ 310, 311. Accordingly, the absolute *last* date[4] upon which McGriff's purported tortious conduct could have occurred was March 30, 2016, meaning the statute of limitations lapsed on March 30, 2018. Yet, Aspen did not name McGriff in this action until December 16, 2019, when filing the Second Amended Complaint.[5] Although McGriff is entitled to dismissal of each of Aspen's fraud and negligence-based claims for a host of other reasons, it is obvious from the face of the Second Amended Complaint that the statute of limitation lapsed long before Aspen named McGriff as a defendant in the action, thus entitling McGriff to dismissal with prejudice.

### 2.   No Tolling Doctrine Applies to Save Aspen's Claims.

No tolling doctrine can apply to spare Aspen dismissal of the claims asserted against McGriff because the allegations of the Second Amended Complaint demonstrate that (i) Aspen was aware of McGriff and its purported involvement more than two years before Aspen ever filed against McGriff and (ii) McGriff took no action to conceal information from Aspen. To be sure, the discovery rule is only implicated "in cases in which the injury or its cause was neither known nor reasonably knowable" with "the salient point giving rise to its application [being] the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Checcio*, 870 A.2d at 858. When a plaintiff asserts that the discovery rule should save his otherwise time-barred claim, the court "must address the ability of the damaged party, exercising

---

[4] In fact, the statute of limitations for each of the claims asserted against McGriff actually expired much earlier. Indeed, the alleged representations, omissions, actions and inactions of McGriff would have occurred between 2011 (when Aspen first received application materials from the HSS Program) and 2015, the time period during which the purported HSS Program was in effect and necessarily continued until Aspen's purported discovery of the scheme in mid-2015. SAC at ¶¶ 59, 64, 173. Aspen admittedly denied renewal of the policies beginning in September of 2015, with all coverage terminating by March 30, 2016. SAC at ¶¶ 276, 311. Thus, McGriff's alleged tortious conduct would necessarily have occurred prior to those dates, meaning that the statutes of limitations expired years before the claims were asserted against McGriff.

[5] Even if Aspen were considered to have brought its claims against McGriff on August 23, 2019, when it filed its motion for leave to amend the complaint, the same principle would apply; there is no timeline that Aspen can allege that makes its claims timely where it knew of McGriff and its involvement in the HSS Program throughout the pendency of the HSS Program as a result of its possession of the MSA.

reasonable diligence, to ascertain that he has been injured and by what cause." *Id.*  It is only where the discovery rule applies that "the statute is tolled, and does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct." *Id.* at 859.  And, as the Pennsylvania Supreme Court has noted "there are very few facts which diligence cannot discover" and where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." *Id.* at 858-59.

Here, the discovery rule cannot save Aspen's claims because the allegations of the Second Amended Complaint establish that Aspen knew of McGriff and its role in the purported HSS Program scheme years prior to the filing of the claims against McGriff.  By way of example, the elements of each of the fraud- and negligence-based claims asserted against McGriff inherently require that Aspen was aware of McGriff and its role in the HSS Program to satisfy the reliance element of each claim.  *See* Section III.C.1 (addressing elements of each claim), *infra*.  Moreover, Aspen alleges that McGriff provided information directly to Aspen in connection with the HSS Program, the initial and renewal applications, the underwriting and the loss runs.  SAC at ¶¶ 39, 48, 49, 63, 110.  In particular Aspen alleges that:

- the MSA in connection with the HSS Program names McGriff;[6]

---

[6] Lest Aspen suggest that it did not know of McGriff's purported involvement in the HSS Program by the March 10, 2016 filing of the original complaint, the MSA that Aspen admits names McGriff was referenced in the original complaint, leaving no doubt that Aspen knew or should have known of McGriff by that date.  *See* Dkt. 1 at ¶¶ 11, 15, 19.  Additionally, McGriff was identified by name in HSS's answer to the original complaint as an entity that assisted in transmitting materials to Aspen.  Dkt. 20 at ¶¶ 42, 51, Thirtieth Affirmative Defense.  The same is true of the Amended Complaint and HSS's answer to the same.  *See* Dkt. 33 at ¶¶ 28, 31, 35, 44 (HSS Amended Complaint describing contents of MSA); Dkt. 51 at ¶¶ 61, 71, Thirtieth Affirmative Defense.  McGriff's involvement was no secret.  When considering a motion to dismiss, this Court may consider documents that are subject to judicial notice. *Kennedy v. Borough of South Coatesville*, No. 98-cv-6558, 1999 WL 455702, at *1 (E.D. Pa. June 25, 1999) ("We may take judicial notice of matters of public record outside the pleadings. The Court did no more than this when it looked at [Plaintiff's filings] in the earlier case.") (internal citations omitted).  Because Aspen's prior pleading is a sworn document, filed with this Court, it is properly subject to judicial notice, and may be considered here.  Similarly, Aspen is bound by the facts expressly conceded in earlier versions of the complaint. *Sovereign Bank v. BJ's Wholesale*

