IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASPEN SPECIALTY INSURANCE COMPANY,**<br>    **Plaintiff,**<br><br>    v.<br><br>**HOSPITALITY SUPPORTIVE SYSTEMS, LLC,**<br>**EDWARD E. SNOW,**<br>**THE CARMAN CORPORATION,**<br>**SELECTIVE RISK MANAGEMENT, LLC, SELECTIVE LAW GROUP, LLC,**<br>**JOHN W. CONNELLY, JR., CHARLES M. O'DONNELL, ESQ., McGRIFF SIEBELS & WILLIAMS, INC.,**<br>**INSERVCO INSURANCE SERVICES, INC., TRIGEN INSURANCE SOLUTIONS, INC.,**<br>**TRIGEN HOSPITALITY GROUP, INC.,**<br>**PATRIOT UNDERWRITERS, INC.,**<br>**PATRIOT NATIONAL, INC.,**<br>**ABC CORPORATIONS 1-25,**<br>**CHICKIE'S AND PETE'S, INC.,**<br>**4010, INC.,**<br>**PACKER CAFÉ, INC., trading as "CHICKIE'S & PETE'S,"**<br>**4010, LLC**<br>**POQUESSING MANAGEMENT, LLC**<br>**POQUESSING PROFESSIONAL BUILDING, LLC,**<br>**CPC INTERNATIONAL, LLC, trading as " PHILADELPHIA'S FAMOUS C&P,"**<br>**WRIGHT FOOD SERVICES, LLC,**<br>**CPC BUCKS, LLC,**<br>**AUDUBON CPC, LLC,**<br>**WARRINGTON CPC, LLC**<br>**DREXEL HILL CPC, LLC,**<br>**VENUE FOOD SERVICES, LLC**<br>**CRABCO PA GP LLC,**<br>**130 CRABCO REALTY NJ, LLC,**<br>**130 CRABCO NJ, LLC, trading as " CHICKIE'S AND PETE'S,"**<br>**EHT CRABCO NJ, LLC, trading as "CHICKIE'S AND PETE'S,"**<br>**WW-CPC, LLC,** | **CIVIL ACTION**<br><br><br><br><br><br>**NO.  16-1133** |

| | |
|---|---|
| OC-CPC,LLC,<br>AC-CPC,LLC<br>CRABCO ENTERPRISES, LLC<br>CPC PROPERTIES, INC.,<br>CRABCO ENTERPRISES PA LP,<br>PALMER SOCIAL CLUB, INC., and<br>RAVEL HOTEL, LLC, trading as<br>"PENTHOUSE 808"<br>     Defendants. | |
| HOSPITALITY SUPPORTIVE<br>SYSTEMS, LLC,<br>     Plaintiff,<br><br>v.<br><br>ASPEN SPECIALTY INSURANCE<br>COMPANY,<br>     Defendant. | |
| BALIS FAMILY RESTAURANT CORP.,<br>and<br>ADELPHIA DEPTFORD, INC.,<br>collectively trading as "ADELPHIA<br>RESTAURANT,"<br>     Plaintiffs,<br><br>v.<br><br>HOSPITALITY SUPPORTIVE<br>SYSTEMS, LLC,<br>EDWARD SNOW,<br>JOHN W. CONNELLY, JR.,<br>SELECTIVE RISK MANAGEMENT,<br>LLC, SELECTIVE LAW GROUP, LLC,<br>CHARLES M. O'DONNELL,<br>ANTHONY DiiENNO,<br>ASPEN SPECIALTY INSURANCE<br>COMPANY, and<br>AMTRUST INTERNATIONAL<br>UNDERWRITERS, LTD.,<br>     Defendants. | |

| | |
|---|---|
| **HOSPITALITY SUPPORTIVE SYSTEMS, LLC, SELECTIVE RISK MANAGEMENT LLC, EDWARD SNOW, CHARLES M. O'DONNELL, JOHN CONNELLY and ANTHONY DiIENNO.** Plaintiffs, | **CIVIL ACTION** <br><br> NO. 18-3777 |
| v. | |
| **AIG SPECIALTY INSURANCE COMPANY, HUB INTERNATIONAL MIDWEST LIMITED and MARSH & McLENNAN COMPANIES, INC.,** Defendants. | |

