## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, | **Civil Action** |
| Plaintiff, | **No. 2:16-cv-01133** |
| v. | |
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC, et al., | ***Filed Electronically*** |
| | ***Oral Argument Requested*** |
| Defendants. | |

## RULE 53 MOTION TO MODIFY
## THE JUNE 1, 2022 DISCOVERY ORDER

Plaintiff, Aspen Specialty Insurance Company ("Aspen"), respectfully submits the within Motion to Modify the Special Master's Discovery Order entered on June 1, 2022 (the "Subject Order") pursuant to Federal Rule of Civil Procedure 53. The instant Rule 53 objection is related to, and intertwined with, Aspen's currently pending Rule 53 Motion filed on December 10, 2021 (ECF 325) (the "December Rule 53").

Aspen objects to the Subject Order as respects the issue of bifurcation and Aspen's request to seek non-bifurcated discovery. The critical issue of whether this case is bifurcated or not, and the implications of that case management, is addressed at length in Aspen's pending December Rule 53. Aspen has only ever operated at the express and implicit directions of this Honorable Court in approaching and serving discovery. It has been Aspen's express understanding, repeatedly stated in writing and verbally over the past years, that this case is proceeding on a bifurcated track. The first indication that Aspen ever received from the Special Master that this case may not be proceeding on a non-bifurcated track were the Orders that are the subject of the December Rule 53, which prompted the filing of that motion.

The Subject Order specifically indicates that discovery is not bifurcated, and that the discovery period is open. However, the Subject Order does not allow Aspen to serve otherwise relevant and timely discovery. This gives rise to multiple, case critical questions. If this case is in an open, non-bifurcated discovery period, why is Aspen being restricted from serving relevant discovery? Furthermore, if discovery is open and non-bifurcated, how is it possible that Aspen's request to serve relevant discovery - - raised months before the recently set July 1, 2022 deadline - - is denied as untimely? This is procedurally concerning, and tremendously prejudicial. With paper discovery imminently closing on July 1, 2022 by the Subject Order, Motions to Dismiss Aspen's Second Amended Complaint by all defendants still pending from 2019, and Aspen's December Rule 53 still pending decision, Aspen is compelled to file this latest objection in order to preserve its rights.

This case spent years in a bifurcated discovery track, interspersed by repeated and years'-long full stays of discovery, up to and including the administrative closing of this case. Aspen operated at the explicit and implicit - - and repeated - - instructions of the Court to keep the sprawling discovery required by this matter targeted and phased. Additionally, formal discovery could not be served during these periods of stay and closing of the case. As addressed more fully in Aspen's December Rule 53 Motion, it took the Court years to address issues regarding just the bifurcated discovery in this matter, while simultaneously engaging in a years' long mediation process with multiple entries of full discovery stays.

For engaging in this years'-long mediation and discovery process, all while abiding by the Court's Orders and directives to phase discovery, Aspen is now having the rug pulled out from underneath it. The Subject Order penalizes Aspen for not previously engaging in the exact

6511225-2

broad scale and sweeping discovery that the Court explicitly, implicitly, and repeatedly instructed the parties not to serve or engage in.

The Subject Order goes on to recognize that discovery did, in fact, proceed on a phased and bifurcated track and permits phased discovery between and among the parties and Defendant McGriff, Siebels, and Williams ("McGriff") and Inservco Insurance Services ("Inservco") to commence. However, the Subject Order, issued on June 1, 2022, directed that this significant, complex, and potentially issue-dispositive discovery had to occur in just thirty (30) days. This necessarily required all parties to serve any related discovery within hours of the entry of the Order or else run afoul of the Rules of Civil Procedure.

On countless occasions during proceedings before the Special Master, and over the course of years, counsel for Aspen, McGriff, and Inservco addressed with the Special Master that most discovery between and among Aspen, McGriff, and Inservco, as well as other defendants, was being held in abeyance as part of the significant case management issues presented by this action. Aspen specifically did so in reliance on the repeated bifurcation Orders of the Court, and its understanding that discovery was bifurcated in this matter. Based entirely upon the Special Master's approval of this approach and assurance that the proper time would be given to address these complex phased matters in the event that mediation failed, the parties disengaged and focused exclusively on the previously served bifurcated discovery and mediation efforts.[1] The Subject Order's deadlines may require that Aspen, McGriff, and Inservco end up in motion practice. Aspen does not want to engage in further expensive and judicially inefficient motion

---

[1] All parties and the Special Master discussed and agreed that conducting voluminous, broad scale discovery would be an impediment to the mediation process. As discussed more fully in Aspen's pending Rule 53 Motion from December, over the course of years, the Special Master entered multiple formal and informal limited discovery orders, discovery stays, mandates of a "full-stop" of discovery tasks, and the Court also administratively closed this case.

6511225-2

practice with McGriff and Inservco, and Aspen believes that McGriff and Inservco would agree. Respectfully, giving the parties just thirty (30) days to conduct and complete this discovery is counterproductive and contrary to how this matter was litigated for years. The *bifurcated* discovery exchanged in this matter alone surpasses the one million (1,000,000) page mark.