- "HSS, through and with [McGriff], was to proffer to Aspen during the underwriting process" certain information;

-  "McGriff operated as the go-between for HSS and Aspen, with McGriff running most of the information from HSS to Aspen that HSS wanted Aspen to consider";

- "with respect to the issuance and renewal of each of the Aspen Policies, Apsen relied upon, inter alia insurance applications, loss runs and other information provided by HSS through McGriff";

- McGriff was involved in the underwriting and placement of all Aspen policies;

- McGriff was involved in the transmittal of the application materials to Aspen.

*Id*.

Thus, by its own allegations, Aspen was aware of McGriff and its role in the HSS Program long before Aspen even learned of the purported scheme.[7] It was Aspen's obligation to investigate and preserve any claim it had against McGriff within the statute of limitations; but instead, Aspen chose not to name McGriff in this action until four years after the suit was initiated while simultaneously asserting that it relied upon the information provided to it by McGriff as far back as 2011.[8] Additionally, Aspen's admitted discovery of the purported scheme in 2015 jettisons any

---

*Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) ("The allegation in the amended complaint is a binding judicial admission."); *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) ("Judicial admissions are formal concessions in the pleadings... that are binding upon the party making them.").

[7] Any argument by Aspen that the statute of limitations was tolled until sometime in 2018 when it reviewed documents produced in this lawsuit, is a red-herring. *See* Dkt. 137-1. Aspen's decision to subpoena McGriff in October 2017 eliminates any doubt that Aspen was aware of McGriff's role in the HSS Program more than two years before naming McGriff as a defendant in this action in December 2019 such that any purported tolling of the statute of limitations would have ended months before Aspen filed the Second Amended Complaint. *See* Dkt. 87 (referencing third-party subpoenas served on McGriff in October of 2017).

[8] Aspen had a duty to exercise reasonable diligence in investigating potential claims against McGriff by virtue of the mention of McGriff in the MSA. *See Pension Trust Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 272 (3d Cir. 2013) (holding that because a statute of limitations begins to run when plaintiffs should have discovered the basis for their claims in the exercise of reasonable diligence, plaintiffs have "a duty to exercise reasonable diligence to uncover the basis for their claims."); *Dalicandro v. Legalgard, Inc.*, No. 99-3778, 2004 WL 250546, at *6-*8 (E.D. Pa. January 21, 2004) (holding that fraud claims were barred by the statute of limitations where plaintiff failed to name a party in the original complaint despite being on inquiry notice of his possible involvement).

possibility that the discovery rule could benefit Aspen here or toll the statute of limitations as to the claims asserted against McGriff.[9]  SAC at ¶¶ 59, 195-196, 273.  It was not lack of knowledge of McGriff's role in the HSS Program that resulted in the late addition of McGriff to the lawsuit, it was simply a lack of reasonable diligence by Aspen in filing the action against it and, as a result, each claim against McGriff is time-barred.

### C. Aspen Fails to Identify Any Misrepresentation for Which McGriff Can Be Held Liable as a Matter of Law Requiring Dismissal of All Claims Against McGriff

In the Second Amended Complaint, Aspen sets forth four claims against McGriff — two counts of fraud and a single count each of negligence and negligent misrepresentation — each premised on the theory that McGriff provided false representations and/or omissions made by other parties to Aspen through deficient application materials.  But each of these claims requires that the defendant against whom the claim is brought *actually makes* the false representation or omission or otherwise be liable though a viable legal theory — none of which apply here.  As a result, because there is no false representation upon which the claim is premised, all other elements of each claim must also fail.