**DuBOIS, J.**                                                                                                                        **August 3, 2021**

# MEMORANDUM

## I.     INTRODUCTION

Presently before the Court are four Motions for Partial Summary Judgment filed by Chickie's and Pete's,[1] Ravel Hotel,[2] Palmer Social Club,[3] and Adelphia,[4] Additional Named Insureds in several insurance policies at issue in this insurance dispute. The Motions seek summary judgment on the question of whether Pennsylvania law requires the insurance companies to provide notice of cancellation to parties listed as Additional Named Insureds in the insurance policies. Aspen[5] and AmTrust,[6] the insurers involved in the case, oppose the Motions.

---

[1] The Court uses the term "Chickie's and Pete's" to refer to the following parties: Chickie's and Pete's, Inc.; 4010, Inc.; Packer Café, Inc., trading as "Chickie's and Pete's"; 4010, LLC; Poquessing Management, LLC; Poquessing Professional Building, LLC; CPC International, LLC, trading as "Philadelphia's Famous C&P"; Wright Food Services, LLC; CPC Bucks, LLC; Audubon CPC, LLC; Warrington CPC, LLC; Drexel Hill CPC, LLC; Venue Food Services, LLC; CRABCO PA GP, LLC; 130 CRABCO Realty NJ, LLC; 130 CRABCO NJ, LLC, trading as "Chickie's and Pete's"; EHT CRABCO NJ, LLC, trading as "Chickie's and Pete's"; WW-CPC, LLC; OC-CPC, LLC; AC-CPC, LLC; CRABCO Enterprises, LLC; CPC Properties, Inc.; and CRABCO Enterprises PA, LP.
[2] The Court uses the term "Ravel Hotel" to refer to Ravel Hotel, LLC, trading as "Penthouse 808."
[3] The Court uses the term "Palmer Social Club" to refer Palmer Social Club, Inc.
[4] The Court uses the term "Adelphia" to refer to Balis Family Restaurant Corporation and Adelphia Deptford, jointly trading as "Adelphia Restaurant."
[5] The Court uses the term "Aspen" to refer to Aspen Specialty Insurance Company.
[6] The Court uses the term "AmTrust" to refer to AmTrust International Underwriters, LTD.

For the reasons stated below, the Motions are denied without prejudice on the present state of the record.

## II.     BACKGROUND

These Motions for Partial Summary Judgment arise out of an insurance dispute that spans several actions consolidated under Civil Action No. 16-1133.  The facts of the case are complex and are recited here only as necessary to address the pending Motions for Partial Summary Judgment.  The facts are presented in the light most favorable to Aspen and AmTrust as the non-moving parties, and disputed facts are noted as such.

Aspen Specialty Insurance Company issued primary and excess commercial liability insurance policies to Hospitality Supportive Services ("HSS").  HSS is an insurance purchasing group that procured insurance policies on behalf of restaurants and bars.  Participants in HSS's programs signed "Management Services Agreements" ("MSAs") with HSS.  Ravel Statement of Material Facts ("SMF") ¶ 2.  Aspen asserts that HSS was appointed the participants' agent under MSAs.  Aspen Resp., 11.  The insurance policies issued by Aspen named HSS as the "First Named Insured" and the bars and restaurants as "Additional Named Insured."  Aspen Resp., 10.

Aspen alleges that HSS organized a

> far-reaching and complex scheme to (1) materially misrepresent the pool risk and induce [Aspen] to underwrite the pool risk at substantially lower premiums than Aspen would have had Aspen been aware of the true nature of the risk presented by the HSS programs; and (2) defraud their member insureds by selling and misrepresenting coverage that did not exist.

Aspen's Amend. Resp., 1.  After discovering this alleged scheme, Aspen issued Notices of Cancellation on February 23, 2016 and February 29, 2016 by sending notice to HSS, the First Named Insured on the policies.  Aspen SMF ¶¶ 25-26.  Aspen filed suit in this case on March 10, 2016.

On March 16, 2016, HSS filed a Complaint against Aspen, seeking, *inter alia*, a declaratory judgment that Aspen's cancellation of the policies was improper.