Aspen seeks a *de novo* review of these discovery rulings pursuant to Rule 53.  In particular, through this motion, Aspen seeks to modify: (1) the denial of Aspen's ability serve non-bifurcated discovery in the event that this matter is no longer bifurcated, and (2) the thirty (30) day time frame under which all written discovery between and among Aspen, McGriff, and Inservco must be completed.

Accordingly, and as set forth below, Aspen prays for modification of the Subject Orders.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Aspen incorporates by reference in full the Factual Background and Procedural History of its December Rule 53, which relates to and is intertwined with many of the issues addressed herein. A brief summary of that Factual Background and Procedural History follows.

On March 16, 2016, Aspen filed its original complaint in this matter against HSS. See, ECF 1. On June 8, 2016, the Honorable Judge Dalzell entered an order staying all proceedings pending mediation before the Honorable Judge Hart, so-ordered pursuant to Local R. Civ. P. 71 and 28 U.S.C. 636(b)(3). See, ECF 16. Mediation proceedings were held on September 6, 2016. See, ECF 26. That stay remained in place for nearly seven months.

On October 19, 2016, this matter was reassigned to the Honorable Judge Dubois. See, ECF 28. On January 11, 2017, following a pretrial scheduling conference, the court vacated the stay which had been in place since June 8, 2016. The Court bifurcated this matter and only permitted limited discovery relating to Aspen's rescission claims and HSS' breach of contract

claims, with all other discovery under a formal stay. See, ECF 31.  On May 24, 2017, the Honorable Judge DuBois entered an order, upon consideration of a joint request by the parties, to engage in continued mediation. See, ECF 58. The Court reiterated that "[d]iscovery related to the Complaint of Aspen Specialty Insurance Company for rescission and Hospital Supportive Systems, LLC's claims for breach of contract are bifurcated from all other discovery. All other discovery is **STAYED**." Id.

On September 15, 2017, upon a joint request of all parties for an extension of the then-operative discovery deadlines, this Honorable Court entered an order that "discovery related to the Complaint of Aspen Specialty Insurance Company for rescission and Hospital Supportive Systems, LLC's claims for breach of contract are bifurcated from all other discovery. All other discovery is **STAYED**." See, ECF 67.

On January 25, 2018, the Honorable Judge DuBois entered a Third Amended Scheduling Order, stating "Discovery related to the Complaint of Aspen Specialty Insurance Company for rescission and Hospital Supportive Systems, LLC's claims for breach of contract are bifurcated from all other discovery. All other discovery is **STAYED**." See, ECF 75.

On August 10, 2018, the Honorable Judge DuBois entered the Fourth Amended Scheduling Order, stating, "Discovery related to the Complaint of Aspen Specialty Insurance Company for rescission and Hospital Supportive Systems, LLC's claims for breach of contract are bifurcated from all other discovery. All other discovery is **STAYED**." See, ECF 101.

On January 9, 2019, the Honorable Judge Dubois entered an order staying this matter again for settlement proceedings before Magistrate Rueter. See, ECF 123. That order required

that any discovery must be "agreed upon" and that "*all other discovery is **STAYED** until further order of the Court.*" Id. (emphasis added).

Discovery remained stayed for another year until December 16, 2019, when Judge DuBois entered an order referring all pending discovery motions and future disputes to Magistrate Rueter (which necessarily involved only bifurcated discovery) and indicating that discovery was to be complete by June 26, 2020. See, ECF 145. During this time Magistrate Rueter only partially addressed the pending discovery motions and issues regarding bifurcated discovery. See, ECF 117 (filed November 14, 2018), ECF 148 (filed January 3, 2020); ECF 152 (filed January 8, 2020). See also, Discovery Orders (ECF 169) (ordering further briefing on pending motions); (ECF 195) (partially ruling on certain issues raised in the pending motions); (ECF 200) (extending time for HSS Defendants to comply with discovery orders on bifurcated discovery productions). Limited discovery proceedings were conducted before Judge Rueter, with the focus of attention being on mediating the case.

On July 31, 2020, Magistrate Rueter entered an order stating:

> the deadlines set forth in this court's Order of July 16, 2020 (Doc. 224) are STAYED until further Order of the court.

> ECF 233.

Fourteen (14) mediation sessions were conducted before Magistrate Rueter until September of 2020, while all deadlines in the case were fully stayed pursuant to order. See, ECF 234, 235, 236, 239, 240, 241, 242, 243, 244, 245, 247, 258, 249, 250.

In September of 2020, Magistrate Rueter retired and began private employ with JAMS. On November 30, 2020, Magistrate Rueter was appointed as Mediator and Special Discovery

Master in this matter by the Honorable Judge DuBois. See, ECF 255. The full stay entered on

July 31, 2020 continued in force throughout this time.