#### 1. Per Aspen's Own Allegations, McGriff Did Not Make Any Representations to Aspen, Leaving a Vital Element of Each Claim Unsatisfied

Aspen has failed to plead and cannot satisfy the *prima facie* elements of any of the claims it asserts against McGriff because it admits that the purported false representations on which each claim is premised were made by other parties.  Under Pennsylvania law, only the party that makes a false representation may be held directly liable under a theory of fraud or negligent

---

[9] Similarly, the doctrine of fraudulent concealment is inapplicable to save Aspen's claims.  The doctrine of fraudulent concealment provides that a defendant may invoke the statute of limitations so long as he did not, "through fraud or concealment, cause the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Checcio*, 870 A.2d at 860.  Because the complaint is devoid of any allegations that McGriff concealed its purported involvement in the HSS Program from Aspen and McGriff *did not conceal* its involvement in the HSS Program from Aspen, McGriff is entitled to dismissal with prejudice of all claims asserted against it by Aspen in the Second Amended Complaint.

misrepresentation.  *See Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 384 (E.D. Pa. 1998) ("[F]raud... shares with negligent misrepresentation a common required element:  there must be a misrepresentation, either an affirmative one or an omission in breach of a duty to speak."); *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 287 (Pa. 2005) (noting common law negligent misrepresentation requires "a misrepresentation of a material fact made under circumstances in which the misrepresenter ought to have known its falsity" and negligent supply of information seeks to hold liable "[o]ne who, in the course of his business... supplies false information"); *Bortz v. Noon*, 729 A.2d 555, 561-62 (Pa. 1999) (finding agent was not liable for fraud or negligent misrepresentation where agent was not the source of the misinformation, merely passed information along and there was no evidence that agent intended to mislead by providing the information).  Here, that party is not McGriff.

Aspen fails to identify a single misrepresentation of material fact anywhere in its complaint that is attributable to McGriff.  In fact, Aspen's own allegations state that McGriff was a "go-between," merely responsible for "running... the information from HSS to Aspen" while the actual "information [was] provided by HSS."  SAC at ¶¶ 49, 63.  Aspen further alleges that McGriff was "involved in the underwriting and placement of all of the Aspen Policies," simply because HSS "provided [the] Application Materials" to McGriff for purposes of "transmittal of the Application Materials to Aspen."  *Id.* at ¶¶ 108-110.  But none of these allegations identify any statement made by McGriff, much less a specific false representation of material fact.

At best, Aspen alleges that unidentified "[a]pplication [m]aterials... prepared by the HSS Program Enterprise, McGriff, and Inservco... omitted Claims Reporting information," while conceding that the actual "knowing material misrepresentations and/or misstatements" were made "by and on behalf of the HSS Program Enterprise" — which *does not* include McGriff.  SAC at

¶¶ 379, 381, 31 (defining the HSS Program Enterprise).   Nevertheless, Aspen ends Count VII

(Fraud) with a conclusory allegation that it "relied upon the material misrepresentations and/or

misstatements made by HSS and McGriff as its agent."  *Id.* at ¶ 382.  Similarly, Count VIII (Fraud)

is premised upon purported "representations by the HSS Program Enterprise" that were allegedly

communicated to Aspen "through HSS and McGriff as its agent."  *Id.* at ¶ 386; *see also* ¶¶ 388

(alleging "Underwriting Misrepresentations by the HSS Program Enterprise"), 385, 389.

Aspen seeks to hold McGriff liable for purported fraudulent representations, despite its

own allegations conceding that 1) the purported misrepresentations were not made by McGriff;

and 2) that McGriff's role was limited to acting as a "go-between" and that merely "provided the

Application Materials" to Aspen that contained "information provided by HSS."  SAC at ¶¶ 49,

109, 63, 561 ("The HSS Program Enterprise provided Application Materials to Aspen throughout

the underwriting of the HSS Programs."), 571 (same).  Where no false representation has occurred,

the other elements of the claim can also not be satisfied; indeed, McGriff cannot have intended to

deceive Aspen through a nonexistent representation, nor can a nonexistent false representation

have caused damage to Aspen.  As a result, Aspen also cannot establish any of the remaining

elements of its fraud, negligent misrepresentation, and negligence claims.  Because Aspen has

failed to allege a necessary element (i.e., that McGriff was a "misrepresenter" of any "material

fact"), each of Aspen's claims based in fraud and negligence cannot survive this motion to dismiss.