Chickie's and Pete's, Ravel Hotel, Palmer Social Club, and Adelphia (the "Intervenors") were participants in the HSS program and are listed as Additional Named Insureds under policies issued by Aspen. Aspen Resp., 10. Chickie's and Pete's, Ravel Hotel, and Palmer Social Club intervened in this action on April 4, 2018 (Chickie's and Pete's), August 10, 2018 (Palmer Hotel), and November 7, 2018 (Ravel Hotel), respectively.

Adelphia filed a Complaint in a separate action that was ultimately consolidated with Civil Action No. 16-1133.[7] In that Complaint, Adelphia named Aspen and AmTrust as defendants, stating, "On or about March 29, 2016, Adelphia renewed its participation in the HSS Master Insurance Program, but this time was advised by HSS that the primary carrier Aspen had been replaced by AmTrust."[8] Adelphia SMF ¶ 10. In its Motion, Adelphia argues neither Aspen nor AmTrust provided the required notice of cancellation.

On November 30, 2020, at the joint request of the parties, the Court (1) appointed United States Magistrate Judge Thomas J. Rueter (Ret.) Special Master to serve as settlement mediator and discovery master, (2) stayed all proceedings in the consolidated cases, and (3) placed the cases in the civil suspense file.

On February 22, 2021, Chickie's and Pete's asked the Special Master for leave to file a Motion for Partial Summary Judgment on the single issue of whether Aspen's notice of cancellation was valid under Pennsylvania law. By Order dated March 1, 2021, Special Master

---

[7] Although Adelphia did not intervene in Civil Action No. 16-1133, but rather filed suit in a separate action that was consolidated with it, the Court refers to all four moving parties as the "Intervenors" for simplicity and clarity.
[8] During the events giving rise to this Action, TriGen Insurance Solutions, Inc. purchased some of HSS' assets. The TriGen entities—TriGen Insurance Solutions, Inc., TriGen Hospitality Group, Inc., Patriot Underwriters, Inc., and Patriot National, Inc. (collectively, "TriGen")—began procuring the insurance policies on behalf of the insureds. AmTrust alleges that neither HSS nor TriGen had authority to bind coverage for Adelphia, pursuant to their agreements with AmTrust. AmTrust Resp., 10. Accordingly, AmTrust argues that "[b]ecause Adelphia was never a Covered Member under the Tri[G]en policy . . . there was no coverage to cancel." AmTrust Resp., 12.

Rueter granted that Request. Ravel Hotel, Palmer Social Club, and Adelphia subsequently entered into a Stipulation with Aspen and AmTrust, stipulating that Ravel Hotel, Palmer Social Club, and Adelphia would be permitted to file motions for partial summary judgment on the same issue. The Court approved the Stipulation on April 20, 2021. Stipulation, Civil Action No. 16-1133 (E.D. Pa. Apr. 20, 2021) (Document No. 266).

Chickie's and Pete's filed its Motion for Partial Summary Judgment against Aspen (the "Chickie's and Pete's Motion") on March 16, 2021 and filed an Amended Memorandum on March 31, 2021. Ravel Hotel filed its Motion against Aspen (the "Ravel Hotel Motion") on May 3, 2021. Palmer Social Club filed its Motion against Aspen (the "Palmer Social Club Motion") on May 3, 2021. Adelphia filed its Motion against Aspen and AmTrust (the "Adelphia Motion") on May 3, 2021. Aspen filed its Response to all four Motions on May 24, 2021 and filed an Amended Response on June 16, 2021. Chickie's and Pete's filed its Reply on July 7, 2021; Ravel Hotel filed its Reply on June 21, 2021; and Adelphia filed its Reply to Aspen's Response on June 21, 2021. AmTrust filed its Response to Adelphia on July 16, 2021. Adelphia filed its Reply to AmTrust's Response on July 23, 2021. AmTrust filed a "Reply to 'Further Answers' Asserted by [Adelphia] in its 'Response to Defendant AmTrust's Opposition to Motion of Partial Summary Judgment'" on July 28, 2021. The Motions are ripe for decision.

### III. LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.  However, the existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id* at 252.  In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment[ ] and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (internal citations omitted).  The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof.  *Celotex Corp.*, 477 U.S. at 322.