On November 30, 2020, Judge DuBois reiterated the full stay in this matter as follows:

> AND NOW, this 30th day of November, 2020, upon consideration
> of the letters from the parties, through counsel (Document Nos.
> 251 and 252, dated October 29, 2020, and Document No. 253,
> dated October 30, 2020), setting forth their agreement to the
> referral of these cases to United States Magistrate Judge Thomas J.
> Rueter (Ret.), as settlement mediator and discovery master, the
> Order of appointment of Judge Rueter as settlement mediator and
> discovery master dated November 30, 2020, **settlement
> discussions having been ongoing in the captioned cases for an
> extensive period of time, and the Court anticipating that they
> will continue for an extensive period of time and, further, the
> Court noting that there are numerous pending motions which
> have not been addressed by reason of a stay of proceedings,** and
> the Court concluding that, based on the foregoing, it is appropriate
> to continue the stay of all proceedings in this Court until
> completion of the work of the Special Master and transfer the cases
> to the Civil Suspense File, IT IS ORDERED as follows: **1. All
> proceedings in these cases are STAYED until further order of
> the Court; 2. The Clerk of Court shall TRANSFER the cases to
> the Civil Suspense File; 3. The Clerk shall MARK the cases
> CLOSED FOR STATISTICAL PURPOSES**…

See, ECF 256 (emphasis added).

In this regard, Footnote 3 of the Subject Order warrants particular attention.

Throughout this mediation and discovery process, Aspen has made multiple and repeated

submissions, written and verbal, to the Court and to the Special Master, of its understanding that

discovery was bifurcated for case management purposes. The Subject Order states the case was

not bifurcated as of December 16, 2019 (ECF 145, *supra*.). This Order is, at best, extremely

ambiguous, based in no small part that it came at the behest of Aspen's own motion to re-open

and continue bifurcated discovery upon entry of its Second Amended Complaint. See, December

Rule 53 at Fact Section I-J. Aspen's multiple and repeated submissions to the Court and to the Special Master both before *and after* the December 16, 2019 Order were explicit in stating that Aspen was operating on the instructions of this Court that the case was, and remained, bifurcated. See, e.g., ECF 148-1 p. 29 (filed just weeks after the December 16, 2019 Order) ("The Court's scheduling orders have, *to date*, bifurcated Aspen's rescission claims and the HSS' breach of contract claims.") (emphasis added); Aspen's July 20, 2020 Mediation Statement to Magistrate Rueter specifically stating that discovery is bifurcated; ECF 275-21 p. 14 (Aspen's May 24, 2021 opposition to motions for partial summary judgment filed by the intervenors regarding bifurcated issues, permitted to be filed on request for, and special leave of, Judge DuBois) ("discovery in this case proceeded on a bifurcated track"); Aspen's August 31, 2021 letter to Magistrate Rueter specifically discussing that discovery beyond rescission and breach of contract was not proportionate, reasonable, or currently relevant and ECF 319 Aspen's associated Motion for Reconsideration in connection with the August 31, 2021 letter.[2] Aspen respectfully submits that despite multiple filings such these, and countless informal discussions, neither the Court nor the Special Master ever disputed, corrected, or clarified the issue of bifurcation for years.[3]

For the first time ever, on September 30, 2021, an order was entered regarding a scope of discovery far beyond bifurcations and all prior proceedings before the Special Master. Aspen filed a Motion for Reconsideration specifically addressing "breach of contract," that is, the

---

[2] Aspen can make the documents submitted to Magistrate Reuter in the context of the Mediation process available to the Court upon request, but given the sensitivity of those documents, represents that bifurcation was specifically discussed and addressed as summarized above.
[3] If discovery was not proceeding on a bifurcated, phased, and specially case managed track, this gives rise to the question of what role the Special Master plays in requiring that the parties first submit discovery requests/applications to him before formally serving them. No such procedure is required in Rule 53 or otherwise in the Federal Rules.

8

6511225-2

repeated and multiple bifurcation orders. <u>See</u>, ECF 319.  It was not until the rulings giving rise to Aspen's December Rule 53 Objection that the Special Master indicated for the first time that discovery may not have been bifurcated. <u>See</u>, December Rule 53. Even then, those Orders never explicitly mentioned bifurcation. <u>Id.</u>

The Subject Order is the first time ever that the Court or the Special Master has explicitly stated discovery is not bifurcated. Even in so doing, the Special Discovery Master acknowledges that Aspen was operating on its explicitly stated understanding of the repeated instructions of the Court to limit discovery. See, Subject Order at fn.2 (quoting Aspen April 29, 2022 letter stating "Aspen notes that if this case is no longer proceeding on a bifurcated basis…, certain outstanding and additional discovery remains as to all parties.").

The Subject Order goes on to cite an Order entered on September 8, 2021, wherein the Special Master permitted *only* the HSS Defendants and Aspen to submit a proposed order "incorporating ALL relief requested by each of the parties in the outstanding discovery issues." The September 8, 2021 Order cannot be viewed in vacuum, but rather, must be viewed through the lens of the procedural posture of the case at the time. Clearly, this Order was necessarily and only addressing bifurcated discovery issues. Foremost, this Order specifically *excluded* the bifurcated parties from submitting their own discovery issues - - the intervenors, McGriff, and Inservco. This is consistent with Aspen's repeatedly stated understanding that discovery was bifurcated, and the Special Master *never* indicated otherwise. Furthermore, throughout this process, the Court and the Special Master repeatedly and explicitly required only phased and "permitted" discovery to proceed. The "outstanding discovery issues" at this time involved the bifurcated discovery only - - as that was the only "permitted" discovery at the time - - and

multiple formal motions to compel and related letters which remained undecided for years. See,

e.g., ECF 148, 152 filed January 2020 and decided September 30, 2021 at ECF 316.