### 2.   McGriff Cannot Be Held Liable for False Representations Made by Its Purported Principal, Regardless of Its Status as an Alleged Agent

Even if Aspen properly pled facts establishing that McGriff was HSS's agent, which

McGriff disputes,[10] McGriff cannot be held liable for false representations (or any tortious

---

[10] McGriff does not concede that Aspen has properly pled an agency relationship in its Second Amended Complaint. Under Pennsylvania law, the basic elements of an agency relationship are "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal

conduct) purportedly committed by HSS or any other principal where McGriff did not commit the tortious acts itself. The liability of an agent does not extend to instances where the principal acted outside of its relationship with the agent. *See* Restatement (Third) of Agency §§ 7.03, 7.01. "The agent is not subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct; there is no principle of 'respondeat inferior.'" *Stroud v. Abington Memorial Hosp.*, No. 06-4840, 2009 WL 2061408, at \*16 (E.D. Pa. May 13, 2008) ("[T]o the extent that any of the [individuals] were acting as [an] agent with respect to the conduct at issue in this litigation, any misconduct or concealment by [], as principal, is not attributable to its agents for purposes of invoking the fraudulent concealment doctrine against them."). Thus, liability does not attach to a principal's agent for the principal's actions that are unrelated to the agent's conduct. *See* Restatement (Third) of Agency at § 7.01; *Davis v. Hoffman*, 972 F. Supp. 308, 314 (E.D. Pa. 1997) (holding that an agent could not be responsible for the intentional torts of the principal she worked for that were unrelated to her own actions); *Schwartz v. Hilton Hotels Corp.*, 639 F. Supp. 2d 467, 472-73 (D.N.J. 2009) (citing Restatement (Third) of Agency § 7.01 & Cmt.) ("An agent is liable in tort to a third party for his or her own tortious conduct — and his or her own tortious conduct only."); *Speer v. Taira Lynn Marine, Ltd., Inc.*, 116 F. Supp. 2d 826, 830 (S.D. Tex. 2000) ("[the principal]'s duty to [] to Plaintiff [] does not impose this duty downward upon its alleged agent.").

Aspen's allegations are clear that it was the HSS Enterprise and/or HSS that made the misrepresentations that form the basis of its claims, not McGriff. Aspen specifically pled that "McGriff operated as a go-between for HSS and Aspen, with McGriff running most of the

---

is to be in control of the undertaking." *Basile v. H&R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000). Here, Aspen merely alleges that a contract (which McGriff is not a party to) describes McGriff as HSS's agent, but such allegation fails to establish the required elements of an agency relationship. SAC at ¶¶ 39-40.

information from HSS to Aspen that HSS wanted Aspen to consider." SAC at ¶ 49. Aspen admits that the "information [was] provided by HSS *through* McGriff." *Id.* at ¶ 63 (emphasis added). Aspen further admits that McGriff "as an agent of HSS," was "involved in the underwriting and placement of all of the Aspen Policies," merely because it was "provided with all [a]pplication [m]aterials before submission to Aspen," and "involved in the transmittal of [a]pplication [m]aterials to Aspen." *Id.* at ¶ 108-110. Thus, McGriff's involvement, by Aspen's own allegations and admissions,[11] was, at most, as a conduit for HSS, and dismissal is warranted.

### D. Aspen's Fraud, Negligence, and Negligent Misrepresentation Claims Are Also Barred by the Economic Loss Doctrine, and the Negligent Supply of Information Theory Does Not Change the Outcome.