**IV.    DISCUSSION**

The Court granted Intervenor's request to file Motions for Partial Summary Judgment on one legal issue: whether Pennsylvania law required Aspen to notify the Intervenors, as Additional Named Insureds, of Aspen's cancellation of the insurance policies at issue.  The Court concludes, however, that answering this legal question requires the Court to address issues that are outside the scope of the Court's grant of leave to file the Motions for Partial Summary Judgment and present genuine disputes of material fact.  Accordingly, the Court denies the Motions for Partial Summary Judgment on the current state of the record without prejudice to the Intervenors' right to seek leave of Court to file additional motions for partial summary judgment when the record is complete.

**A. Choice of Law**

Although the Court granted Intervenors' requests to file Motions for Partial Summary Judgment on an issue of Pennsylvania law, Ravel Hotel and Adelphia present choice of law issues in their Motions.  Ravel Hotel states that "there may be a dispute over whether Pennsylvania or New York law" governs Aspen's alleged cancellation as to Ravel Hotel but

argues that Pennsylvania law should apply. Ravel Mot., 7. Adelphia argues that New Jersey law should govern whether Aspen and AmTrust's cancellations as to Adelphia were effective. Adelphia Mot., 5. In response to both Motions, Aspen argues that (1) Pennsylvania law applies to the cancellation of all policies, and (2) notice was proper under all three states' laws. Aspen Resp., 24-30. In response to Adelphia's Motion, AmTrust argues a choice of law analysis is not necessary because notice was proper under both Pennsylvania and New Jersey law. AmTrust Resp., 11-12.

In conducting a choice of law analysis, the Court is "required to apply the law of the forum state, including its choice of law provisions." *Woessner v. Air Liquide Inc.*, 242 F.3d 469, 472 (3d Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Pennsylvania has a two-step framework for addressing choice of law questions. First, the "Court determines whether a real conflict exists between the respective laws" of the states with an interest in the case and second, the Court determines "which state 'has the greater interest in the application of its law.'" *Woods Servs., Inc. v. Disability Advocates, Inc.*, No. CV 18-296, 2018 WL 2134016, at *4 (E.D. Pa. May 9, 2018) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230-31 (3d Cir. 2007)).

The parties have fully briefed the choice of law issues, but those issues are not properly before the Court on the present state of the record. Leave was granted to file motions for partial summary judgment on the limited issue of whether Pennsylvania law requires notification of cancellation to Additional Named Insureds. That presupposed that there was an agreement that Pennsylvania law governed that issue, which is not the case. Specifically, several parties have raised questions of whether New York or New Jersey law applies to the case, leaving open the possibility that Pennsylvania law does not apply to all of the parties.

Further, due to genuine disputes over material facts—whether HSS was acting as the Intervenors' agent; whether the Intervenors procured replacement coverage; and whether AmTrust was bound to provide coverage to Adelphia—the Court does not rule on the ultimate issue raised by the Motions for Partial Summary Judgment—whether Pennsylvania law requires notice of cancellation to Additional Named Insureds—because it might be mooted. *See* Section IV.B., *infra*. Addressing the choice of laws issue requires a decision on whether the New York and New Jersey statutes present a conflict with the Pennsylvania statute, and deciding whether such a conflict exists necessarily requires interpretation of the Pennsylvania statute. Because the Court does not rule on the meaning of the Pennsylvania statute due to the disputed issues of material fact, the Court cannot rule on the choice of law question.

The Court will rule on the choice of law issue if, after the record is complete, the parties seek the Court's authorization to file additional motions for partial summary judgment, the completed record enables the Court to address and answer all the questions presented in the motions, and answering the choice of law question is necessary to the resolution of the issue.