Relatedly, the statement in Footnote 2 that Aspen's requests for non-bifurcated discovery,

including financial information, appear to be irrelevant is concerning in a case that involves

complex multi-party insurance transactions, alter-ego liability claims, allegations of fraud and

wire fraud, allegations of fraudulent sale of insurance policies, and allegations of Lanham Act

violations. Additional issues that were addressed during mediation before the Court and the

Special Master, and which are specifically referenced in Aspen's letter, include cancellation and

return premium.[4] The Subject Order's assertion that Aspen did not explain the relevancy of these

documents and information is further belied by Aspen's categorization of these requests by

associated topic/claim as well as explanations as to why the information is needed. These

requests are relevant on their face. E.g., "Any and all alleged liabilities assumed and paid by the

HSS Defendants which the HSS Defendants assert Aspen is responsible to pay by way of this

action…All documents that relate to or regard, or which the HSS Defendants intend to rely upon

which demonstrate whether corporate formalities were observed between and among the HSS

Defendants." To be clear, as Aspen was directed to submit, these are *topical overviews* of the

actual formal discovery requests that would be served if Aspen was *permitted* to do so.[5]

---

[4] Aspen returned hundreds of thousands of dollars of return premium to Defendant Carman on behalf of Defendant HSS. That money is totally unaccounted for, was never given to the Additional Named Insureds under the HSS Policy, and was a frequent topic of discussion during mediation proceedings before Magistrate Rueter.
[5] Aspen is constrained to point out that if Aspen is not permitted to serve discovery absent leave of a Special Master, then this case is bifurcated. Nothing in the Federal Rules of Civil Procedure abrogates Aspen's ability to serve discovery, and special permission of a Court to do so is not required - - unless, of course, the matter is bifurcated, or a matter is stayed, or a matter is administratively closed, all of which have been the case in this matter for nearly half a decade.

6511225-2

The entire discovery and procedural posture in this case has been highly irregular, conducted in what can be best be described as a quasi-litigation, and which has been, at best, confused, disjointed, and inconsistent in what discovery was permitted to be served.

## ARGUMENT

### A. Standard of Review

This Honorable Court's standard of review for the Subject Order's findings of fact and conclusions of law is de novo. See, Fed. R. Civ. P. 53(f)(3); United States ex rel. IBEW Local Union No. 98 v. Farfield Co., 438 F. Supp. 3d 348, 356-57 (E.D.P.A. 2020). ("Rule 53(f)(3) sets the standard of review on a Special Master's Report and Recommendation: we must apply de novo review to all objections to conclusions of law made or recommended by a master as well as to findings of fact…"). See also, ECF 256 (Order appointing Special Master Rueter with no modifying language of Rule 53(f)(3) included).

### B. Aspen Should Not Be Prevented by the Court from Seeking and Obtaining Discovery Relating to non-Bifurcated Issues

Aspen has only ever operated at the direction of the Court in conducting discovery in this matter. That has included multiple and repeated - - and explicit - - instructions from the Court as to what discovery Aspen was "permitted" to seek, from bifurcation, to discovery served on consent, to discovery served only on permission of a Special Master. This case has not been in an unrestricted, normal litigation posture since the Spring of 2016 - - more than six (6) years ago.

### 1. The Federal Rules of Civil Procedure Do Not Permit a Special Master to Bar Service of Relevant Discovery

The scope of discovery in federal litigation is broad. See Fed. R. Civ. P. 26. Discovery may be obtained regarding any unprivileged matter if it is relevant to the claim or defense of any party. Malibu Media, LLC v. Doe, No. 12-2077, 2012 U.S. Dist. LEXIS 105768, at *23 (E.D.

Pa. July 30, 2012) (citing Fed. R. Civ. P. 26). Discovery is not confined to admissible evidence, rather it includes any information that is reasonably calculated to lead to admissible information. Ibid. Accordingly, the relevancy standard is satisfied if there is any possibility that the information may be relevant to the general subject matter of the action. See Barnes Foundation v. Twp. of Lower Merion, No. 96-372, 1997 U.S. Dist. LEXIS 4444, 1997 WL 169442, at *5 (E.D. Pa. Apr. 7, 1997) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). "Courts have construed the relevancy requirement liberally to facilitate the mutual knowledge of all relevant facts." Malibu Media, U.S. Dist. LEXIS 105768 at *23, (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947); Oppenheimer, 437 U.S. at 351.

"To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." Trask v. Olin Corp., 298 F.R.D. 244, 263 (W.D. Pa. 2014). "In ascertaining which materials are discoverable and which are not, a district court must further distinguish between requests that 'appear[ ] reasonably calculated to lead to the discovery of admissible evidence," Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 149 (M.D. Pa. 2017) (quoting Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 191 (D.N.J. 2010)), and demands that are 'overly broad and unduly burdensome.'" Ibid. (quoting Miller v. Hygrade Food Products Corp., 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000)).