Under Pennsylvania law, the economic loss doctrine "provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." *Sovereign Bank*, 533 F.3d at 175 (quoting *Adams v. Copper Beach Townhome Cmtys.*, L.P., 816 A.2d 301, 305 (Pa. Super. Ct. 2003)). The doctrine also applies "to bar claims for negligence, fraud, and negligent misrepresentation in actions between commercial enterprises where only economic losses are asserted." *Fleming Steel Co. v. Jacobs Eng'g Group, Inc.*, 373 F. Supp. 3d 567, 598 (W.D. Pa. 2019) (citing *Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, No. 06-3959, 2006 WL 3097771, at *3 (E.D. Pa. Oct. 31, 2006) (citing *Lower Lake Dock Co. v.*

---

[11] Aspen tries to avoid this outcome by alleging that "McGriff also independently vetted the information being submitted by HSS," *see* SAC at ¶ 50, and by citing to a document (not attached to the Second Amended Complaint) that Aspen purports describes McGriff as an agent of HSS. *Id.* at ¶ 40. But even those allegations fall flat. According to Aspen's own pleadings, the document merely states that HSS and McGriff "are extremely excited to work with [] restaurant operations as they share our culture, standards, and model of excellence in risk management including overall operations" not that McGriff is the agent of HSS. *Id.* at ¶ 39. Moreover, even if it were true that a document exists wherein "the scope of McGriff's agency relationship with HSS is described to include underwriting activities, risk management, loss control, claims processing, resolution of claims handling issues, and coverage placement and/or replacement on behalf of HSS," as Aspen tries to imply, any misrepresentation as to the true facts with respect to those issues would clearly fall outside the scope of McGriff's alleged agency role. *Id.* at ¶ 40. The allegations demonstrate that McGriff was entirely unaware of any failure to properly report claims or suits to Aspen until 2015, the tail end of the time period in which the purported misrepresentations were made to Aspen and that McGriff was "assured that HSS [would] have its reporting updated immediately." *Id.* at ¶¶ 184-85.

*Messinger Bearing Corp.*, 577 A.2d 631, 634-34 (Pa. Super. Ct. 1990) (negligence claim barred); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (fraud claim barred); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995) (negligent misrepresentation claim barred); *Factory Mkt., Inc. v. Schuller Int'l*, 987 F. Supp. 387, 397 (E.D. Pa. 1997) (negligence claim barred); *Sun Co. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 374 (E.D. Pa. 1996) (negligence claim barred)); *see also Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, 700 F. Supp. 2d 720, 733 (W.D. Pa. 2010) (negligent misrepresentation claims barred); *Axiall Corp. v. Descote S.A.S.*, No. 2:15-CV-250, 2018 WL 621287, at *18 (W.D. Pa. Jan. 30, 2018) (fraudulent and negligent misrepresentation claims barred)).

Here, the economic loss doctrine applies to bar Aspen's fraud, negligence, and negligent misrepresentation claims because Aspen seeks to recover only monetary damages in connection with each of the claims and fails to allege any physical or property damage as a result of the purported tortious conduct. SAC at ¶¶ 383 and 391;[12] 395 and 569.[13] Moreover, Aspen's attempts to improperly assert the Section 552 exception to the economic loss doctrine as a separate claim in its complaint — titled negligent supply of information — is equally unavailing.

Section 552 does not "supplant[] the common law tort of negligent misrepresentation, but rather, [] clarif[ies] the contours of the tort as it applies to those in the business of providing information others." *Bilt-Rite*, 866 A.2d at 287. Pennsylvania's adoption of Section 552 imposes liability for negligent misrepresentation where the claim would otherwise be barred by the economic loss doctrine against an individual "who in the course of his business, profession, or

---

[12] Each alleging that "Aspen has been and will continue to be caused to suffer damages, in that Aspen has incurred and will continue to incur substantial costs under the Aspen Policies for the defense and indemnification of various participants/additional named insureds in connection with Underlying Claims."

[13] Each alleging that "[a]s a direct, proximate and foreseeable result of the breach of the aforesaid duty, Aspen has been, and continues to be, damaged."

employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions." *Id.* (quoting Restatement (2d) Torts, § 552 (1965)). Thus, very few professionals are subject to the section 552 exception, as it only applies to "pure information providers" that provide information as an "end product," and not those whose work is buying or selling goods or services and where providing information is merely incidental to that sale. *Teledyne Techs. Inc. v. Universal Stainless & Alloy Prods., Inc.*, 2006 Pa. Dist. & Cnty. Dec. LEXIS 568, at **21-23 (Pa. Com. Pl. Nov. 8, 2006). There can be no Section 552 exception to the economic loss rule here because McGriff is not a professional supplier of information.[14] *Azur v. Chase Bank, USA, N.A.*, 601 F.3d 212, 223 (3d Cir. 2010) (holding no Section 552 claim existed because the alleged "losses [did not] result from the reliance on advice of professionals); *see also Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 556–57 (E.D. Pa. 2018) (determining only a narrow exception to the economic loss doctrine was created that did not apply to all tort claims arising independently of contractual duties and dismissing negligence and negligent misrepresentation claims); *Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, No. 15-1020, 2016 WL 3198122, at *13 (W.D. Pa. June 9, 2016) ("Plaintiff's negligence claims are barred by the economic loss doctrine, which may apply whether or not a contract exists between the parties.").

Because Aspen's claims are barred by the economic loss doctrine, Aspen's fraud, negligent misrepresentation, and negligence claims must be dismissed with prejudice along with the negligent supply of information theory that is not recognized as an independent claim under

---

[14] Depending on the factual circumstances of the relationship, an insurance agent could be held liable to its client-insured for providing incorrect advice in connection with the purchase of insurance to meet specific needs; however, the law does not support a *carrier*, such as Aspen, holding a *broker* liable for merely passing along application materials to it. Indeed, a broker provides *no information to a carrier at all* outside of the information contained in the form application completed by all potential insureds; rather, the broker acts in a sales role with respect to a carrier and connects the carrier with a potential insured, providing the carrier the opportunity to evaluate the insured's application and to decide whether to underwrite the risk and, if so, at what premium amount.

Pennsylvania law.

### E. McGriff Does Not Owe an "Independent Duty of Care" to Aspen to Support Any Negligence Claim Because the Purchase and Sale of Insurance Is an Arms-Length Transaction

In order to state a claim for negligence, a claimant must allege facts that prove the breach of a legally recognized duty or obligation of the defendant that is causally related to actual damages suffered by the plaintiff. *Liberty Towers Philly, LP v. Am. Tower Corp.*, No. 18-cv-4357, 2019 WL 1227188, at *3 (E.D. Pa. 2019); *Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571, 579 (Pa. Super. Ct. 2006) ("[t]he burden of proving the existence of a confidential relationship is on the party making that claim."). But Pennsylvania law imposes no general duty of care to warn or protect another party against risks inherent in an activity, see *Jones v. Three Rivers Mgmt Corp.*, 394 A.2d 546, 551 (Pa. 1978), and absent some special relationship between the parties, no such obligation exists. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1222 (Pa. 2002) (setting forth factors for determining existence of duty between parties and requiring special relationship to impose duty for purposes of negligence).

"The general test for determining the existence of a confidential relationship is whether it is clear that the parties did not deal on equal terms. A confidential relationship can be established by showing over-mastering influence, [] weakness, dependence, or trust, justifiably reposed." *Dixon v. Nw. Mutual*, 146 A.3d 780, 787 (Pa. Super. Ct. 2016) (internal citations omitted). "[W]here one party does not succumb to any overwhelming influence of the other party, does not cede decision-making control to the other party, and proceeds to act on his or her own, then the parties do not have a confidential relationship under Pennsylvania law." *First Nat'l Bank of Penn. v. Transamerica Life Ins. Co.*, No. 14-1007, 2017 WL 2880854, at *17 (W.D. Pa. July 6, 2017) (granting summary judgment where the plaintiff failed to plead facts illustrating a confidential relationship with its insurance broker).

19

In most "insurance-based interactions, the relationship is one-sided and cannot be regarded as confidential." *Dixon*, 146 A.3d at 787. This is particularly true of insurance transactions involving a broker, a role defined by Pennsylvania law as "a middleman between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and upon securing an order, placing it with a company selected by the insured with a company selected by himself or herself; whereas an 'insurance agent' is one who represents an insurer under an employment by it." *Wisniski*, 906 A.2d at 578. As a result, "for ordinary negligence purposes, the relationship between an insurance broker and the client [insured] is an arm's-length business relationship." *Id.* at 579; *see also Conquest v. WMC Mortgage Corp.*, 247 F. Supp. 3d 618, 635 (E.D. Pa. 2017) (holding that absent fact showing a confidential relationship, any duty a broker does owe is "solely to the customer/insured, who retains their services to secure insurance on their behalf"); *Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 298 (E.D. Pa. 2016).