### B. Notice of Cancellation

The Court granted the Intervenors' request to file motions for partial summary judgment on one issue: whether Pennsylvania law requires an insurance company to provide notice of cancellation to Additional Named Insureds. The Intervenors argue that Aspen and AmTrust's purported policy cancellations were invalid because they did not provide notice to the Intervenors as Additional Named Insureds. Chickie's and Pete's Mot., 5-10; Palmer Social Club Mot., 3-5; Ravel Hotel Mot., 8-14; Adelphia Mot., 5-8. Aspen argues, *inter alia*, that (1) Pennsylvania law does not require notice to Additional Named Insureds, (2) even if Pennsylvania law required notice of cancellation to the Intervenors as Additional Named Insureds, Aspen fulfilled that requirement by providing notice of cancellation to HSS because,

9

under the MSAs, HSS was the Intervenors' agent; and (3) even if notice was required, Aspen's cancellation became effective when the Intervenors procured replacement coverage. Aspen Resp, 18-21. In response to Adelphia's Motion, AmTrust argues, *inter alia*, that Adelphia was not covered under an AmTrust insurance policy. AmTrust Resp., 10-11. The Court concludes that there are genuine disputes of material fact regarding these arguments, precluding summary judgment on the current state of the record.

In support of Aspen's argument that notice to HSS was sufficient because HSS was the Intervenors' agent, Aspen cites the Order dated June 9, 2016, in which United States District Judge Stewart Dalzell denied HSS's Motion to Dismiss and wrote, "The Additional Named Insureds in this case appointed HSS as their agent under the [MSAs]." Aspen Resp., 11 (citing Order, Civil Action No. 16-1133 (E.D. Pa. June 9, 2016) (Document No. 18)). However, the Intervenors were not parties to this Action when Judge Dalzell ruled on that Motion to Dismiss, and he was required to accept Aspen's allegations—including the allegation that HSS was the agent of the Intervenors—as true. In contrast, with respect motions for summary judgment, the party opposing summary judgment must present evidence that supports its position. *Celotex Corp.*, 477 U.S. at 322. No party was able to provide the Court with a signed MSA designating HSS as the agent of the Additional Named Insureds.[9] Accordingly, the Court concludes there is a genuine dispute of material fact as to whether HSS was an agent of the Intervenors for purposes of accepting notice of cancellation.

The resolution of this genuine dispute of material fact on the issue of agency may moot the question at issue in the Motions for Partial Summary Judgment—if (1) HSS was acting as the

---

[9] The parties provided the Court with various copies of MSAs between HSS and the Intervenors. Some of the MSAs included the following provision: "By executing this agreement, I, Client hereby, authorize . . . Hospitality Support Systems, LLC as my Broker/Agent of Record for carriers listed in this contract." However, none of the MSAs provided were executed by the parties. Additionally, the only signed MSA that was submitted—signed only by Ravel Hotel, not by HSS—has numerous pages missing.

Intervenors' agent, and (2) notice to the agent satisfies requirements of notice to the principal, then (3) Aspen would have provided notice of cancellation to the Intervenors by providing notice of cancellation to HSS, and the Court would not be required to address the issue of whether Pennsylvania law requires notice of cancellation to Additional Named Insureds.

There are also genuine disputes as to other material facts: (1) whether AmTrust was bound to provide insurance coverage to Adelphia; and (2) whether the parties procured replacement coverage following Aspen's cancellation. If AmTrust was not bound to provide insurance coverage to Adelphia and did not do so, AmTrust argues that no notice of cancellation was required because there was no policy to cancel. AmTrust Resp., 10-11. Additionally, if the parties procured replacement coverage following Aspen's alleged cancellation, even if the cancellation was invalid, Aspen argues it was no longer bound to provide coverage from the date the replacement coverage started. Aspen Resp., 17, 27 (citing 40 P.S. § 3403(b) ("[I]f the insured obtains replacement coverage, the noncomplying insurer's obligation to continue coverage ceases.")). Resolution of these genuine disputes of material fact may be dispositive of the Motions for Partial Summary Judgment.

Because there are genuine disputes of material fact, and resolution of those disputes may resolve the issues presented by the Motions for Partial Summary Judgment without a decision on what notice is required under Pennsylvania law, the Court defers ruling on the legal question at issue in this case.

### V. CONCLUSION

For the foregoing reasons, the Court concludes that genuine disputes of material fact preclude summary judgment on the current state of the record. The Motions are thus denied on the current state of the record, without prejudice to the Intervenors' right to seek leave of Court to file additional Motions for Summary Judgment when the record is complete.