"[T]he discovery rules are meant to be construed quite liberally so as to permit the discovery of any information which is relevant and is reasonably calculated to lead to the discovery of admissible evidence." Fid. Fed. Sav. & Loan Ass'n v. Felicetti, 148 F.R.D. 532, 534 (E.D. Pa. 1993). "As an initial matter, therefore, all relevant material is discoverable unless an applicable evidentiary privilege is asserted." Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

"Under [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' [Therefore] 'It follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.'." Frank v. County of Hudson, 924 F.Supp. 620, 626 (D.N.J. 1996) citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994) (quotations omitted).

This case was explicitly bifurcated for years. This case was stayed, closed, and referred to a Magistrate to oversee settlement and bifurcated discovery, who was then appointed as Special Master upon his retirement. Aspen followed the instructions, both explicit and implicit, of the Court and the Magistrate/Special Master, who for years simultaneously conducted mediation proceedings, required that any discovery requests be filtered through and approved by him before being served, and kept this matter in various states of stay for extraordinary lengths of time. Mediation efforts had a further and unequivocal chilling effect on the scope of and exchange of, and work related to, the voluminous discovery in this matter. As a result of these case management parameters, the case spent years in formal stays and as an administratively closed file. Repeated representations were made to the parties that adequate time and process would be afforded to ensuring that discovery would be properly addressed in the event that the mediation was unsuccessful.[6]

The actual status of discovery in this case over the course of six years - - spanning years' worth of stays, orders by the Court and Special Master intermittently requiring that discovery

---

[6] Unfortunately, and over Aspen's objections, most of the proceedings in this case have been conducted off the record. This only further speaks to the highly irregular and informal manner in which proceedings have been conducted.

6511225-2

efforts should cease for months and years at a time, and the formal administrative closing of this matter - - has been muddled, confused, and amorphous at best.

Aspen respectfully submits that if discovery is not bifurcated, it should not need permission of a Special Master to serve routine discovery involving previously bifurcated claims. This is contrary to the Federal Rules of Civil Procedure. Furthermore, the Special Master does not have the power, under Rule 53, to prevent relevant discovery from being exchanged.

In this regard, Aspen is compelled to point out that the Subject Order arrives at decisions of "relevancy" before any formal discovery requests have even been served. The routine process would involve a discovery request being sent, an objection being made, a meet and confer, a Motion to Compel, and *then* a review of the issues by the Court, which includes, *inter alia*, a review of the pleadings by the Court. See, e.g., Trask, 298 F.R.D. at 263.  Necessarily, as part of this process, the party seeking discovery is afforded the opportunity to (1) serve discovery and (2) fully and formally brief issues of relevancy if objections are made.[7] Respectfully, denying discovery requests as "irrelevant" without any discussion of, or even reference to, Aspen's pleading, or the issues in this case, or the Federal Rules of Civil Procedure and Evidence, is prejudicial to Aspen and other parties to this case.

2. **Aspen Seeks to Serve Discovery Regarding Relevant Issues Addressed in the Operative Pleadings**

As required in this specially managed complex litigation, and pursuant to the phased and bifurcated manner in which discovery has proceeded to present, Aspen sought leave of the Court to serve discovery in connection with non-bifurcated claims. A review of Aspen's complaint

---

[7] In this regard, Aspen is constrained to address that the Special Master has previously criticized Aspen for including full case histories, exhibits, and factual background discussions in its submissions for being overly complex and lengthy.

makes clear the relevancy of non-bifurcated claims, wherein the defendants are alleged to have engaged in complex, multi-party insurance transactions in an effort to defraud Aspen.

Aspen will attempt to summarize the Second Amended Complaint in brief fashion below, however, the balance of that pleading is incorporated by reference in full (ECF 146, ¶¶ 1-581). This is an action in which Aspen is the plaintiff and the following entities are defendants: Hospitality Supportive Systems LLC ("HSS"), Edward E. Snow (an individual) ("Snow"), The Carman Corporation ("Carman"), Selective Risk Management, LLC ("Selective Risk"), Selective Law Group, LLC ("Selective Law") (collectively, "HSS"), Trigen Solutions, Trigen Hospitality, Patriot Underwriters, Patriot National, McGriff Seibels & Williams ("McGriff"), Inservco Insurance Services ("Inservco") and ABC Corporations 1-25 (the "Action").

Aspen seeks rescission of insurance policies and a declaration of the respective rights and obligations, if any, of Aspen and HSS under policies of liability insurance issued by Aspen in connection with an insurance purchasing group program managed by HSS. Additionally, Aspen seeks recovery in the Action of defense and indemnity costs incurred as a result of misrepresentations, misstatements, omissions and/or concealments of fact by HSS and/or other defendants in connection with the applications for the various insurance policies issued by Aspen. As set forth in Aspen's Second Amended Complaint, HSS held itself out as an insurance purchasing group which solicited business owners and operators within the hospitality and restaurant industry to enter into property and liability insurance sharing programs (the "HSS Programs"). Participants in the HSS Programs – i.e., restaurants, taverns and bar owners –were required to enter into a Management Services Agreement ("MSA") with HSS, pursuant to which the participants delegated full authority to HSS for the HSS Programs, including but not limited

to the negotiations, procurement, and claims handling for the policies. Pursuant to the HSS Programs, HSS would obtain insurance policies through various property and liability insurance carriers, with HSS as the first named insured on the policies and the individual restaurant, tavern and bar owners in the program subsequently added as additional named insureds on the policies.