In this instance, Aspen has not alleged nor can it establish the existence of a confidential relationship such that McGriff as a broker would owe an independent duty of care to an insurance company, Aspen. Aspen's conclusory allegation that an "independent duty of care"[15] exists between itself and McGriff that was breached by way of the misrepresentations and omissions of McGriff "failing to ensure that proposed participants/additional named insureds qualified pursuant to the HSS Underwriting Guidelines," is not enough. SAC at ¶ 393. Aspen has not pled a relationship with McGriff that would give rise to such a duty, nor do any of the facts alleged in the Second Amended Complaint support a finding that a confidential relationship existed between the

---

[15] Paragraph 393, the only paragraph addressing the purported "independent duty of care" is grammatically flawed, making it unclear what, exactly, Aspen intends to allege. SAC at ¶ 393. To the extent that Aspen attempts to allege McGriff breached a purported "independent duty of care" to perform underwriting on Aspen's behalf, no such duty exists in the law.

parties.[16]  Thus, there is simply no support in Pennsylvania law for an independent duty owed by an insurance broker to an insurance carrier, and as a result, McGriff is entitled to dismissal with prejudice of Count IX of Aspen's Second Amended Complaint.

### F.  Aspen's Fraud Claims Fail Because They Are Not Pled with the Requisite Particularity

Under the federal pleading standard, "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This requirement functions to ensure that defendants have notice of "the precise misconduct with which they are charged and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Travelers Indem. Co. v. Cephalon, Inc.*, 620 Fed. App'x 82, 85 (3d Cir. 2015) (quoting *Seville Industrial Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).  Complaints of fraud must inject "precision and some measure of substantiation in to their allegations."  *Seville*, 742 F.2d at 791.  In addition to each element of the fraud claim,[17] the claimant must also "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  Allegations that merely make representations as to the general content of the allegedly fraudulent representations are insufficient to survive a motion to dismiss without further detail setting forth the content of each of the representations.  *Seville*, 742 F.2d at 791; *Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666, 675 (3d Cir. 1988) vacated on other grounds, 489 U.S.

---

[16] In fact, Aspen alleges that McGriff was instead the agent of HSS.  SAC at ¶¶ 39-40.  Any duty that McGriff owed to HSS as its alleged principal would not extend to a third party such as Aspen.  *See DiPalma v. LaLiberte*, No. 95-8094, 1996 WL 480729, *2 (E.D. Pa. Aug. 16, 1996).  Furthermore, the Second Amended Complaint acknowledges that McGriff is a broker, and alleges that McGriff acted as "a go-between for HSS and Aspen," by "running most of the information from HSS to Aspen that HSS wanted Aspen to consider."  SAC at ¶ 49.  This arrangement directly reflects Pennsylvania's understanding of a broker's role in arms-length insurance transactions.

[17] To state a claim for fraud, a plaintiff must plead "(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983).

1049 (1989).

As set forth above, Aspen fails to identify any statement *by McGriff* in its Second Amended Complaint and, as a result, its fraud claims (in addition to its negligence-based misrepresentation claims) must fail. But even if that were not the case, Aspen has, at a minimum, failed to identify with particularity any specific false representation by McGriff. Aspen concedes throughout its Second Amended Complaint that the purportedly false representations and omissions for which it seeks to hold McGriff liable were actually made by other parties. Aspen has failed to put McGriff on notice of its precise misconduct, or specific fraudulent representation, for which it seeks to hold McGriff liable. As a result, in addition to the reasons set forth above, Aspen's fraud claim must be dismissed because Aspen has failed to plead those claims with particularity as required by Rule 9(b). McGriff is therefore entitled to dismissal of Counts VII and VIII of the Second Amended Complaint without leave to replead.

## IV. CONCLUSION

For the myriad reasons above, McGriff respectfully requests that this Court dismiss with prejudice all claims asserted against it in Aspen's Second Amended Complaint.

Respectfully Submitted,

Dated:  February 24, 2020            FAEGRE DRINKER BIDDLE & REATH LLP

                                    /s/ Nicole C. Wixted
                                    Nicole C. Wixted
                                    Jessica E. Loesing
                                    Afton J. Paris