In connection with its solicitation of Aspen to be an insurer of the HSS Programs, HSS represented that each individual restaurant, tavern and bar owner met certain minimum requirements, as set forth in underwriting guidelines, in order to qualify for the Programs. These requirements included a participant not exceeding a maximum number of permissible claims asserted against during a specified period, no single claim asserted against a prospective participant during the specified period exceeding specific values, no liquor liability claims against the prospective participant during a specified period, and other criteria based on analyses of loss runs setting forth claims histories.

In conducting its role as claims processor, HSS utilized defendants, Selective Risk and Selective Law as the third-party claims administrator ("TPA") and defense counsel, respectively. HSS Program participants would report liability claims to HSS, and, in turn, HSS and Selective Risk would then manage those claims and engage legal counsel at Selective Law to defend the interests of the participants. At relevant times alleged in the Amended Complaint, defendant Snow was the sole shareholder of HSS. Snow, along with Charles O'Donnell ("O'Donnell") were the sole shareholders, principals and/or members of Selective Risk; and O'Donnell was the President and Chief Executive Officer of Selective Law.

Relying on HSS' representations, Aspen issued multiple consecutive primary and excess commercial liability insurance policies to the HSS Programs from 2011 to 2015, providing

6511225-2

general liability, liquor liability, and excess liability coverage to Program participants. Consistent with the MSA's entered into by HSS and the restaurant, tavern, and bar owners, the Aspen policies list HSS as the first named insured and the individual restaurant, tavern, and bar owners as the additional named insured under the policy. As set forth in the Second Amended Complaint, Aspen's decisions to renew the primary and excess liability policies in the HSS programs were due primarily to the acceptable volume and severity of claims reported to Aspen. Additionally, Aspen reasonably relied upon the renewal applications and loss runs submitted by HSS, as well as HSS' continuing representations that it was actively vetting participants' compliance with the HSS Underwriting Guidelines.

Through a series of acquisition agreements prior to April 1, 2015, Trigen Insurance became a wholly-owned subsidiary of Patriot National. Through a series of asset purchase agreements, on or around April 1, 2015, Patriot National acquired the assets of HSS, as well as Selective Risk (i.e., the companies owned and managed by Snow and O'Donnell). As indicated above, defendant Snow was the sole shareholder of HSS and was one of two shareholders of Selective Risk. Pursuant to the HSS asset purchase agreements, Trigen Insurance acquired certain assets of HSS, including HSS' rights under certain contracts. Pursuant to these asset purchase agreements, Trigen Insurance also retained the right to use the name "Hospitality Supportive Systems, LLC," and to transfer its rights under the agreements in whole or in part to any of its affiliates.

Following the acquisition of HSS' assets, the HSS business and/or assets were spun off into a separate entity, i.e., Trigen Hospitality. Trigen Hospitality is a wholly-owned subsidiary of Patriot Underwriters. Patriot Underwriters, in turn, is a wholly-owned subsidiary of Patriot

17

6511225-2

National. Following the execution of the HSS and Selective Risk Asset Purchase Agreements, Trigen Insurance, Trigen Hospitality, Patriot Underwriters and/or ABC Corporations 1-25 submitted an application for coverage under a commercial general liability policy (Policy # CR003UL15) in the HSS Program "C" under the name "Hospitality Supportive Systems, Inc."

Throughout the history of the HSS Programs up until late 2015, the loss experience under the Aspen Policies was minor, with a comparatively-small number of reported claims and few, if any, of significant value; however, following Aspen's issuance of notices of non-renewals for the last primary policies issued in HSS (A), HSS (B) and HSS (C) in September 2015, HSS began notifying Aspen of a significantly-increased number of claims against various additional named insureds under the Aspen Policies. The late stage of many of the reported underlying proceedings spurred Aspen to investigate their history, as well as HSS' knowledge thereof, and Aspen's initial investigation revealed that HSS was aware of a significant number of underlying claims that were not disclosed to Aspen in the applications for coverage under certain of the Aspen Policies.

The numerous claims known by HSS but not reported to Aspen in connection with applications for initial coverage or renewals included many substantial, large-dollar value claims that were not only known to HSS, but HSS was in the process of managing these claims and had already assigned Selective Law to represent the additional insured/program participant in the underlying proceedings. These claims included claims for severe bodily injury and/or wrongful death by various individuals injured at participants' bars or taverns or by the actions of patrons of such bars or taverns. The known but undisclosed claims were not reported, in some cases, until as late as 4 years after the injury/occurrence, or up to 20 months after suit had been filed, or as

6511225-2

late as three weeks before the scheduled trial date. In each case, HSS failed to notify Aspen of these claims during the application and renewal applications for the multiple Aspen policies issued to the HSS Programs.

By January 2016, Aspen had been put on notice of approximately two hundred and thirty-six (236) additional claims made in the HSS Programs, with approximately forty percent (40%) of these claims occurring from 2012 to 2014. The vast majority of these claims were reported between November 2015 and January 2016. In so doing, Snow, O'Donnell, and the HSS Defendants induced Aspen into issuing the Aspen Policies at significantly reduced premium rates, if at all.

Since then, the number of claims has grown to well over three hundred (350) additional claims made in the HSS Programs. On February 29, 2016, Aspen issued cancellation notices for policy numbers CR003UL15, CR0038P14, CX0038Q14 and CX0038U14 with effective cancellation date of March 30, 2015.

Aspen alleges that the defendants accomplished this scheme through, *inter alia*, a series of financial transactions between and among themselves to share and retain risk and, essentially, operate as an unlicensed insurance company. Aspen further alleges that the defendants falsely sold "coverage" through Aspen to purported additional named insureds after Aspen stopped issuing insurance coverage to HSS.

Aspen's Second Amended Complaint alleges the following Counts:

| Count | Relief requested/ basis for liability | Defendants named |
|---|---|---|
| I | Equitable Rescission | HSS |
| II | Rescission Based on Fraud | HSS |
| III | Declaratory Relief | HSS |
| IV | Declaratory Relief - Fraud | HSS |

| V | Declaratory Relief – Coverage Preclusion | HSS |
|---|---|---|
| VI | Reservation to Assert Additional Grounds for Rescission or Declaratory Judgment | HSS |
| VII | Fraud (i.e., knowing misrepresentation, misstatement, omission and/or concealment of facts in connection applications for coverage) | HSS, McGriff and Inservco |
| VIII | Fraud (i.e., misrepresentation regarding ensuring compliance with underwriting guidelines) | HSS and McGriff |
| IX | Negligence | HSS and McGriff |
| X | Negligence | SRM |
| XI | Negligence | SLG |
| XII | RICO § 1962 (c) | HSS Defendants |
| XIII | RICO § 1962 (d) | HSS Defendants |
| XIV | Alter-Ego Liability | Snow, Carman |
| XV | Negligence | Snow, Carman |
| XVI | Conspiracy | HSS Defendants |
| XVII | Participation Liability | Snow, Connelly and O'Donnell |
| XVIII | Successor Liability | Trigen Insurance, Trigen Hospitality, Patriot Underwriters, ABC Corporations 1-25 |
| XIX | Fraud (i.e., knowing misrepresentation, misstatements, omissions and/or concealment of facts in connection with post-April 1, 2015 application for renewal coverage of policy in Program HSS (C)) | Trigen Insurance, Trigen Hospitality, Patriot Underwriters, ABC Corporations 1-25 |
| XX | Fraud (i.e., misrepresentation regarding ensuring compliance with | Trigen Insurance, Trigen Hospitality, Patriot Underwriters, ABC Corporations 1-25 |

6511225-2

| | underwriting guidelines in connection with post-April 1, 2015 application for renewal coverage of policy in Program HSS (C)) | |
|---|---|---|
| XXI | Unjust Enrichment | Trigen Insurance, Trigen Hospitality, Patriot Underwriters, ABC Corporations 1-25 |
| XXII | Negligence | Trigen Insurance, Trigen Hospitality, Patriot Underwriters, ABC Corporations 1-25 |
| XXIII | Alter-Ego Liability | Patriot National |
| XXIV | Violation of the Lanham Act | HSS Defendants |
| XXV | Passing Off | HSS Defendants |
| XXVI | Negligent Misrepresentation | McGriff, Inservco |
| XXVII | Negligent Supply of Information | McGriff, Inservco |

The standard to prove rescission - - the claims of Aspen which were bifurcated from the rest, is material misrepresentation in the underwriting of the contract of insurance. This necessarily includes a lower burden of proof than, for example, the bifurcated claims of fraud, and limits the applicable timeframe to the period during which the policies were underwritten. Discovery involving Aspen's non-bifurcated claims necessarily includes post-underwriting, ongoing behavior and requires a more detailed burden of proof in alleging, e.g., fraud, wire fraud, false sale of insurance policies post-cancellation, and so on. The Special Master's orders, prejudicially and without explanation prevent Aspen from even requesting discovery about these topics. Aspen's December Rule 53 further addresses the disproportionate and prejudicial ruling that Aspen is barred from obtaining post-2017 discovery from the HSS Defendants in the event

that this matter is not bifurcated, even though Aspen itself was required to turn over post-2017 discovery as part of that Order.

Aspen is further respectfully compelled to point out that Motions to Dismiss Aspen's Second Amended Complaint have been pending for years as to all Defendants.[8] In a further example of the manner in which the phased discovery in this matter has progressed, the July 1, 2022 "deadline" for paper discovery exchanges will now pass before responsive pleadings to Aspen's Second Amended Complaint are due, even if those motions were all decided today. Necessarily, the parties are being prevented from seeking discovery relating to any affirmative defenses, crossclaims, counter claims, or third party claims because Answers to the Second Amended Complaint have not been filed. Again, situations like this are exactly why the formal litigation focus, until recently, has been limited to the bifurcation of Aspen's rescission claims and HSS' breach of contract claims. Aspen respectfully submits that decisions on these motions would further potentially narrow the scope of issues in this case.

### C. Discovery Involving McGriff and Inservco Should Be Open for Longer than Thirty (30) Days

Related to the manner in which this case has proceeded, and directly undercutting the conclusion that this case was not bifurcated and discovery was to be proceeding on an open basis, the Subject Order explicitly acknowledges that discovery involving Defendants McGriff and Inservco was phased on agreement. See, Footnote 4.

The formal request to conduct this discovery - - because the Parties can only conduct discovery on consent of the Special Master - - was pending for nearly two months. The Subject Order was entered on the afternoon of June 1, 2022 and mandated that any of the "permitted"

---

[8] The Intervenors have all entered this action by way of Answer to Aspen's complaint. However, and for purposes of this discussion, Aspen has not made any claims against the Intervenors.

6511225-2

discovery must be completed by July 1, 2022. This necessarily required all parties to serve any related discovery within hours of the entry of the Order or else run afoul of the Rules of Civil Procedure.

As acknowledged and alluded to in Footnote 4, counsel for Aspen, McGriff, and Inservco addressed with the Special Master that most discovery between and among Aspen, McGriff, and Inservco, as well as other defendants, was being held in abeyance as part of the significant case management issues presented by this action. The *bifurcated* discovery exchanged in this matter alone surpasses the one million (1,000,000) page mark.

Aspen specifically addressed discovery issues involving McGriff and Inservco in reliance on the repeated bifurcation Orders of the Court, and its repeatedly and explicitly stated understanding that discovery was bifurcated in this matter. At no time did the Court or the Special Master ever indicate that discovery was not bifurcated. In fact, the Court and the Special Master's approval of this approach and assurance that the proper time would be given to address these complex phased matters in the event that mediation failed, caused Aspen to rely upon those representations.

Aspen respectfully submits that more than thirty days is needed for the parties to address this newly permitted discovery. Responding to this discovery requires a review of approximately 1,000,000 pages of already exchanged discovery, determinations of whether additional and supplemental productions are necessary based thereon, and similar related discovery tasks. Furthermore, the current scheduling order provides no time for Aspen, McGriff, and Inservco to attempt to work out any differences themselves through a meet and confer process, as it appears that all paper discovery exchanges are set to close on July 1, 2022. It is difficult, at this time, to

23

even provide a full scope of work of what is necessary to respond to this discovery without having completed these initial tasks of determining what has already been produced and distilling that information into written responses. Aspen previously requested an additional twelve (12) months to address these discovery issues if necessary.

Aspen further respectfully submits that in connection with the latest scheduling Orders entered by the Court, in just the past months, Aspen has, at the direction of the Special Master: reviewed and prepared for production approximately 220,000 pages; updated interrogatory responses which are anticipated to be thousands (1,000s) of pages in length; updated thousands of privilege log entries; and engaged in Summary Judgment briefing on a major issue with the Intervenors. Aspen's attorneys are working around the clock to meet all of the recent Orders' requirements and deadlines. In addition, Aspen anticipates receiving voluminous productions from the HSS Defendants in connection with the recent Orders.

**D. Aspen's Prayer for Proposed Modification and Reliefs**

In light of the foregoing, Aspen respectfully requests that this Honorable Court vacate the Special Master's findings of fact and conclusions of law, and, if this matter is no longer bifurcated, permit non-bifurcated to proceed unfettered and complete within the next 12 months.

In order for this case to proceed in a judicially efficient manner, Aspen respectfully submits that: (1) all pending motions to dismiss be decided in order for the parties to appropriately narrow and target discovery, submit responsive pleadings, cross claims, counter claims, and third party claims, as may be appropriate, and conduct and complete discovery related thereto; (2) Aspen's pending December Rule 53 Motion be decided; (3) in the event that the Court determines that this case is no longer to proceed on a bifurcated track, that an open

discovery period of at least one (1) year be entered expressly permitting and setting schedules for the parties to serve and respond to discovery, with proceedings conducted on the record; and (4) that no more stays of this case be entered, that the parties be permitted to serve discovery without prior approval of the Special Master, and that a United States Magistrate Judge be appointed to oversee the forthcoming discovery schedule.

Aspen respectfully submits and prays for the above modifications to the Special Master's Order set forth above, and any other relief and modifications this Honorable Court deems fit.

CONNELL FOLEY LLP

/s/ William D. Deveau_____

Dated: June 22, 2022

William D. Deveau (pro hac vice)
Jonathan P. McHenry (pro hac vice)
Patrick J. Hughes (PA ID No. 41403)
J. Christopher Henschel (pro hac vice)
185 Hudson Street, Suite 2510
Jersey City, NJ 07311
Tel:    (201) 521-1000
Fax:    (201) 521-0100
*Attorneys for Plaintiff*
*Aspen Specialty Insurance Company*